1  **PRENOVOST, NORMANDIN, BERGH & DAWE**
   **A Professional Corporation**
2  **TOM R. NORMANDIN, SBN 102265**
   tnormandin@pnbd.com
3  **PAULA M. HARRELSON, SBN 167438**
   pharrelson@pnbd.com
4  **2122 North Broadway, Suite 200**
   **Santa Ana, California 92706-2614**
5  **Phone No.:    (714) 547-2444**
   **Fax No.:      (714) 835-2889**
6
   Attorneys for NextGear Capital, Inc.
7

8          **UNITED STATES DISTRICT COURT**

9    **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

10   UNITED STATES OF AMERICA,           Case No. SACV13-907-DOC(JPR)

11            Plaintiff,                 **AMENDED DECLARATION OF**
                                         **PAULA M. HARRELSON IN**
12        v.                             **OPPOSITION TO PLAINTIFF'S**
                                         **MOTION IN LIMINE TO**
13   ONE    2006    LAMBORGHINI          **EXCLUDE EVIDENCE**
     MURCIELAGO,
14                                       Date:   May 26, 2015
              Defendant.                 Time:   10:00 a.m
15                                       Crtrm.: 9-D

16                                       The Hon. David O. Carter

17

18              DECLARATION OF PAULA M. HARRELSON

19        I, Paula M. Harrelson, declare as follows:

20        1.      I am an attorney duly admitted to practice before this Court.  I am Of

21   Counsel to Prenovost, Normandin, Bergh & Dawe, attorneys of record for NextGear

22   Capital Inc. ("NextGear").  I have personal knowledge of the facts set forth herein,

23   except as to those stated on information and belief and, as to those, I am informed

24   and believe them to be true.  If called as a witness, I could and would competently

25   testify to the matters stated herein.  I make this declaration in support of Opposition

26   to Plaintiff's Motion in Limine.

27        2.      NextGear's failure to expressly allege the words "innocent owner"

28   defense im the Answer was inadvertent attorney error.  NextGear did, in fact, allege

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444 • Fax (714) 835-2889

that it is a secured creditor of Remate.  See Dkt No. 7 ¶ 13.  Facts supporting its claim and status as a secured creditor were alleged in its Statement of Interest filed on July 29, 2013 concurrently with its Answer.  See Dkt No. 8.  True and correct copies of NextGear's Answer and Statement of Interest are attached hereto as Exhibits 1 and 2, respectively, and incorporated by reference herein. NextGear may have alleged the details of its right to the subject vehicle in its Statement of Interest pleading rather than its Answer but Plaintiff has never been in the dark about the factual or theoretical basis for NextGear's legal position in this case.

3.     In numerous subsequent pleadings and communications, NextGear has repeatedly and continuous maintained and proclaimed its "innocent owner" defense to Plaintiff during the course of this litigation.

4.     NextGear's defense was explained in detail in correspondence to AUSA Frank Kortum who was assigned to this case from inception until very recently.  A true and correct copy of my December 31, 2013 letter to Frank Kortum is attached hereto as Exhibit 3 and incorporated by reference herein.

5.     Plaintiff was apprised of this defense in the parties Joint Rule 26(F) Report filed on February 28, 2014.  See Dkt No. 20.  A true and correct copy of the parties Joint Rule 26(F) Report filed on February 28, 2014 is attached hereto as Exhibit 4 and incorporated by reference herein.  NextGear also concurrently produced to Plaintiff all of the material relevant documents Bate stamped NG0001-50.

6.     See also NextGear's Responses to Plaintiff's Special Interrogatories which extensively delineate the basis for NextGear's defense.  A true and correct copy of NextGear's Responses to Special Interrogatories served on January 8, 2014 is attached hereto as Exhibit 5 and incorporated by reference herein.

7.     At a court hearing, the parties, including Mr. Kortum on behalf of Plaintiff represented to the court that further mediation could result in a settlement of the case and based on those representations, the court continued the trial date and

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444  •  Fax. (714) 835-2889

DECLARATION OF PAULA M. HARRELSON IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINI TO EXCLUDE EVIDENCE

1  the discovery cut-off.  We, NextGear, understood and believed that Plaintiff
2  intended to negotiate in good faith.

3      8.    On April 20, 2015, Mr. Kortum and I appeared in court and Mr.
4  Kortum represented to the court that the parties had reached a tentative settlement
5  pending final approval by his supervisor.  NextGear and I believed that a settlement
6  was imminent.

7      9.    NextGear has not been dilatory in amending its pleading.  The parties
8  acted as if a settlement were pending.  The Plaintiff never requested a pre-trial
9  conference of any sort.

10     10.    It was only after Mr. Kortum was replaced as counsel for Plaintiff that
11  NextGear was advised that the settlement was rejected.

12     I declare under penalty of perjury under the laws of the United States of America
13  that the foregoing is true and correct.

14     Executed May 12, 2015, at Santa Ana, California.

15
16
17                                    Paula M. Harrelson
18
19
20
21
22
23
24
25
26
27
28

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444 · Fax (714) 835-2889

DECLARATION OF PAULA M. HARRELSON IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINI TO
EXCLUDE EVIDENCE

# EXHIBIT 1

FILED

1  **PRENOVOST, NORMANDIN, BERGH & DAWE**
   A Professional Corporation
2  **TOM R. NORMANDIN, SBN 102265**
   tnormandin@pnbd.com
3  **PAULA M. HARRELSON, SBN 167438**
   pharrelson@pnbd.com
4  **2122 North Broadway, Suite 200**
   **Santa Ana, California 92706-2614**
5  Phone No.:    (714) 547-2444
   Fax No.:      (714) 835-2889
6
7  Attorneys for NextGear Capital, Inc.

2013 JUL 29  PM 3: 39

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

8              **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

10

11  UNITED STATES OF AMERICA,          Case No. SACV13-907-DOC(JPR)

12              Plaintiff,             **CLAIMANT NEXTGEAR**
                                       **CAPITAL, INC'S ANSWER TO**
13       v.                            **VERIFIED COMPLAINT FOR**
                                       **FORFEITURE**
14  ONE    2006    LAMBORGHINI
    MURCIELAGO,                        The Hon. David O. Carter
15
              Defendant.
16

17       Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Claimant

18  NEXTGEAR CAPITAL, INC ("Claimant") answers the Verified Complaint of Plaintiff

19  ("Plaintiff"). If an averment is not specifically admitted, it is hereby denied.

20                    <u>**ANSWER TO COMPLAINT**</u>

21       1.    Answering Paragraph 1, Claimant lacks sufficient knowledge or

22  information to form a belief concerning the truth of the factual allegations contained

23  therein and on that basis denies such allegations. Paragraph 1 further contains legal

24  conclusions and argument as to which no response is required.

25       2.    Answering Paragraph 2, Claimant lacks sufficient knowledge or

26  information to form a belief concerning the truth of the factual allegations contained

27  therein and on that basis denies such allegations. Paragraph 2 further contains legal

28  conclusions and argument as to which no response is required.

ORIGINAL

1         3.     Answering Paragraph 3, Claimant lacks sufficient knowledge or

2 information to form a belief concerning the truth of the factual allegations contained

3 therein and on that basis denies such allegations. Paragraph 3 further contains legal

4 conclusions and argument as to which no response is required.

5         4.     Answering Paragraph 4, Claimant admits that Defendant is one 2006

6 Lamborghini Murcielago. Except as expressly admitted herein, Claimant denies

7 each and every allegation contained therein.

8         5.     Answering Paragraph 5, Claimant lacks sufficient knowledge or

9 information to form a belief concerning the truth of the factual allegations contained

10 therein and on that basis denies such allegations. Paragraph 5 further contains legal

11 conclusions and argument as to which no response is required.

12         6.     Answering Paragraph 6, Claimant admits that The interests of

13 NextGear Capital, Inc. may be adversely affected by these proceedings. Except as

14 expressly admitted herein, Claimant denies each and every allegation contained

15 therein.

16         7.     Answering Paragraph 7, Claimant lacks sufficient knowledge or

17 information to form a belief concerning the truth of the factual allegations contained

18 therein and on that basis denies such allegations. Paragraph 7 further contains legal

19 conclusions and argument as to which no response is required.

20         8.     Answering Paragraph 8, Claimant lacks sufficient knowledge or

21 information to form a belief concerning the truth of the factual allegations contained

22 therein and on that basis denies such allegations. Paragraph 8 further contains legal

23 conclusions and argument as to which no response is required.

24         9.     Answering Paragraph 9, Claimant lacks sufficient knowledge or

25 information to form a belief concerning the truth of the factual allegations contained

26 therein and on that basis denies such allegations. Paragraph 9 further contains legal

27 conclusions and argument as to which no response is required.

28

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1          10.     Answering Paragraph 10, Claimant lacks sufficient knowledge or

2 information to form a belief concerning the truth of the factual allegations contained

3 therein and on that basis denies such allegations.  Paragraph 10 further contains

4 legal conclusions and argument as to which no response is required.

5          11.     Answering Paragraph 11, Claimant lacks sufficient knowledge or

6 information to form a belief concerning the truth of the factual allegations contained

7 therein and on that basis denies such allegations.  Paragraph 11 further contains

8 legal conclusions and argument as to which no response is required.

9          12.     Answering Paragraph 12, Claimant lacks sufficient knowledge or

10 information to form a belief concerning the truth of the factual allegations contained

11 therein and on that basis denies such allegations.  Paragraph 12 further contains

12 legal conclusions and argument as to which no response is required.

13          13.     Answering Paragraph 13, Claimant admits that Admit that NextGear

14 Capital, Inc., then known as Dealer Services Corporation ("DSC"), received notice

15 of the seizure and that NextGear is a secured creditor of Remate.  Except as

16 expressly admitted herein, Claimant denies each and every allegation contained

17 therein.

18          14.     Answering Paragraph 14, Claimant denies each and every allegation

19 contained therein.

20 **AFFIRMATIVE DEFENSES**

21 Claimant pleads the following separate defenses.  Claimant reserves the right to

22 assert additional affirmative defenses that discovery indicates are proper.

23 **FIRST AFFIRMATIVE DEFENSE**

24 **(Failure to State a Claim)**

25          1.     As a separate and first affirmative defense to the Verified Complaint, and

26 to the purported causes of action set forth therein, Claimant alleges that the Verified

27 Complaint fails to state facts sufficient to constitute a cause of action.

28 **SECOND AFFIRMATIVE DEFENSE**

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92705-2514
Tel (714) 547-2444 • Fax (714) 835-2889

**(Estoppel)**

2.  As a separate and second affirmative defense to the Verified Complaint and each purported cause of action contained therein, Claimant alleges that Plaintiff is barred in whole or in part from prosecuting the purported causes of action set forth in the Verified Complaint by the doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE

**(Waiver)**

3.  As a separate and third affirmative defense to the Verified Complaint and each purported cause of action contained therein, Claimant alleges that Plaintiff is barred in whole or in part from prosecuting the purported causes of action set forth in the Verified Complaint by the doctrine of waiver.

WHEREFORE, Claimant prays for relief as follows:

1.  That the Verified Complaint be dismissed, with prejudice and in its entirety;

2.  That Plaintiff take nothing by reason of this Verified Complaint and that judgment be entered against Plaintiff and in favor of Claimant;

3.  That Claimant be awarded its attorneys' fees and costs incurred in defending this action;

4.  That Claimant be granted such other and further relief as the Court may deem just and proper.

DATED: July 26 , 2013

PRENOVOST, NORMANDIN, BERGH &
DAWE
A Professional Corporation

By: _____

TOM R. NORMANDIN
PAULA M. HARRELSON
Attorneys for NextGear Capital, Inc.

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

# EXHIBIT 2

1  **PRENOVOST, NORMANDIN, BERGH & DAWE**
   **A Professional Corporation**
2  **TOM R. NORMANDIN, SBN 102265**
   tnormandin@pnbd.com
3  **PAULA M. HARRELSON, SBN 167438**
   pharrelson@pnbd.com
4  **2122 North Broadway, Suite 200**
   **Santa Ana, California 92706-2614**
5  **Phone No.:    (714) 547-2444**
   **Fax No.:       (714) 835-2889**
6
   Attorneys for NextGear Capital, Inc.
7

8              **UNITED STATES DISTRICT COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

10

11  UNITED STATES OF AMERICA,            Case No. SACV13-907-DOC(JPR)

12            Plaintiff,                 **NEXTGEAR CAPITAL, INC.'S**
                                         **STATEMENT OF INTEREST**
13       v.
                                         The Hon. David O. Carter
14  ONE    2006    LAMBORGHINI
    MURCIELAGO,
15
              Defendant.
16

17  <u>**STATEMENT OF INTEREST BY NEXTGEAR CAPITAL INC. BY**</u>
    <u>**AUTHORIZED AGENT REPRESENTATIVE TROY ROGERS**</u>
18
         I, TROY ROGERS, declare as follows:
19
         1.      I am employed by NextGear Capital, Inc., successor by merger to
20
    Dealer Services Corporation (to minimize confusion, for ease of reference,
21
    NextGear will be referred to as "DSC" in this declaration), as an Account Executive
22
    Manager.  I have personal knowledge of the facts set forth herein, except as to those
23
    stated on information and belief and, as to those, I am informed and believe them to
24
    be true.  If called as a witness, I could and would competently testify to the matters
25
    stated herein.  I make this Statement of Interest in support of DSC's claim for return
26
    of the property described below which is subject of the government's Complaint for
27
    Forfeiture.  I am authorized by DSC to file this Statement of Interest.
28

---

8443.0037 / 754634.1                    1                    SACV-13-907-DOC (JPRx

Case 8:13-cv-00907-DOC-JPR   Document 57-1   Filed 05/15/15   Page 11 of 93   Page ID
#:409
Case 8:13-cv-00907-DOC-JPR   Document 8   Filed 07/29/13   Page 2 of 25   Page ID #:37

1    2.    DSC provides flooring lines to used car dealers across the United

2    States, including the State of California. A flooring line allows dealers to purchase

3    inventory, i.e., vehicles, for resale to the public. DSC does not make consumer

4    loans, but only commercial loans to auto dealers. DSC is licensed to make loans by

5    the State of California.

6    3.    I am the duly authorized custodian of DSC's records attached hereto

7    relating to NCA International Services, Inc. dba Remate Del Monte ("Remate"). I

8    have personally reviewed these records. I am also qualified to testify as to the

9    attached records' content based on my position and experience acquired by working

10   for DSC as an Account Executive.

11   4.    Based upon my personal knowledge of the sources of the information

12   relating to this account, and mode and methods used by DSC to document flooring

13   line activity, I am able to testify that the records of DSC, referred to in this

14   declaration and attached to this declaration, are in fact business records of DSC

15   made in the ordinary course of DSC's business of providing commercial loans and

16   extending credit. In addition, all entries made in the records referred to herein are

17   made at or near the time of the occurrences of the events of which they are of

18   record. All entries were made by persons who have a business duty to DSC to make

19   such records.

20   5.    DSC has provided flooring financing to Remate since 2005. A true and

21   correct copy of the initial Demand Promissory Note and Security Agreement dated

22   August 23, 2005 is attached hereto as Exhibit 1 and incorporated by reference

23   herein. A true and correct copy of Remate's most recent Demand Promissory Note

24   and Security Agreement dated January 21, 2010 is attached hereto as Exhibit 2 and

25   incorporated by reference herein.

26   6.    DSC's security interest was perfected when Remate's initial flooring

27   line was issued. It remains perfected to date. A true and correct copy of DSC's

28   original UCC-1 Financing Statement is attached hereto as Exhibit 3 and

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1 incorporated by reference herein. A true and correct copy of DSC's Continuation

2 Statement is attached hereto as Exhibit 4 and incorporated by reference herein.

3     7.     DSC's security interest extends to "a continuing security interest in all

4 of [Remate's] assets and properties, wherever located, including without limitation,

5 all Equipment of any kind or nature, all vehicles, vehicle parts, all inventory now

6 owned or hereafter acquired, without limitation...." See Exhibit 2.

7     8.     As of April 20, 2012, when DSC submitted its claim for return of the

8 subject vehicle, Remate's outstanding balance on its flooring line amounted to

9 $233,824.34. A true and correct copy of DSC's Receivable Detail Report

10 ("Report") dated April 20, 2012 is attached hereto as Exhibit 5 and incorporated by

11 reference herein. As of February 8, 2013, Remate's debt to DSC remains unpaid

12 and amounts to $199,212.94. A true and correct copy of DSC's Written off Dealer

13 Statement is attached hereto as Exhibit 6 and incorporated by reference herein.

14     9.     In early March, 2012, I became aware that the subject vehicle, a

15 Lamborghini –VIN: ZHWBU26S96LA02025, ("Vehicle") was owned by Remate

16 and had been impounded by the Irwindale Police.

17     10.     I acquired this information from Remate's President Cecelia Saiden

18 Mariscal. In response to my request for payment on Remate's flooring line of

19 credit, Ms. Mariscal told me that Remate owned a Lamborghini that they would like

20 to surrender to DSC to be applied to Remate's flooring line of credit but the vehicle

21 had been impounded. Ms. Mariscal gave me a copy of the Certificate of Title and

22 told me that she had the original at home.

23     11.     Approximately a week after this conversation, Ms. Mariscal delivered

24 the original Certificate of Title for the Vehicle to me, together with a copy of the

25 Wholesale Report of Sale prepared by the selling dealer. DSC continues to be in

26 possession of the original Certificate of Title. True and correct copies of the

27 original Certificate of Title in DSC's possession and the Wholesale Report of Sale

28

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

Case 8:13-cv-00907-DOC-JPR   Document 57-1   Filed 05/15/15   Page 13 of 93   Page ID
#:411
Case 8:13-cv-00907-DOC-JPR   Document 8   Filed 07/29/13   Page 4 of 25   Page ID #:39

1  are attached hereto as Exhibits 7 and 8, respectively, and incorporated by reference

2  herein.

3      12.    I have learned that the government has asserted that Raul Zugasti

4  contends that Eduardo Escobedo purchased the Vehicle from Lamborghini Newport

5  Beach ("LNB") using Remate's vehicle dealer license without Mr. Zugasti's

6  knowledge.  While I cannot speak for Mr. Escobedo's actions, Mr. Zugasti has told

7  me on more than one occasion that he was present when the Vehicle was purchased

8  from LNB.

9      13.    The government has also asserted that the funds to pay for the Vehicle

10 did not come from Remate or DSC and therefore DSC's lien is somehow less valid.

11 This reflects an inaccurate interpretation of the extent of DSC's security interest and

12 ignores California's comprehensive statutory scheme relating to perfection of

13 security interest and  the establishment of priorities for competing security interests

14 for creditors set forth in the California Commercial Code.

15     14.    The Vehicle is titled in Remate's name, title was delivered to Remate, a

16 Wholesale Report of Sale was made in favor of Remate and a copy was in Remate's

17 possession.  DSC's interest attached when the Vehicle was acquired by Remate on

18 June 2, 2011 and trumps the interest of any alleged unsecured third party financier

19 of the Vehicle.  DSC is a creditor with a perfected priority security interest and its

20 rights in the Vehicle are senior to any interest of Mr. Escobedo.  See Cal. Comm.

21 Code §9301 *et seq.*

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

8443.0037 / 754634.1                              4

Case 8:13-cv-00907-DOC-JPR   Document 57-1   Filed 05/15/15   Page 14 of 93   Page ID
#:412
Case 8:13-cv-00907-DOC-JPR   Document 8   Filed 07/29/13   Page 5 of 25   Page ID #:40

15.    DSC contends that under California law it has a perfected priority security interest in the Vehicle that is superior to all other claimants.  DSC neither had nor has any knowledge of the conduct giving rise to the forfeiture.  As a creditor with a perfected priority security interest in the Vehicle without knowledge of the conduct giving rise to the forfeiture, DSC is an innocent owner which status entitles DSC to a return of the Vehicle.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed July 17, 2013, at Norwalk_____, California.



TROY ROGERS

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444 • Fax (714) 835-2889

8443.0037 / 754634.1

5

Case 8:13-cv-00907-DOC-JPR   Document 57-1   Filed 05/15/15   Page 15 of 93   Page ID
#:413
Case 8:13-cv-00907-DOC-JPR   Document 8   Filed 07/29/13   Page 6 of 25   Page ID #:41

# **TABLE OF CONTENTS**

|     |           | PAGE |
| --- | --------- | ---- |
| 1.  | Exhibit 1 | 6    |
| 2.  | Exhibit 2 | 16   |
| 3.  | Exhibit 3 | 28   |
| 4.  | Exhibit 4 | 31   |
| 5.  | Exhibit 5 | 33   |
| 6.  | Exhibit 6 | 36   |
| 7.  | Exhibit 7 | 39   |
| 8.  | Exhibit 8 | 42   |

8443.0037 / 768451.1

Case 8:13-cv-00907-DOC-JPR   Document 57-1   Filed 05/15/15   Page 16 of 93   Page ID
Case 8:12-cv-01497-DOC-JPR   Document 13   Filed 02/11/13   Page 19 of 1   Page ID #:216
#:414
Case 8:13-cv-00907-DOC-JPR   Document 8   Filed 07/29/13   Page 7 of 25   Page ID #:42

# EXHIBIT 1

Case 8:13-cv-00907-DOC-JPR   Document 57-1   Filed 05/15/15   Page 17 of 93   Page ID #:415

Case 8:13-cv-01407-DOC-JPR   Document 13   Filed 02/11/13   Page 20 of 71   Page ID #:217
Case 8:13-cv-00907-DOC-JPR   Document 8   Filed 07/29/13   Page 8 of 25   Page ID #:43

## DEMAND PROMISSORY NOTE
## AND SECURITY AGREEMENT

THIS IS A COPY OF THE DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT, THE SOLE ORIGINAL COUNTERPART OF THIS DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT HAS BEEN DELIVERED TO TEXTRON FINANCIAL CORPORATION, AS AGENT, UNDER (THAT CERTAIN AMENDED AND RESTATED PARTICIPATION AGREEMENT DATED AS OF MAY 31, 2006) EXCEPT AS EXPRESSLY PERMITTED IN SAID AMENDED AND RESTATED PARTICIPATION AGREEMENT, ANY PURCHASE OR OTHER TRANSFER OF THIS DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT FROM DEALER SERVICES CORPORATION WILL VIOLATE THE RIGHTS OF THE PARTICIPANTS UNDER SAID AMENDED AND RESTATED PARTICIPATION AGREEMENT.

TO:     Dealer Services Corporation
        11555 N. Meridian St.
        Suite 220
        Carmel, IN 46092

FOR VALUE RECEIVED, the undersigned dealer ("Dealer") promises to pay to the order of Dealer Service Company, a Delaware corporation ("DSC"), with its principal office at 11555 N. Meridian Street, Suite 220, Carmel, Indiana 46032 or such other place as DSC may designate in writing, in lawful money of the United States of America, the principal sum of FIFTY THOUSAND DOLLARS ($50,000.00) (the "Credit Limit") or such greater or lesser sum which may be advanced from time to time, together with all costs, interest and fees and expenses as provided for under this Note and all accrued interest which shall accrue at a variable rate (based upon a 360 day year), adjusted each business day, based upon the most recent prime rate published in The Wall Street Journal plus an additional interest factor per Dealer's Term Sheet on a per annum basis and shall be compounded daily.

In the event that Dealer is in Default under the terms of this Note, interest shall accrue at a variable rate, adjusted each business day, based upon the most recent prime rate published in The Wall Street Journal plus eight percent (8%) per annum, with such interest compounded daily and accruing from the date on which the Event of Default first occurred. Upon demand by DSC or upon an Event of Default, Dealer shall pay the Liabilities as provided herein.

The undersigned Dealer waives demand, presentment for payment, notice of dishonor, protest and notice of protest, and expressly agrees that that this Note and all payments coming due under it may be extended or modified, from time to time without in any way affecting Dealer's liability hereunder. Dealer understands that this Note matures upon issuances, and that DSC may, at any time, and without notice to Dealer, with or without cause, demand that the Note be immediately paid in full. The demand nature of this Note does not limit DSC's election of remedies upon a default by Dealer. At DSC's option, DSC may reference a term of default for the purpose of permitting DSC to receive interest at the Default Rate. It is agreed that DSC may demand partial payments under this Note and said partial demand shall not change DSC's rights under this Note.

NOW, THEREFORE in consideration of the mutual covenants, agreements and conditions contained herein, the parties agree as follows:

1. DEFINITIONS:  Capitalized terms used in this Note without definition shall have the respective meanings as set forth below. All other terms in this Note shall be defined by the meanings provided for in the Uniform Commercial Code as enacted in the State of Indiana where applicable.

(a)   "Advance" shall mean all loans or payments pursuant to this Note made by DSC to Dealer or on Dealer's behalf to any third party.

(b)   "Check" shall mean all payments by, or on behalf of, Dealer to DSC not made in cash or via certified funds.

(c)   "Collateral" shall mean all Dealer's assets and properties wherever located, including without limitation all Equipment of any kind or nature, all vehicles, vehicle parts and other inventory now owned or hereafter acquired, without limitation, the Purchase Money Inventory as hereinafter defined, and all additions, accessories, replacements, and proceeds thereof; all documents, accounts, chattel paper, and general intangible now owned or hereafter acquired by Dealer together with the proceeds thereof; all of Dealer's books and records relating to the foregoing.

(d)   "Collateral Audit Fee" shall mean the non-refundable fee payable to DSC by Dealer in the amount set forth on the Term Sheet that relates to audits of Dealer's Purchase Money Inventory that may be conducted from time to time by DSC or its representatives.

(e)   "Credit Limit" shall mean the maximum amount Dealer may borrow at any one time under this Note.

(f)   "Dealer's Place of Business" shall mean that place where the Collateral and Dealer's books and records are kept, where Dealer's operations are conducted from and/or if Dealer is a legally recognized business entity where Dealer's registered office is located.

EXHIBIT 1

(g) "Default Rate" shall mean the rate of interest allowed under this Note which shall accrue on all Dealer's liabilities while any uncured event of default by Dealer exists.

(h) "Equipment" shall mean all goods other than Inventory held by Dealer in the ordinary course of business.

(i) "Extension" shall mean that grant by DSC to Dealer of additional time an Advance for an item of Purchase Money Inventory becomes due and payable.

(j) "Floorplan Fee" shall mean the fee charged by DSC to Dealer set forth on the Term Sheet for each individual item of Purchase Money Inventory. Additionally, in the event no Term Sheet is executed and effective, then the Floorplan Fee shall be equal to One Hundred Fifty Dollars ($150.00).

(k) "Interest" shall mean that finance charge which accrues on all Liabilities owed by Dealer to DSC under or arising out of this Note.

(l) "Late Fee" shall mean the fee charged by DSC to Dealer for each item of Purchase Money Inventory assessed each week that Dealer fails to remit payment under this Note when due.

(m) "Liabilities" shall mean all Advances, debts, Purchase Money Inventory Liabilities, financial obligations, charges, expenses, fees, attorney fees, costs of collection, covenants, and duties owing, arising, due or payable from Dealer to DSC of any kind or nature, present of future, under any instrument, guaranty, or other document whether arising under this Note or any other agreement, whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising and however acquired including, without limitation, all interest, Floorplan Fee(s), Collateral Audit Fees, NSF Fees, Late Fee(s), and other expenses, costs or fees provided by this Agreement.

(n) "Maturity Date" shall mean the date an Advance for an item of Purchase Money Inventory becomes due and payable.

(o) "Note" shall mean this Demand Promissory Note and Security Agreement and all present and future Addendums referenced herein.

(p) "Period" shall mean that number of days set forth in the Term Sheet, beginning on the date of an Advance and ending on the Maturity Date, and any extension thereto, that an item of Purchase Money Inventory will be financed by DSC to Dealer pursuant to the terms of this Note. Additionally, in the event no Term Sheet is executed and effective, then the Period shall be Thirty (30) days.

(q) "Inventory" shall mean all items of Inventory, including but not limited to, Purchase Money Inventory.

(r) "Purchase Money Inventory" shall mean a Unit acquired by Dealer with funds advanced by DSC for the purpose of acquiring said Unit.

(s) "Purchase Money Inventory Liabilities" shall mean all amounts due and payable from Dealer to DSC with respect to specific Advances for specific items of Purchase Money Inventory now existing or hereafter arising.

(t) "Retail Installment Contract" shall mean a contract entered into between Dealer and Dealer's customer in the ordinary course of business where DSC Purchase Money Inventory is the item sold under the contract.

(u) "Shortage" shall mean the difference between a payment received by DSC and the amount owing arising, due, or payable from Dealer to DSC with respect to specific Advances for specific items of Purchase Money Inventory.

(v) "Terms and Conditions" shall mean all provisions of this Note.

(w) "Term Sheet" shall mean the addendum to this Note, as modified from time to time, which indicates specific binding terms, including but not limited to, Credit Limits, Floorplan Fees, Collateral Audit Fees, Late Fees Interest and Number of Maturity Date Extensions.

(x) "Title" shall mean the certificate of title or other document evidencing ownership of a Unit issued by a duly authorized state, province or government agency.

(y) . "UCC" shall mean the Uniform Commercial Code as enacted in the State of Indiana.

(z) "Unit" shall mean any manufactured item which is the subject of an Advance by DSC and floorplanned by Dealer, including but not limited to vehicles.

**2. GRANT OF SECURITY INTEREST:** In order to secure full and prompt payment of all Liabilities and performance of all obligations of Dealer to DSC, Dealer hereby:

(a) Grants to DSC, together with its subsidiaries, affiliates and assigns, a continuing security interest in all Collateral, including but not limited to, Inventory and Purchase Money Inventory. This security interest is given to DSC to secure Dealer's obligations to DSC under this Note, or may be amended from time to time, all without relief from valuation or appraisement laws and with reasonable attorney's fees and all cost of collections.

(b) Agrees to execute and deliver such financing statements and amendments thereto as DSC shall require from time to time.

**3. DEALER'S REPRESENTIONS, WARRANTIES AND COVENANTS:** In order to induce DSC to make Advances hereunder, Dealer hereby represents, convents and warrants:

(a) To sell and deliver Inventory only in the ordinary course of Dealer's business, and not to rent or dispose of Collateral except as herein provided, nor permit any lien or encumbrance of the Collateral without the written consent of DSC.

(b) To keep Collateral only at Dealer's Place of Business and not to remove from Collateral from such place for a period exceeding twenty-four (24) hours, any item of Purchase Money Inventory, unless such item if Purchase Money Inventory is the subject of a Retail Installment Sales Contract or otherwise authorized in writing by DSC.

(c) To keep Collateral in good repair and keep Collateral insured against all physical risks in such amounts and under such policies issued by such insurance company as are deemed necessary and satisfactory by DSC. DSC shall be named "loss payee" to the extent DSC's interest may appear. In the event Dealer fails to procure, maintain or provide proof of such insurance coverage, DSC may, in its sole discretion, purchase necessary insurance to protect its interests and collect the costs from Dealer pursuant to the terms of this Note.

(d) To keep at all times complete and accurate records of Dealer's business and provide DSC upon demand copies of such records and financial information regarding Dealer's business and financial condition as DSC may reasonably request, and Dealer authorizes DSC to share such information and any other information relating to Dealer's transaction with DSC to any and all persons or parties as DSC deems necessary.

(e) To allow DSC and its representatives to inspect the Collateral during normal business hours and at other reasonable times and to inspect and make copies of Dealer's books and records. Dealer shall pay DSC upon demand for the costs and expenses incurred by DSC or its representatives with such inspections of Dealer's books and records and audits of Dealer's Collateral.

(f) To hold any funds and proceeds payable to DSC, in the same form as received, in trust for DSC and remit same to DSC pursuant to this Note.

(g) That DSC may hold any sums or money belonging or payable to Dealer and apply the same to any outstanding Liabilities of Dealer.

(h) That any statement of Dealer's account furnished to Dealer by DSC shall, to the extent no objection is made in writing by Dealer within 30 days after receipt of such statement, shall constitute a definitive statement of Dealer's account as of the date of the statement and shall be binding upon Dealer.

(i) To refrain from paying or declaring any dividends or distributions, redeeming of any capital stock, repaying subordinate debt or other loans to any principal of guarantee of Dealer's Business, during anytime a Liability exists from Dealer to DSC.

(j)    To pay immediately and remain current with all levied taxes, assessments, charges and expenses which may now or hereinafter be levied or assessed against the Collateral and business. DSC may, in its sole discretion, pay such taxes, assessments, charges and expenses to protect its interests and collect the costs from Dealer pursuant to the terms of this Note.

(k)    That Dealer has obtained all necessary permits and licenses pursuant to local, state and federal required to operate its business as a wholesale or retail seller of the Collateral and has complied with all filing requirements to operate as the entity or business type on record with the appropriate governmental office of Dealer's State.

(l)    That no legal, arbitration, or administrative proceedings are pending or threatened against Dealer which could reasonably affect the Collateral or which materially and adversely affect the properties, business, prospects, or condition, financial or otherwise, of the Dealer or Dealer's ability to honor its obligations hereunder.

(m)    That all payments made by Dealer to DSC via check, at the time of issuance, are written upon an account that contains immediately available funds sufficient to cover the dollar amount of the check.

(n)    That Dealer's legal name and address as appears on the last page of the Note is accurate and complete.

(o)    That Dealer shall immediately notify DSC in writing of any change in Dealer's legal name, address, business type, ownership,   management or control and shall execute any documents necessary at DSC's request to bring Dealer into compliance with this Note.

(p)    That Dealer and all guarantors are legally competent and have authority to enter into and execute this Note and any and all other documents.

(q)    That Dealer shall not disclose to any third party, without the written consent of DSC, any terms and conditions applicable to Dealer's DSC account, whether such terms and conditions are contained in the Term Sheet of this Note.

(r)    That Dealer expressly authorizes and agrees to accept all facsimile transmissions from DSC including, but not limited to, account information and promotional materials.

(s)    That Dealer may have an account with DSC where information can be accessed and transmissions can be sent through DSC's website located at www.dsmsvsplus.com.  Dealer shall have the means to control access to the account information by passwords and a dealer account number in accordance with policies and procedures set forth by DSC. To participate, Dealer shall execute all documents required by DSC to register for such additional service and shall abide by DSC's policies and procedures set forth therein. Dealer agrees such documents shall be incorporated herein by reference and made part of this Note.

**4. CREDIT TERMS AND PROCEDURES:**

(a)    The decision to make an Advance to Dealer is the exclusive right of DSC and Dealer understands that DSC may refuse to make an Advance at any time, with or without cause, Dealer is not obligated to finance any Purchase Money Inventory through DSC.

(b)    All Dealer requests to DSC for an Advance for the purpose of acquiring Purchase Money Inventory must include a copy of the bill of sale for any Purchase Money Inventory, indicating the actual purchase price and vendor, a completed Odometer Disclosure Statement and the Unit's Title showing that it has been duly assigned to Dealer. Other Dealer requests to DSC for an Advance for purposes other than enabling Dealer to acquire an item of Purchase Money Inventory for resale must include a written request setting forth the purpose for the requested Advance and any other information as DSC may require. If DSC elects to make any such Advance, the Advance shall be deemed an additional Liability under this Note from the date on which the Advance is made.

(c)    DSC is not required but may make, without notice to Dealer and without regard to the Dealer's Credit Limit, Advance on Dealer's behalf, for any liability to a third party at any time Dealer is in default under the terms of this Note. If DSC elects to make any such Advance, the Advance shall be deemed an additional Liability under this Note from the date on which the Advance is made.

(d)　Dealer must be in complete compliance with this Note before an Advance request will be approved by DSC. Additionally, DSC may require certain other information from Dealer to be submitted on a certified and sworn affidavit including, but not limited to, a statement that Dealer has not used any Advance for other than its originally requested and verified purpose.

(e)　Dealer shall pay to DSC at the offices of DSC Inventory and Purchase Money Inventory Liabilities, on demand and without notice, with respect to an Item of Inventory and Purchase Money Inventory on the earlier of: (a) forty-eight (48) hours after the disposition by sale or otherwise of an Item of Inventory or Purchase Money Inventory or (b) the Maturity Date. DSC shall apply such payments to the Inventory or Purchase Money Inventory Liabilities incurred from said Item of Inventory or Purchase Money Inventory. Notwithstanding anything herein to the contrary, after the disposition by sale or otherwise and subsequent payment to DSC as delineated above, if a Shortage exists between any payments received by DSC and the Inventory or Purchase Money Inventory Liability with respect to an Item of Purchase Money Inventory, that Shortage shall be considered a Liability owed by Dealer to DSC and secured with Collateral other than Purchase Money Inventory. Dealer shall pay to DSC at the offices of DSC all other Liabilities, on demand and without notice. The order and method of application of such payments of the Liabilities shall be in the discretion of DSC.

(f)　If Dealer is in compliance with all other provisions of this Note, DSC may, in its sole discretion, permit an Extension of the Maturity Date relative to an Item of Inventory, upon the payment of Shortage, Interest, Floorplan Fee(s) and a principal reduction of the outstanding Advance relating to such Item of Inventory pursuant to this Note as established in the Term Sheet.

(g)　So long as Dealer is not in default of this Note, Dealer may sell the Inventory to bona fide buyers in the ordinary and regular course of Dealer's business, but nothing herein shall be deemed to waive or release any interest DSC may have hereunder or under any other agreement in any proceeds or replacements of the Inventory. Upon the sale of any Item of Inventory, Dealer shall hold the amount received from the disposition of Inventory in trust for the benefit of DSC and Dealer shall pay to DSC, in accordance with this Note an amount equal to the unpaid balance of the Inventory Liabilities and Liabilities relating to such Inventory.

(h)　Dealer shall allow DSC's officers, employees, agents, attorneys, designees and representatives, including but not limited to representatives of Textron Financial Corporation, access to Dealer's books and records and the Dealer's Place of Business to conduct an audit of Dealer's Inventory. Dealer shall be responsible for and agrees to pay all of DSC's expenses in conducting such audit.

(i)　Upon request by Dealer to obtain, for a legitimate business purpose, the Title to a Unit or Units held by DSC, DSC shall consider said request and, in DSC's sole discretion, may grant such request. In the event DSC grants such request, Dealer must deliver to DSC a check or draft in an amount equal to the Advance(s) relating to such Unit(s).  Title(s) must be returned to DSC within the time period established by DSC or any outstanding Liabilities(s), Floorplan Fee(s) or accrued interest relating to Advance(s) for such Unit(s) shall become immediately due and payable and DSC may deposit or present such check or draft for payment in partial or whole satisfaction thereof, whichever the case may be.

(j)　To protect DSC's interest, Dealer authorizes DSC to obtain credit information from a credit bureau, and any financial institutions or trade creditor that Dealer has provided as well as other credit investigation that DSC in DSC's sole discretiondeems necessary. Dealer also authorizes DSC to contact any third parties to disclose information, including information contained in this application, for the purpose of, among other things, obtaining intercreditor agreements and perfection of DSC's security interest. Further, if credit line is granted, Dealer authorizes DSC to review Dealer's account periodically, which may include obtaining additional credit reports.

(k)　Dealer's account is subject to NSF and Late Fee charges and Dealer agrees that the NSF and Late Fee charged pursuant to the terms of this Note is a reasonable estimate of DSC's probable losses due to the delay, inconvenience, and administrative expenses associated with payment.

5.　EVENT OF DEFAULT:　The occurrence of any of the following events shall be considered an "Event of Default" under this Note:

(a)　The Dealer fails to perform any of its obligations, undertakings or covenants hereunder, including but not limited to, failure to make payment upon maturity or upon demand of any outstanding Liability under this Note; or

(b).  Any warranty or representation made by the Dealer proving to have been false or misleading in any material respect when made, or any schedule, certificate, financial statement, report, notice, or other writing furnished by Dealer to DSC proving to have been false or misleading in any material respect when made or delivered; or

(c).  Any damage or destruction of a substantial part of the Collateral occurs and appropriate insurance naming DSC as "Loss Payee" is not in effect; or

(d).  The Dealer becomes insolvent or consents to the appointment of a trustee, receiver or other custodian for the Dealer or any property thereof, or makes a general assignment for the benefit of creditors; or any bankruptcy, reorganization, debt arrangement, or other case or proceeding under any bankruptcy or insolvency law, or a dissolution or liquidation proceedings is commenced in respect of the Dealer; or

(e).  Any material change in the management, ownership or control of Dealer; or

(f).  The death or incompetence of Dealer or any Guarantor of this Note; or

(g).  Any change in the financial condition of Dealer or Guarantor(s) that DSC deems adverse; or

(h).  DSC deems itself insecure for any reason.

6.   RIGHTS AND REMEDIES:  Upon an event of default, DSC may, at its option and without notice, exercise any of the following rights in a separate, successive or concurrent fashion and such exercise of any right shall not preclude pursuit of other rights and remedies at a later time:

(a)   Demand immediate payment of all Liabilities under this Note and all other indebtedness owed to DSC by Dealer.  DSC shall have all the rights and remedies available hereunder, at law or in equity, including without limitation, the rights and remedies of a secured party under the Uniform Commercial Code in effect in the jurisdiction where the Collateral is kept.  These rights and remedies include the right to cancel any unfunded Advances, to enter into Dealer's premises with or without legal process, but without force, and to take possession and remove the Collateral.  At DSC's request and to the extent Dealer may lawfully do so, Dealer shall assemble, prepare for removal and make available to DSC at a place designated by DSC which is reasonably convenient for DSC and Dealer, such items of Collateral as DSC may deem sufficient to cover all Dealer's Liabilities to DSC; and

(b)   Initiate proceedings to appoint a receiver in any court of competent jurisdiction.  Dealer waives the right to notice and hearing of the appointment of a receiver and consents to the appointment without requiring DSC to post a bond; and

(c)   To the extent allowed by law, Dealer gives consent to DSC to proceed in any action to collect on or execute against any and all bonds that Dealer has posted with any governmental authorities.

(d)   Without limiting the foregoing, DSC may take control of any funds generated by the Collateral, and in DSC's name or Dealer's name, demand, collect, receipt for, settle, compromise, sue for, repossess, accept returns of, foreclose or realize upon any Collateral.  Dealer waives any and all rights it may have to notice prior to seizure by DSC of any Collateral.  Dealer agrees that private sale of any item financed by DSC at the amount owed to DSC on that item, less costs reasonably incurred by DSC in preparation of disposition of the Collateral, shall be a commercially reasonable method of disposition of the Collateral.  Dealer shall be liable to DSC for any deficiency resulting from DSC's disposition of the Collateral.  Dealer agrees that the Collateral is of the type customarily sold on a recognized market and that DSC therefore has no obligation to notify Dealer prior to a sale.  However, Dealer agrees that ten (10) days written notice of public sale date or the date after which a private sale may occur shall be reasonable notice.  DSC shall not be responsible for the accuracy or validity of any document or for the existence or value of any Collateral.  DSC shall not be required to marshal any assets in favor of Dealer.  DSC has no obligation to pursue any third person for any Liability or obligation owed to Dealer.  Dealer further agrees to pay reasonable attorney fees and collection costs incurred by DSC in enforcing this Note after an event of default by Dealer.  To the extent not prohibited by law, Dealer waives all appraisement, valuation, anti-deficiency, homestead, exemption or usury laws now or hereafter in effect and releases all right to appeal after payment in full.

7. POWER OF ATTORNEY: Dealer shall execute an irrevocable Power of Attorney in DSC's Favor and such Power of Attorney shall be incorporated herein by reference and made a part of this Note.

8. GUARANTEE(S): Dealer shall cause all owners of Dealer to execute an Individual Personal Guarantee. If Dealer is owned in whole or in part by a legally recognized business entity, then Dealer shall cause said entity to execute a Corporate Guarantee in addition to all required Individual Personal Guarantees. All such and the same shall be incorporated herein by reference and made a part of this Note.

9. TERM SHEET(S): Prior to an Advance under this Note, Dealer shall execute a Term Sheet, which may be amended from time to time, and the same shall be incorporated herein by reference and made a part of this Note.

10. ASSIGNMENT: This Note may be assigned by DSC but Dealer may not assign this Note without the prior written consent of DSC.

11. INDEMNIFICATION: Dealer shall indemnify and hold DSC harmless from and against all, loss, damage, costs, or expenses of whatever kind or nature relating to claims of third parties arising out of or in any way connected to this Note or Dealer's business affairs including, without limitation, attorneys' fees and expenses incurred both in the defense of any action against DSC and in any action to enforce these indemnity rights as against the Dealer.

12. NO JOINT VENTURE OR PARTNERSHIP: Nothing contained herein shall confer upon DSC or Dealer any interest in, or subject either of them to any liability for, or in respect of the business, assets, profits, losses or liabilities of the other. This Note does not constitute and shall not be characterized as a joint venture or partnership between DSC and Dealer. Nothing in this section shall limit or restrict the respective obligations and undertakings of DSC and Dealer hereunder.

13. AMENDMENT OR MODIFICATION: This Agreement may not be modified or amended except upon the written consent of DSC and Dealer. However, descriptions of specific items of Collateral, amounts and terms of Advances, Maturity Date Extensions and rates, and finance, service, late and other charges allowed by this Note may be proved by ordinary course of business records of DSC.

14. NOTICES: All notices, requests and demands to or upon the respective parties hereto shall be deemed to have been duly given or made: if by hand or by facsimile, immediately upon the Business Day of receipt, if received before 5 p.m., recipient's time, otherwise on the next Business Day; if by Federal Express, Express Mail or any other overnight delivery service with proof of next day delivery on a Business Day, one (1) Business Day after dispatch; and if mailed by certified mail, return receipt requested, five (5) days after mailing. All notices, requests and demands are to be given or made to the respective parties at the address set forth herein:

To DSC:     Dealer Services Corporation,
            11333 N. Meridian St., Suite 220, Carmel, IN 46032
            Telephone (317) 571-3721 Facsimile:  (317) 571-3737

To Dealer:  NCA INTERNATIONAL SERVICES, INC. DBA REMATE DEL MONTE
            3235 N PECK RD
            EL MONTE CA 91732

15. NO WAIVER:  No failure or delay by DSC in exercising any right, power, or privilege under this Note will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege, or the exercise of any other right, power, or privilege.

16. TERMINATION:  No termination of this Note shall alter Dealer's obligations and Liabilities relating to amounts limited or committed prior to the effective date of such termination, and all rights and remedies, including without limitation, the security interest granted herein and the rights of DSC as a secured party hereunder, shall extend until all Liabilities owed by Dealer to DSC have been satisfied.

17. LEGAL FEES AND COLLECTION COSTS:  Dealer shall pay to DSC all reasonable legal fees, expenses and collection costs incurred as a result of Dealer's default or failure of any obligation under this Note.

18. SEVERABILITY:  Any provision of this Agreement that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Agreement or affecting the validity or enforceability of any provision of this Agreement in any other jurisdiction.

THIS IS A COPY OF THE DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT; THE SOLE ORIGINAL COUNTERPART OF THIS DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT HAS BEEN DELIVERED TO TEXTRON FINANCIAL CORPORATION, AS AGENT, UNDER THAT CERTAIN AMENDED AND RESTATED PARTICIPATION AGREEMENT DATED AS OF MAY 31, 2006, EXCEPT AS EXPRESSLY PERMITTED IN SAID AMENDED AND RESTATED PARTICIPATION AGREEMENT, ANY PURCHASE OR OTHER TRANSFER OF THIS DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT FROM DEALER SERVICES CORPORATION WILL VIOLATE THE RIGHTS OF THE PARTICIPANTS UNDER SAID AMENDED AND RESTATED PARTICIPATION AGREEMENT.

19. GOVERNING LAW: The validity, enforceability and interpretation of this Note shall be governed by the laws of the State of Indiana without regard to conflicts of laws provisions thereof.

20. JURISDICTION AND VENUE: The state and federal courts located in Indianapolis, Indiana shall have jurisdiction to determine any claim or dispute pertaining to this Note and said courts shall be the proper Venue for any such claim or dispute. Dealer expressly consents to such jurisdiction and venue and waives any claim of inconvenient forum with respect to any action brought in such court.

21. WAIVER OF BOND: Dealer waives, to the extent permitted by law, any bond or surety or security on such bond which might, but for this waiver, be required of DSC.

22. WAIVER OF JURY TRIAL: DEALER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY OTHER LOAN DOCUMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS NOTE OR ANY COURSE OF CONDUCT, STATEMENT, WHETHER ORAL OR WRITTEN, OR ACTIONS OF THE DEALER. THE DEALER SHALL NOT SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THESE PROVISIONS SHALL HAVE NOT BEEN DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY DSC EXCEPT BY WRITTEN INSTRUMENT EXECUTED BY BOTH DEALER AND DSC.

23. HEADINGS: Paragraph headings used in this Note are for reference only and shall not affect the construction of this Note.

WHEREFORE, the parties have, by their duly authorized representatives, executed this Note on the 23RD day of AUGUST, 2008

Dealer: NCA INTERNATIONAL SERVICES, INC. DBA REMATE DEL MONTE

By: _____ President

CECILIA BADEN MARISCAL, PRESIDENT

Accepted by:

Dealer Services Corporation

By: _____

Case 8:13-cv-00907-DOC-JPR   Document 57-1   Filed 05/15/15   Page 26 of 93   Page ID
Case 8:12-cv-01497-DOC-JPR   Document 13-4 Filed 02/11/13   Page 29 of 71   Page ID #:226
Case 8:13-cv-00907-DOC-JPR   Document 8   Filed 07/29/13   Page 17 of 25   Page ID #:52

# EXHIBIT 2

Case 8:13-cv-00907-DOC-JPR   Document 57-1   Filed 05/15/15   Page 27 of 93   Page ID
Case 8:12-cv-01497-DOC-JPR   Document 13425   Filed 02/11/13   Page 30 of 71   Page ID #:227
Case 8:13-cv-00907-DOC-JPR   Document 8   Filed 07/29/13   Page 18 of 25   Page ID #:53

## DEMAND PROMISSORY NOTE
## AND SECURITY AGREEMENT

TO:     Dealer Services Corporation
        1320 City Center Drive
        Suite 100
        Carmel, IN 46032

FOR VALUE RECEIVED, the undersigned dealer ("Dealer") promises to pay to the order of Dealer Services Corporation, a Delaware corporation ("DSC"), with its principal office at 1320 City Center Drive, Suite 100, Carmel, Indiana 46032 or such other place as DSC may designate in writing, in lawful money of the United States of America, the principal sum of One Hundred Fifty Thousand Dollars and Zero Cents ($150,000.00) (the "Credit Limit") or such greater or lesser sum which may be advanced from time to time, together with all costs, interest, fees, and expenses as provided for under this Note.

NOW, THEREFORE, in consideration of the mutual covenants, agreements and conditions contained herein, the parties agree as follows:

1. DEFINITIONS: Capitalized terms used in this Note without definition shall have the respective meanings as set forth below. All other terms in this Note shall be defined by the meanings provided for in the Uniform Commercial Code as provided for herein.

(a)     "Advance" shall mean any loan or payment in any amount made pursuant to this Note by DSC to Dealer or on Dealer's behalf to any third party.

(b)     "ACH" shall mean all payments by, or on behalf of, Dealer to DSC made via a nationwide electronic funds transfer network processing electronic debit entries from Dealer's bank accounts.

(c)     "Base Rate" shall mean the greater of that variable rate of interest or that fixed rate of interest as stated in the DSC Published Rate, Fee and Term Schedule, or in the event no DSC Published Rate, Fee and Term Schedule is published and effective, then 5.00%.

(d)     "Boarding Fee" shall mean that DSC Universal Fee charged by DSC to Dealer and added to the principal amount of the Advance for each individual item of DSC Financed Inventory which is the subject of a DSC Lease Program Advance.

(e)     "Check" shall mean all payments by, or on behalf of, Dealer to DSC not made in cash, via certified funds, wire transfer or ACH.

(f)     "Collateral" shall have the meaning set forth in Paragraph 2 of this Note.

(g)     "Contract Rate" shall mean that rate of interest as stated on Dealer's Term Sheet. Additionally, in the event no Term Sheet is executed and effective, then 4.25%.

(h)     "Credit Limit" shall mean the maximum amount Dealer may borrow at any one time under this Note.

(i)     "Credit Line" shall mean Dealer's DSC floorplan line of credit pursuant to and under this Note.

(j)     "Dealer's Place of Business" shall mean that place where the Collateral and Dealer's books and records are kept, where Dealer's operations are conducted from and/or if Dealer is a legally recognized business entity where Dealer's registered office is located.

(k)     "Dealer's Home Branch" shall mean the DSC branch location for which Dealer's DSC Credit Line is assigned to by DSC for servicing and administration.

(l)     "Default Rate" shall mean that rate of interest as stated in the DSC Published Rate, Fee and Term Schedule, or in the event no DSC Published Rate, Fee and Term Schedule is published and effective, then 8%.

(m)     "DSC Administrative Fee" shall mean any fee charged by DSC to Dealer for any service or process requested by Dealer or unilaterally undertaken by DSC, reasonable or necessary to administer or monitor the Credit Line, that is not a Floorplan Fee or DSC Universal Fee.

1/11                                          DSC Account # 12344



(n) "DSC Financed Inventory" shall mean any Unit now or hereafter acquired or retained by Dealer pursuant to an Advance under this Note. DSC Financed Inventory includes Purchase Money Inventory

(o) "DSC Lease Program" shall mean any DSC program offered to Dealer designed to allow Dealer to obtain an Advance for a Unit which is the subject of a Dealer originated and owned consumer lease transaction.

(p) "DSC Published Rate, Fee and Term Schedule" shall mean that current schedule of universal interest rates and fees assessed by DSC, including DSC Universal Fees, late fees, fees relating to returned checks or ACH payments due to insufficient funds, the Base Rate, Risk Rate and Default Rate and notice of amendments to Terms and Conditions published by DSC via posting such schedule of such universal rates and fees and notice of amendment to Terms and Conditions at www.discoverdsc.com and posted at each DSC branch office or location.

(q) "DSC Universal Fee" shall mean any published fee as stated in the DSC Published Rate, Fee and Term Schedule charged by DSC to Dealer.

(r) "Equipment" shall mean all goods other than Inventory held for sale, lease, or daily rental by Dealer in the ordinary course of business.

(s) "Event of Default" shall have the meaning set forth in Paragraph 6 of this Note.

(t) "Extension" shall mean that grant by DSC to Dealer of additional time that an Advance for an item of DSC Financed Inventory becomes due and payable.

(u) "Floorplan Fee" shall mean the fee charged by DSC to Dealer set forth on the Term Sheet for each individual item of DSC Financed Inventory. Additionally, in the event no Term Sheet is executed and effective, then the Floorplan Fee shall be equal to One Hundred Fifty Dollars ($150.00).

(v) "GPS Fee" shall mean that DSC Universal Fee charged by DSC to Dealer and added to the principal amount of the Advance for the global positioning system supplied for each individual item of DSC Financed Inventory which is the subject of a DSC Lease Program Advance.

(w) "Interest" shall mean the aggregate rate of interest which accrues on all Liabilities owed by Dealer to DSC under or arising out of this Note by combining the Base Rate plus the applicable Contract Rate, Risk Rate or Default Rate.

(x) "Inventory" shall mean all Units held by Dealer for wholesale or retail sale, lease, or rent or leased by Dealer. Inventory includes DSC Financed Inventory.

(y) "Liabilities" shall mean any and all Advances, debts, DSC Financed Inventory Liabilities, financial obligations, DSC Administrative Fees, DSC Universal Fees, Interest, Floorplan Fees, NSF fees, late fees, charges, expenses, attorney fees, costs of collection, covenants, and duties owing, arising, due or payable from Dealer to DSC of any kind or nature, present of future, under any instrument, guaranty, or other document whether arising under this Note or any other agreement, whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising and however acquired.

(z) "Maturity Date" shall mean the date an Advance for an item of DSC Financed Inventory becomes due and payable. In the event the Maturity Date relating to a specific Advance for an item of DSC Financed Inventory becomes due and payable falls on a federal banking holiday, Saturday or Sunday, the Maturity Date for such specific Advance shall be the next business date subsequent to such federal banking holiday, Saturday or Sunday.

(aa) "MSO" shall mean the manufacturer's certificate of origin or other document evidencing ownership of a Unit issued by the manufacturer of the Unit.

(bb) "Note" shall mean this Demand Promissory Note and Security Agreement and all present and future amendments, modifications and addendums referenced herein.

(cc) "Period" shall mean that number of days set forth in the Term Sheet, beginning on the date of an Advance and ending on the Maturity Date, and any extension thereto, that an item of DSC Financed Inventory will be financed by DSC to Dealer pursuant to the terms of this Note. Additionally, in the event no Term Sheet is executed and effective, then the Period shall be Thirty (30) days.

(dd) "Purchase Money Inventory" shall mean a Unit acquired by Dealer pursuant to an Advance under this Note.

2/11                                    DSC Account # 12344

(ee)     "Risk Rate" shall mean that rate of interest as stated in the DSC Published Rate, Fee and Term Schedule, or in the event no DSC Published Rate, Fee and Term Schedule is published and effective, then 6%;

(ff)     "Shortage" shall mean the difference between a payment received by DSC and the amount owing, arising, due, or payable from Dealer to DSC with respect to a specific Advance for a specific item of DSC Financed Inventory.

(gg)     "Terms and Conditions" shall mean all provisions of this Note with the exception of terms specifically relating to Dealer's Floorplan Fees and Contract Rate and any other term referenced in Dealer's Term Sheet.

(hh)     "Term Sheet" shall mean the addendum to this Note, as modified from time to time, which indicates specific terms regarding Dealer's Credit Limit, Floorplan Fees, Contract Rate of Interest, Period, principal reduction, and Number of Maturity Date Extensions.

(ii)     "Title" shall mean the certificate of title or other document evidencing ownership of a Unit issued by a duly authorized state, province or government agency.

(jj)     "UCC" shall mean the Uniform Commercial Code as enacted in the State where the Collateral is located.

(kk)     "Unit" shall mean any manufactured item, including vehicles for which a certificate of title or a MSO exists which is the subject of an Advance by DSC to Dealer under this Note.

(ll)     "Vehicle Service Contract Fee" shall mean that DSC Universal Fee charged by DSC to Dealer and added to the principal amount of the Advance for the service contract supplied for each individual item of DSC Financed Inventory which is the subject of a DSC Lease Program Advance.

**2. GRANT OF SECURITY INTEREST:** In order to secure full and prompt payment of all Liabilities and performance of all obligations of Dealer to DSC, Dealer hereby:

(a)     Grants to DSC, together with its subsidiaries, affiliates and assigns, a continuing security interest in all of Dealer's assets and properties, wherever located, including without limitation, all Equipment of any kind or nature, all vehicles, vehicle parts, all Inventory now owned or hereafter acquired, without limitation, DSC Financed Inventory now owned or hereafter acquired, and all additions, accessions, accessories, replacements, and proceeds thereof; all documents, accounts, accounts receivable, chattel paper, and general intangibles now owned or hereafter acquired by Dealer together with the proceeds thereof; all of Dealer's books and records relating to the foregoing ("Collateral"). This security interest is given to DSC to secure Dealer's Liabilities to DSC under this Note, as may be amended from time to time, all without relief from valuation or appraisement laws.

(b)     Agrees to execute and deliver such financing statements and amendments thereto as DSC shall require from time to time.

**3. INTEREST RATE.** Interest shall accrue on all Dealer Liabilities in accordance with the following:

(a)     All outstanding Liabilities under this Note shall accrue interest (based upon a 360 day year), on a per annum basis and shall be compounded daily at the Base Rate plus the applicable Contract Rate, Risk Rate, or Default Rate until paid in full.

(b)     The Contract Rate stated on Dealer's Term Sheet plus the Base Rate shall be the applicable rate of interest accruing on all Dealer Liabilities, so long as there has not been a breach by Dealer of any representation or warrant made by Dealer under this Note, a breach by Dealer of any covenant or credit term required under this Note, or an event of default by Dealer under this Note.

(c)     In the event a breach of any representation or warranty made by Dealer under Paragraphs 3 or 4 of this Note occurs, or a breach by Dealer of a covenant or credit term required under Paragraph 4 or Paragraph 5 of this Note, the applicable rate of interest accruing on all Dealer Liabilities shall be the Base Rate plus the Risk Rate.

(d)     In the event that an Event of Default occurs as defined in Paragraph 6 of this Note, the applicable rate of interest accruing on all Dealer Liabilities shall be the Base Rate plus the Default Rate.

(e)     The Base Rate, Risk Rate or Default Rate may be amended or modified by DSC in DSC's sole discretion by posting such amendment or modification on the DSC Published Base Rate and Fee Schedule. However, DSC may only increase the Base Rate, Risk Rate or Default Rate by 100 basis points in any one 30-day period.

3/11                                 DSC Account # 12344

4. **DEALER'S REPRESENTATIONS, WARRANTIES AND COVENANTS:** In order to induce DSC to make Advances hereunder, Dealer hereby represents, covenants and warrants:

(a)  To sell, lease or rent DSC Financed Inventory only in the ordinary course of Dealer's business, and not to dispose of such DSC Financed Inventory, except as herein provided.

(b)  To keep DSC Financed Inventory only at Dealer's Place of Business and not to remove said DSC Financed Inventory from such place for a period exceeding twenty-four (24) hours, unless such item of DSC Financed Inventory is the subject of a DSC Lease Program Advance, or otherwise authorized in writing by DSC.

(c)  To keep DSC Financed Inventory in good repair and insured against all physical risks in such amounts and under such policies issued by such insurance company as are deemed necessary and satisfactory by DSC. DSC shall be named "loss payee" to the extent DSC's interest may appear. In the event Dealer fails to procure, maintain or provide proof of such insurance coverage, DSC may, in its sole discretion, purchase necessary insurance to protect its interests and collect the costs from Dealer pursuant to the terms of this Note. Dealer understands and agrees that DSC has an insurable interest in Dealer's Collateral, including but not limited to, DSC Financed Inventory, by virtue of Dealer's pledge of Dealer's Collateral as security to DSC as defined above, for the repayment of all Liabilities by Dealer to DSC under this Note.

(d)  To keep DSC Financed Inventory which is the subject of DSC Lease Program Advance (i) covered by an adequate service contract or warranty acceptable to DSC and provided by an approved DSC Vendor, DSC Financed Inventory(ii) equipped with a functioning global positioning and starter interrupt system ("GPS") unit that is acceptable to DSC and provided by an approved DSC Vendor/vendor,(iii) DSC Financed Inventory covered by a contingent liability insurance policy that is acceptable to DSC and provided by an approved DSC Vendor DSC Financed Inventory; and (iv) covered by Dealer's customer's insurance policy for all physical risks and naming DSC as additional insured and loss payee on the customer's insurance certificate.

(e)  To keep DSC listed as lienholder on the certificate of title for each DSC Financed Inventory which is the subject of DSC Lease Program Advance , DSC Financed Inventory

(f)  To keep the lease for each DSC Financed Inventory which is the subject of DSC Lease Program Advance placed with a third party servicer that is acceptable to DSC.

(g)  To keep at all times complete and accurate records of Dealer's business and to provide DSC upon demand copies of such records and financial information regarding Dealer's business and financial condition as DSC may reasonably request. Dealer authorizes DSC to share such information and any other information relating to Dealer's transaction with DSC to any and all persons or parties as DSC deems necessary.

(h)  To allow DSC and its representatives to inspect the DSC Financed Inventory during normal business hours and at other reasonable times and to inspect and make copies of Dealer's books and records. Dealer shall pay DSC upon demand for the costs and expenses incurred by DSC or its representatives with such inspections of Dealer's books and records and audits of Dealer's DSC Financed Inventory.

(i)  To hold all amounts received from the sale of an item of DSC Financed Inventory in the form as received in trust for the sole benefit of and for DSC, and to remit such funds satisfying all amounts due DSC and owing by Dealer for the sold item of DSC Financed Inventory within 24 hours of receipt of such funds.

(j)  That DSC may hold any sums or money belonging to or payable to Dealer and apply the same to any outstanding Liabilities of Dealer.

(k)  That any statement of Dealer's account furnished to Dealer by DSC, to the extent no objection is made in writing by Dealer within 30 days after receipt of such statement, shall constitute a definitive statement of Dealer's Credit Line and Liabilities as of the date of the statement and shall be binding upon Dealer.

(l)  To refrain from paying or declaring any dividends or distributions, redeeming of any capital stock, repaying subordinate debt or other loans to any principal or guarantor of Dealer's Business, during anytime a Liability exists from Dealer to DSC.

(m)  To pay immediately and remain current with all levied taxes, assessments, charges and expenses which may now or hereinafter be levied or assessed against the Collateral and business. DSC may, in its sole discretion, pay such taxes, assessments, charges and expenses to protect its interests and thereafter collect the costs from Dealer

pursuant to the terms of this Note.

(n)      That Dealer has obtained all necessary permits and licenses pursuant to local, state and federal law required to operate its business as a wholesale or retail seller, lessor or renter of the DSC Financed Inventory and has complied with all filing requirements to operate as the entity or business type on record with the appropriate governmental office(s).

(o)      That no legal, arbitration, or administrative proceedings are pending or threatened against Dealer which could reasonably affect the Collateral or which materially and adversely affect the properties, business, prospects, or condition, financial or otherwise, of the Dealer or Dealer's ability to honor its obligations hereunder.

(p)      That all payments made by Dealer to DSC via check or ACH, at the time of issuance, are written or drawn upon an account that contains immediately available funds sufficient to cover the dollar amount of the check or ACH.

(q)      That Dealer's legal name and address as they appear in Paragraph 16 of this Note are accurate and complete.

(r)      That Dealer shall immediately notify DSC in writing of any change in Dealer's legal name, address, business type, ownership, management or control and shall execute any documents necessary at DSC's request to bring Dealer into compliance with this Note.

(s)      That Dealer and all guarantors are legally competent and have authority to enter into and execute this Note and any and all other documents.

(t)      That Dealer shall not disclose to any third party, without the written consent of DSC, any terms and conditions applicable to Dealer's DSC Credit Line, whether such terms and conditions are contained in the Term Sheet or this Note.

(u)      That Dealer expressly authorizes and agrees to accept all mailings, facsimile transmissions and telephonic transmissions from DSC including, but not limited to, Credit Line information and promotional materials.

(v)      That Dealer may have an account with DSC where information can be accessed and transmissions can be sent through DSC's website located at www.discoverdsc.com. Dealer shall have the means to control access to the account information by passwords and a dealer account number in accordance with policies and procedures set forth by DSC. To participate, Dealer shall execute all documents required by DSC to register for such additional service and shall abide by DSC's policies and procedures set forth therein. Dealer agrees such documents shall be incorporated herein by reference and made part of this Note.

(w)      That Dealer shall use Advances solely for business purposes and not for personal, family or household purposes. This means, among other things, that Dealer may not use Advances to purchase a vehicle to be used for Dealer's personal, family or household purposes.

5.   CREDIT TERMS AND PROCEDURES:

(a)      The decision to make an Advance to Dealer is the exclusive right of DSC, and Dealer understands that DSC may refuse to make an Advance at any time, with or without cause and without prior notice to Dealer or any guarantors of such decision. Dealer is not obligated to finance any Inventory through DSC. If Dealer's Place of Business is in California, the amount of the first Advance under this Note must be at least $5,000.00.

(b)      All Dealer requests to DSC for an Advance for the purpose of acquiring Purchase Money Inventory with DSC funds, or financing previously-acquired Inventory with DSC funds must include a copy of the bill of sale for any Unit which is the subject of the request, indicating the actual purchase price and vendor, a completed Odometer Disclosure Statement, and the Unit's certificate of title showing that it has been duly assigned to Dealer. If DSC elects to make any such Advance, the Advance shall be deemed an additional Liability under this Note from the date on which the Advance is made.

(c)      DSC is not required but may make, without notice to Dealer and without regard to the Dealer's Credit Limit, Advances on Dealer's behalf, for any Liability to a third party at any time Dealer is in default under the terms of this Note. If DSC elects to make any such Advance, the Advance shall be deemed an additional Liability under this Note from the date on which the Advance is made.

(d)      Dealer must be in complete compliance with this Note before an Advance request will be approved by DSC. Additionally, DSC may require certain other information from Dealer to be submitted on a certified and sworn

5/11             DSC Account # 12344

affidavit including, but not limited to, a statement that Dealer has not used any Advance for any other purpose than its originally requested and verified purpose.

(e)     Dealer shall pay all liabilities to DSC at the offices of DSC, on demand and without notice, with respect to an item of DSC Financed Inventory on the earlier of: (a) twenty-four (24) hours from the time Dealer receives payment by or on behalf of the purchaser of an item of DSC Financed Inventory; (b) forty-eight (48) hours after the disposition by sale or otherwise of an item of DSC Financed Inventory; or (b) the Maturity Date. DSC shall apply such payments to the DSC Financed Inventory Liabilities incurred from said item of DSC Financed Inventory. Notwithstanding anything herein to the contrary, if, after the disposition by sale or otherwise and subsequent payment to DSC as delineated above, a Shortage exists between any payments received by DSC and the DSC Financed Inventory Liability with respect to an item of DSC Financed Inventory, that Shortage shall be considered a Liability owed by Dealer to DSC and secured with Collateral other than DSC Financed Inventory. Dealer shall pay to DSC at the offices of DSC all other Liabilities, on demand and without notice. The order and method of application of such payments of the Liabilities shall be in the discretion of DSC. Payments received by DSC after 5 pm as measured by Dealer's Home Branch shall be applied the next business day.

(f)     If Dealer is in compliance with all other provisions of this Note, DSC may, in its sole discretion, permit an Extension of the Maturity Date relative to an item of DSC Financed Inventory, upon the payment of Shortage, Interest, Floorplan Fee(s) and a principal reduction of the outstanding Advance relating to such item of DSC Financed Inventory pursuant to this Note and as established in the Term Sheet.

(g)     So long as Dealer is not in default of this Note, Dealer may sell DSC Financed Inventory to bona fide buyers in the ordinary and regular course of Dealer's business, but nothing herein shall be deemed to waive or release any interest DSC may have hereunder or under any other agreement in any proceeds or replacements of the DSC Financed Inventory. Upon the sale of any specific item of DSC Financed Inventory, Dealer shall hold the amount received from the disposition of such DSC Financed Inventory in Trust for the benefit of DSC, and Dealer shall pay to DSC, in accordance with this Note, an amount equal to the unpaid balance of the Liabilities relating to such specific item of DSC Financed Inventory.

(h)     Dealer shall allow DSC's officers, employees, agents, attorneys, designees and representatives access to Dealer's books and records at the Dealer's Place of Business to conduct an audit of Dealer's DSC Financed Inventory. Dealer shall be responsible for and agrees to pay all of DSC's expenses in conducting such audit.

(i)     Upon request by Dealer to obtain, for a legitimate business purpose, the Title to a specific item of DSC Financed Inventory held by DSC, DSC may consider said request and, in DSC's sole discretion, grant such request. In the event DSC grants such request, Dealer must deliver to DSC a check or draft which is signed and dated on the date as of which the Dealer takes physical custody of the subject Title in an amount equal to the Liability relating to such specific item of DSC Financed Inventory. The subject Title must be returned to DSC within the time period established by DSC or any outstanding Liability relating to any such Advance for such specific item of DSC Financed Inventory shall become immediately due and payable, and DSC may deposit or present such check or draft for payment in partial or whole satisfaction thereof, whichever the case may be.

(j)     To protect DSC's interest, Dealer authorizes DSC to obtain credit information from a credit bureau, and any financial institutions or trade creditor that Dealer has provided, as well as other credit investigation that DSC in DSC's sole discretion deems necessary. Dealer also authorizes DSC to contact any third parties to disclose information, including information contained in the DSC application, for the purpose of, among other things, obtaining intercreditor agreements and perfection of DSC's security interest. Further, if Credit Line is granted, Dealer authorizes DSC to review Dealer's account periodically, which may include obtaining additional credit reports.

(k)     Dealer's account is subject to "NSF" fees in the amount stated in the DSC Published Rate, Fee and Term Schedule or maximum amount permitted by law for each check or ACH issued by Dealer which is subsequently returned for insufficient funds, in addition to any charge or fee imposed by Dealer's and/or DSC's depository institution.

(l)     DSC may process checks electronically, at first presentment and any re-presentments, by transmitting the amount of the check, routing number, account number and check serial number to your financial institution. By submitting a check for payment, you authorize DSC to initiate an electronic debit from your bank account. When DSC processes your check electronically, your payment may be debited from your bank account as soon as the same day we receive your check and you will not receive that cancelled check with your bank account statement.

(m)     Dealer's account is subject to a late fee charge in the amount stated in the DSC Published Rate, Fee and Term

Schedule or the maximum amount permitted by law for any item of DSC Financed Inventory that Dealer fails to remit payment under this Note when due. Dealer acknowledges and agrees that the late fee charged by DSC is a reasonable estimate of DSC's probable losses due to the delay, inconvenience, and administrative expenses associated with a late payment. Dealer's account is subject to DSC Administrative Fees. Dealer acknowledges and agrees that any such DSC Administrative Fee charged by DSC is permitted under this Note and consists to the assessment of any such DSC Administrative Fee to Dealer's account. Dealer further acknowledges and agrees that DSC Administrative Fees are subject to business and market conditions and may be adjusted unilaterally by DSC without notice to Dealer and at DSC's sole discretion.

(n)  DSC maintains and publishes the "DSC Published Rate, Fee and Term Schedule" via posting the same on www.discoverdsc.com and in each DSC branch location. All such rates, fees and such amendments to the Terms and Conditions are published therein and incorporated herein by reference and made a part of this Note. With the exception of DSC Administrative Fees and Floorplan Fees, the rates and fees applied to Dealer's Liabilities under this Note and the amended Terms and Conditions stated therein shall be the applicable rates and fees and amendments to the Terms and Conditions most recently published on the DSC Published Rate, Fee and Term Schedule. DSC may amend the rates and fees and amend the Terms and Conditions from time to time at DSC's sole discretion and without additional Notice to Dealer other than the publication of such amendments on www.discoverdsc.com.

(o)  Dealer waives demand, presentment for payment, notice of dishonor, protest and notice of protest, and expressly agrees that this Note and all payments coming due under it may be extended or modified, from time to time without in any way affecting Dealer's liability under this Note. Dealer understands that this Note matures upon issuance, and that DSC may, at any time, and without notice to Dealer, with or without cause, demand that the Note be immediately paid in full. The demand nature of this Note does not limit DSC's election of remedies upon a default by Dealer. At DSC's option, DSC may reference a term of default for the purpose of permitting DSC to receive interest at the Default Rate. It is agreed that DSC may demand partial payments under this Note, and said partial demand shall not change DSC's rights under this Note.

6.  EVENT OF DEFAULT: The occurrence of any of the following events shall be considered an event of default under this Note ("Event of Default"):

(a)  The Dealer fails to perform any of its obligations, undertakings or covenants under this Note, fails to adhere to a credit term under this Note, including but not limited to, failure to make payment upon maturity or upon demand of any outstanding Liability under this Note; or

(b)  Any warranty or representation made by the Dealer proving to have been false or misleading in any material respect when made, or any schedule, certificate, financial statement, report, notice, or other writing furnished by Dealer to DSC proving to have been false or misleading in any material respect when made or delivered; or

(c)  Any damage or destruction of a substantial part of the Collateral occurs and appropriate insurance naming DSC as "Loss Payee" is not in effect; or

(d)  The Dealer becomes insolvent or consents to the appointment of a trustee, receiver or other custodian for the Dealer or any property thereof, or makes a general assignment for the benefit of creditors; or any bankruptcy, reorganization, debt arrangement, or other case or proceeding under any bankruptcy or insolvency law, or a dissolution or liquidation proceeding is commenced in respect of the Dealer; or

(e)  Any material change in the management, ownership or control of Dealer; or

(f)  The voluntary or administrative dissolution, death or incompetence of Dealer or any Guarantor of this Note; or

(g)  Any change in the financial condition of Dealer or Guarantor(s) that DSC in good faith deems adverse; or

(h)  DSC in good faith deems itself insecure for any reason.

(i)  Dealer has failed to maintain compliance with Dealer's obligations in paragraph 4 (c) of this Note relating to any DSC Financed Item of Inventory that is the subject of a lease contract between Dealer and Dealer's customer.

(j)  Dealer has defaulted under any other written agreement entered into by and between DSC and Dealer.

7.  RIGHTS AND REMEDIES: Upon an event of default, DSC may, at its option and without notice, exercise any of the

7/11

DSC Account # 12344

following rights in a separate, successive or concurrent fashion and such exercise of any right shall not preclude pursuit of other rights and remedies at a later time:

    (a)    Demand immediate payment of all Liabilities under this Note and all other indebtedness owed to DSC by Dealer. DSC shall have all the rights and remedies available hereunder, at law or in equity, including without limitation, the rights and remedies of a secured party under the Uniform Commercial Code in effect in the jurisdiction where the Collateral is kept. These rights and remedies include the right to cancel any unfunded Advances, to enter into Dealer's premises with or without legal process, but without force, and to take possession and remove the Collateral. At DSC's request and to the extent Dealer may lawfully do so, Dealer shall assemble, prepare for removal and make available to DSC at a place designated by DSC which is reasonably convenient for DSC and Dealer, such items of Collateral as DSC may deem sufficient to cover all Dealer's Liabilities to DSC; and

    (b)    Initiate proceedings to appoint a receiver in any court of competent jurisdiction. Dealer waives the right to notice and hearing of the appointment of a receiver and consents to the appointment without requiring DSC to post a bond; and

    (c)    To the extent allowed by law, Dealer gives consent to DSC to proceed in any action to collect on or execute against any and all bonds that Dealer has posted with any governmental authorities; and

    (d)    Without limiting the foregoing, DSC may take control of any funds generated by DSC in DSC's name or Dealer's name, demand, collect, receipt for, settle, compromise, sue for, repossess, accept returns of, foreclose or realize upon any Collateral. Dealer waives any and all rights it may have to notice prior to seizure by DSC of any Collateral. Dealer agrees that private sale of any item financed by DSC at the amount owed to DSC on that item, less costs reasonably incurred by DSC in preparation of disposition of the Collateral, shall be a commercially reasonable method of disposition of the Collateral. Dealer shall be liable to DSC for any deficiency resulting from DSC's disposition of the Collateral. Dealer agrees that the Collateral is of the type customarily sold on a recognized market and that DSC therefore has no obligation to notify Dealer prior to a sale. However, Dealer agrees that ten (10) days prior written notice of public sale date or the date after which a private sale may occur shall be reasonable notice. DSC shall not be responsible for the accuracy or validity of any document or for the existence or value of any Collateral. DSC shall not be required to marshal any assets in favor of Dealer. DSC has no obligation to pursue any third person for any Liability or obligation owed to Dealer. Dealer further agrees to pay reasonable attorney fees and collection costs incurred by DSC in enforcing this Note after an event of default by Dealer. To the extent not prohibited by law, Dealer waives all appraisement, valuation, anti-deficiency, homestead, exemption or usury laws now or hereafter in effect and releases all right to appeal after payment in full.

**8.  POWER OF ATTORNEY:** Dealer shall execute an irrevocable Power of Attorney in DSC's favor and such Power of Attorney shall be incorporated herein by reference and made a part of this Note.

**9.  GUARANTY(IES):** Dealer shall cause each owner of Dealer to execute an Individual Personal Guaranty. If Dealer is owned in whole or in part by a legally recognized business entity or trust, then Dealer shall cause said entity or trust to execute a Guaranty in addition to all required Individual Personal Guaranties. All such and the same shall be incorporated herein by reference and made a part of this Note.

**10.  TERM SHEET(S):** Prior to an Advance under this Note, Dealer shall execute a Term Sheet for each unique set of terms applicable to Dealer, which may be amended from time to time, and the same shall be incorporated herein by reference and made a part of this Note.

**11.  ASSIGNMENT:** This Note may be assigned by DSC but Dealer may not assign this Note without the prior written consent of DSC.

**12.  INDEMNIFICATION:** Dealer shall indemnify and hold DSC harmless from and against all, loss, damage, costs, or expenses of whatever kind or nature relating to claims of third parties arising out of or in any way connected to this Note or Dealer's business affairs including, without limitation, attorneys' fees and expenses incurred both in the defense of any action against DSC and in any action to enforce these indemnity rights as against the Dealer.

**13.  NO JOINT VENTURE OR PARTNERSHIP:** Nothing contained herein shall confer upon DSC or Dealer any interest in, or subject either of them to any liability for, or in respect of the business, assets, profits, losses or liabilities of the other. This Note does not constitute and shall not be characterized as a joint venture or partnership between DSC and Dealer. Nothing in this section shall limit or restrict the respective obligations and undertakings of DSC and Dealer hereunder.

**14.  AMENDMENT, MODIFICATION AND MERGER:** This Note and all documents incorporated herein by reference are

8/11                                                                                                    DSC Account # 12344

# EXHIBIT 3

THOMAS J. PRENOVOST, JR.
TOM RODDY NORMANDIN
STEVEN L. BERGH
MICHAEL G. DAWE
THEODORE A. PRENOVOST

PAULA M. HARRELSON
ADAM S. HAMBURG
KAREL ROCHA
BENJAMIN K. GRIFFIN
KRISTIN F. GODEKE BAINES
NICHOLE M. WONG
COURTNEY A. WINZELER*
LAUREN M. DODDS
CHARLES M. HEINTZ

*ALSO LICENSED IN ARIZONA

# PRENOVOST
# NORMANDIN
# BERGH &
# DAWE

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614

TELEPHONE (714) 547-2444
FACSIMILE (714) 835-2889

WEBSITE: WWW.PNBD.COM

OF COUNSEL:
CHARLES "MIKE" MICHAELIS
ROSH POTHIER
DENNIS H. DOSS
ANDREA R. PATTON

E-MAIL ADDRESS:
pharrelson@pnbd.com
OUR FILE NO. 8443.0037

December 31, 2013

Frank D. Kortum
Assistant United States Attorney
United States Attorney's Offices, Asset
Forfeiture Section
312 North Spring Street, Suite 1400
Los Angeles, CA 90012

> Re:   **United States of America v. One 2006 Lamborghini Murcielago**
> **USDC Case No. SACV 13-907-DOC (JPR)**

Dear Mr. Kortum:

In your e-mail of September 9, 2013, you had suggested that the parties address, as a preliminary matter to settlement negotiations, the issues of "(A) whether the vehicle can be considered to have been in Remate's inventory (in view of the fact that Remate didn't take possession of the vehicle)(see generally Sportsman's Guide, Inc. v. Havana National Bank, 2012 WL 3028517 at *7 (C.D. Ill. July 25, 2012));  (B) whether Remate can be considered to have had constructive possession of the vehicle (in view of Escobedo's exclusive exercise of control over it)(see generally id. ); and (C) whether any documents indicating that Remate had title were forged by Escobedo and thus constitute a nullity (see generally Wutzke v. Bill Reid Painting Service, Inc., 151 Cal.App.3d 36, 43 (1984))."

NextGear Capital, Inc. ("NextGear") contends that some, if not all of the these issues are made moot in view of Ernest Zugasti-Coria's ("Zugasti") Claim Opposing Forfeiture ("Zugasi Claim") and his responses to the Government's interrogatories.  Zugasti admits that he did in fact take possession of the 2006 Lamborghini Murcielago subject of this action ("Vehicle") prior to the seizure and gave value for possession and title.  He further admits that he was asked for his consent to putting the Vehicle in Remate's name.

In any event NextGear provides the following analysis to assist the Government's consideration of NextGear's Claim to the Vehicle. *Sportman's Guide*, cited by the Government, is inapplicable because the claimant in that case, unlike NextGear, did not have a provision in the

8443.0037 / 851837.1

PRENOVOST, NORMANDIN, BERGH & DAWE
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Frank D. Kortum
United States Attorney's Offices, Asset Forfeiture Section
December 31, 2013
Page 2

security agreement granting a security interest in after acquired collateral and did not have possession. Also it was decided under Illinois, not California, law.

The instant case is controlled by California law. *Butner v U.S.* (1979) 440 U.S. 48, 55 (property interests are created and defined by state law) and California law recognizes that security interests may be maintained in "after acquired collateral." The following analysis of the facts and applicable law establishes NexGear's interest in the Vehicle, the superiority of its interest to any claimed interest of the Government or Zugasti and that it is an innocent owner whose rights may not be forfeited.

As has been established in my client's original Petition for Remission ("Petition"), NextGear is a secured lender for NCA International Services, Inc. dba Remate del Monte ("Remate"). During the time frame at issue in this litigation, NextGear was known as Dealer Services Corporation ("DSC"). DSC changed its name to NextGear pursuant to a Certificate of Merger filed with the Delaware Secretary of State filed on January 31, 2013. All references herein to "NextGear" will include the former entity DSC.

NextGear provides flooring lines to used car dealers across the United States, including the State of California. A flooring line allows dealers to purchase inventory, i.e., vehicles, for resale to the public. NextGear does not make consumer loans, but only commercial loans to auto dealers and is licensed to do so by the State of California.

NextGear has provided flooring financing to Remate since 2005. NextGear's security interest was perfected when Remate's initial flooring line was issued. It remains perfected to date. NextGear's security interest extends to "a continuing security interest in all of [Remate's] assets and properties, wherever located, including without limitation, all Equipment of any kind or nature, all vehicles, vehicle parts, all inventory now owned or hereafter acquired, without limitation...." This would include the Vehicle from the moment Remate acquired an interest in it. As of April 20, 2012, when NextGear submitted its petition for return of the Vehicle, Remate's outstanding balance on its flooring line amounted to $233,824.34. Remate's debt to NextGear remains unpaid and amounts to $199,212.84 plus accruing interest, attorney fees and costs.

It is true but not material that NextGear itself never acquired physical possession of the Vehicle. NextGear has possession of the original Certificate of Title ("Title") which shows the Vehicle being conveyed to Remate on June 2, 2011. NextGear also has possession of the yellow Buyer's Copy of the Wholesale Report of Sale ("ROS") completed by Lamborghini Newport Beach ("LNB") documenting the sale to Remate for purposes of filing the same with the California Department of Motor Vehicles ("DMV"). The Title and ROS were provided to NextGear by Remate principal Cecilia Saiden Mariscal ("Mariscal") as explained below.

8443.0037 / 851837.1

PRENOVOST, NORMANDIN, BERGH & DAWE
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Frank D. Kortum
United States Attorney's Offices, Asset Forfeiture Section
December 31, 2013
Page 3

In early March, 2012,  Mariscal informed NextGear representative Troy Rogers ("Rogers") that the Vehicle was owned by Remate and had been impounded by the Irwindale Police.  Specifically, in response to NextGear's request for payment on Remate's flooring line of credit, Mariscal told Rogers that Remate owned a Lamborghini that they would like to surrender to NextGear to apply to Remate's flooring line but the Vehicle had been impounded.  Mariscal gave Rogers a copy of the Title and told him that she had the original at home.  Approximately a week after this conversation, Mariscal delivered the original Title for the Vehicle to Rogers, together with the Yellow Buyer's Copy of the ROS prepared by the selling dealer.  NextGear continues to be in possession of the original Title and the Buyer's Copy of the ROS.

NextGear contends that the Vehicle was either purchased as a wholesale sale between dealers for the purpose of resale to the public and was made part of Remate's inventory pending resale or was acquired by Remate as inventory by a purchase effected by an exchange of existing inventory, including at least one vehicle directly floored by NextGear.  "Inventory" means "all Units held by [Remate] for wholesale or retail sale, lease, or rent or leased by [Remate].  Inventory includes DSC Financed Inventory."  (See DSC Demand Promissory Note and Security Agreement.)  At no time was NextGear aware that the Vehicle may have been connected with illegal activity.

NextGear further contends that the fact that Remate provided the Title and ROS to NextGear instead of delivering it to the DMV for issuance of a new title in Remate or anyone else's name establishes that Remate had had the Vehicle in inventory and continued to consider the Vehicle as part of its inventory at the time Mariscal delivered the Title to NextGear.  See Cal. Veh. Code §§5600 and 5906.

The Zugasti Claim provides additional factual support for NextGear's claim to the Vehicle.  Zugasti admits under penalty of perjury that a certain Eddie Escobedo ("Escobedo") "gave" the Vehicle and the Title to Zugasti in Remate's name for  valuable consideration, specifically a 2011 Infinity Q56, a 2012 BMW B7 and a Mercedes Mclaren ("Exchanged Vehicles").  Zugasti's Responses to Interrogatories also state under penalty of perjury that he acquired the Vehicle and the Title pursuant to a vehicle exchange with Luis Perez ("Perez") in January 2012.  Zugasti also states that Perez informed him that Perez intended to "put, register and transfer" the Vehicle into Remate's name.  Taken together or separately, these Zugasti pleadings factually establish that Zugasti acquired the Vehicle for value prior to the seizure.

Pursuant to the terms of its written Security Agreement set forth and perfected in its UCC-1 filings, NextGear has  a perfected security interest in the Vehicle that is superior to any interest the Government or Zugasti might assert.  By definition, a "secured party" is a "person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding."  (Cal. Comm. Code § 9102(72)(A).)  A

PRENOVOST, NORMANDIN, BERGH & DAWE
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Frank D. Kortum
United States Attorney's Offices, Asset Forfeiture Section
December 31, 2013
Page 4

"security agreement" means an agreement that creates or provides for a security interest." (Cal. Comm. Code § 9102(73).)

Under California law a security agreement "may create or provide for a security interest in after-acquired collateral." Cal. U. Com. Code, § 9204( in pertinent part). An after-acquired property clause is no less valid than a security interest in collateral in which the debtor has rights at the time value is given. Section 9204 validates a security interest in the debtor's existing and (upon acquisition) future assets, even though the debtor has liberty to use or dispose of collateral without being required to account for proceeds or substitute new collateral. Official Comments to Cal. U. Com. Code, § 9204.

NextGear's security interest had attached to the Vehicle when the Vehicle was seized. Attachment occurs when each of three events has taken place: (1) the secured party has possession of the collateral pursuant to an agreement, or the debtor has signed a security agreement describing the collateral, (2) the secured party has given value, and (3) the debtor has rights in the collateral. *Bank of the West v. Commercial Credit Financial Services, Inc.* (9th Cir. 1988) 852 F.2d 1162, 1166. Here Remate had signed a security agreement describing the collateral which included "all inventory now owned or hereinafter acquired." The Remate principals treated the Vehicle as inventory, not as a general dealer asset. Zugasti traded inventory, the Exchanged Vehicles, for the Vehicle. The Title was retained by Remate consistent with usual dealer practices and applicable law, rather than submitted to the DMV for re-registration and re-titling in Remate's name (see Cal. Veh. Code §§5600 and 5906) and Remate submitted it to NextGear as additional security and to pay down its inventory flooring credit line. Finally, Mariscal stated in a Declaration under penalty of perjury that the Vehicle was part of Remate's inventory.

The loan documents and the facts establish that Remate had ample interest in the Vehicle for NextGear's security interest to attach. California's Commercial Code does not require that a debtor own or hold title to collateral. Where a debtor has rights beyond naked possession a security interest may attach. *In Re Coupon Clearing Service*, Inc. 113 F. 3d 1091, 1103 (9th Cir. 1997). "[A] debtor who does not own collateral may nonetheless use the collateral for security, thereby obtaining 'rights in the collateral,' when authorized to do so by the actual owner of the collateral. (See s 9112, and Un.Com.Code comment. See also s 9105, subd. (1) (d), and Un.Com.Code comment 2.)" *K.N.C. Wholesale, Inc. v. Awmco, Inc.* (1976) 56 Cal.App.3d 315, 318-19.

Remate acquired rights in the Vehicle in June, 2011 when LNB transferred its interest to Remate as Perez informed Zugasti he was going to have done and Zugasti, not only made no objection, but gave value for the Vehicle in the form of the Exchanged Vehicles. The Zugasti Claim and Zugasti Responses to Interrogatories establish that Zugasti acquired rights in the

Frank D. Kortum
United States Attorney's Offices, Asset Forfeiture Section
December 31, 2013
Page 5

Vehicle well prior to its seizure which acquisition caused NextGear's security interest to attach.
Remate had the title with the power to transfer to a third party at any time.

     NextGear gave value for Vehicle in that it provided Remate a flooring line with a credit
limit of $150,000 to fund Remate's inventory. Remate was in debt to NextGear in excess of
$200,000 at the time the Vehicle was seized. As a secured creditor, NextGear is an innocent
owner. It did not know and was reasonably without cause to believe that the vehicle was subject
to forfeiture. *U.S. v. Approximately $44,888.35 in U.S. Currency* 385 F. Supp. 2d 1057, 1062-
1063 (E.D. Cal. 2005). "An innocent owner's interest in property shall not be forfeited under any
civil forfeiture statute." 18 U.S.C. § 983(d)(1)." Furthermore, a perfected security interest in a
business's assets may take priority over the government's claim to assets through forfeiture. *U.S.
v. Four Hundred Sixty Three Thousand Four Hundred Ninety Seven Dollars and Seventy Two
Cents ($463,497.72) in U.S. Currency From Best Bank Account* (E.D. Mich. 2011) 779
F.Supp.2d 696, 707. It is clear that California law and the facts establish NextGear's position as
a secured creditor and an innocent owner. The Government, therefore, must release the Vehicle
to NextGear, irrespective of its own or Zugasit's claimed interests.

     We trust the foregoing satisfies the Government's inquires regarding NextGear's rights
and interest in the Vehicle. If you have any questions or wish to discuss this matter further,
please contact me.

                   Sincerely,

                   PRENOVOST, NORMANDIN, BERGH & DAWE
                   A Professional Corporation

                   PAULA M. HARRELSON

PMH/fb

THOMAS J. PRENOVOST, JR.
TOM RODDY NORMANDIN
STEVEN L. BERGH
MICHAEL G. DAWE
THEODORE A. PRENOVOST

PAULA M. HARRELSON
ADAM S. HAMBURG
KAREL ROCHA
BENJAMIN K. GRIFFIN
KRISTIN F. GODEKE BAINES
NICHOLE M. WONG
COURTNEY A. WINZELER*
LAUREN M. DODDS
CHARLES M. HEINTZ

*ALSO LICENSED IN ARIZONA

# PRENOVOST
# NORMANDIN
# BERGH &
# DAWE

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614

TELEPHONE (714) 547-2444
FACSIMILE (714) 835-2889

WEBSITE: WWW.PNBD.COM

OF COUNSEL:
CHARLES "MIKE" MICHAELIS
ROSE POTHIER
DENNIS H. DOSS
ANDREA R. PATTON

E-MAIL ADDRESS:
pharrelson@pnbd.com
OUR FILE NO. 8443.0037

December 31, 2013

## FACSIMILE TRANSMITTAL

| NAME/COMPANY | TELEPHONE | FACSIMILE |
|---|---|---|
| Frank D. Kortum<br>United States Attorney's Offices, Asset Forfeiture Section | (213) 894-5710 | (213) 894-7177 |

FROM:      Paula M. Harrelson

RE:        United States of America v. One 2006 Lamborghini Murcielago
           USDC Case No. SACV 13-907-DOC (JPR)

PAGES:     6 (including cover page)

MESSAGE:   Please see attached letter, dated today.

If you do not receive all the pages in legible form or you have any questions regarding the following information, please call Paula M. Harrelson at (714) 547-2444, ext. 143.

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

P. 1

```
*  *  *  COMMUNICATION RESULT REPORT ( DEC. 31. 2013  9:07AM ) *  *  *
```

```
                                               FAX HEADER 1:   PRENOVOSTNORMANDIN
                                               FAX HEADER 2:
```

TRANSMITTED/STORED : DEC. 31. 2013  9:03AM
FILE MODE        OPTION              ADDRESS                        RESULT        PAGE
-------------------------------------------------------------------------------------
3989 MEMORY TX                       G3   :3333#8443#0037#12138      OK            6/6
-------------------------------------------------------------------------------------

```
    REASON FOR ERROR
    E-1) HANG UP OR LINE FAIL              E-2) BUSY
    E-3) NO ANSWER                         E-4) NO FACSIMILE CONNECTION
    E-5) MAIL SIZE OVER
```

| THOMAS J. PRENOVOST, JR. | PRENOVOST | 2122 NORTH BROADWAY, SUITE 200 |
|---|---|---|
| TOM ROODY NORMANDIN | NORMANDIN | SANTA ANA, CALIFORNIA 92706-2614 |
| STEVEN L. BERGH | | |
| MICHAEL G. DAWE | BERGH & | TELEPHONE (714) 547-2444 |
| THEODORE A. PRENOVOST | | FACSIMILE (714) 835-2889 |
| | DAWE | |
| PAULA M. HARRELSON | | WEBSITE: WWW.PNBD.COM |
| ADAM S. HAMBURG | A PROFESSIONAL CORPORATION | |
| KAREL ROCHA | ATTORNEYS AT LAW | OF COUNSEL: |
| BENJAMIN K. GRIFFIN | | CHARLES "MIKE" MICHAELIS |
| KRISTIN F. GODEKE BAINES | | ROSE POTHIER |
| NICHOLE M. WONG | | DENNIE H. DOSS |
| COURTNEY A. WINZELER* | | ANDREA R. PATTON |
| LAUREN M. DODDS | | |
| CHARLES M. HEINTZ | | |
| | | E-MAIL ADDRESS: |
| *ALSO LICENSED IN ARIZONA. | | pharrelson@pnbd.com |
| | | OUR FILE NO. 8443.0037 |

December 31, 2013

## FACSIMILE TRANSMITTAL

| NAME/COMPANY | TELEPHONE | FACSIMILE |
|---|---|---|
| Frank D. Kortum<br>United States Attorney's Offices, Asset Forfeiture Section | (213) 894-5710 | (213) 894-7177 |

FROM:      Paula M. Harrelson

RE:        United States of America v. One 2006 Lamborghini Murcielago
           USDC Case No. SACV 13-907-DOC (JPR)

PAGES:     6  (including cover page)

MESSAGE:   Please see attached letter, dated today.

If you do not receive all the pages in legible form or you have any questions regarding the following information, please call Paula M. Harrelson at (714) 547-2444, ext. 143.

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

# EXHIBIT 4

Case 8:13-cv-00907-DOC-JPR   Document 57-1   Filed 05/15/15   Page 44 of 93   Page ID
#:442
Case 8:13-cv-00907-DOC-JPR   Document 20   Filed 02/28/14   Page 1 of 4   Page ID #:126

1  **PRENOVOST, NORMANDIN, BERGH & DAWE**
   **A Professional Corporation**
2  **TOM R. NORMANDIN, SBN 102265**
   tnormandin@pnbd.com
3  **PAULA M. HARRELSON, SBN 167438**
   pharrelson@pnbd.com
4  **2122 North Broadway, Suite 200**
   **Santa Ana, California 92706-2614**
5  **Phone No.:     (714) 547-2444**
   **Fax No.:        (714) 835-2889**
6
   Attorneys for NextGear Capital, Inc.
7

8              **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

10

11  UNITED STATES OF AMERICA,                  Case No. SACV13-907-DOC(JPR)

12              Plaintiff,                      **JOINT RULE 26(f) REPORT**

13              v.                              The Hon. David O. Carter

14  ONE       2006      LAMBORGHINI             **SCHEDULING CONFERENCE:**
    MURCIELAGO,
15                                              DATE:     March 3, 2014
                Defendant.                      TIME:     8:30 A.M.
16                                              DEPT.:    9-D

17  NEXTGEAR CAPITAL, INC. AND
    ERNESTO ZUGASTI-CORIA,
18
                CLAIMANTS.
19

20

21      **1.     SHORT FACTUAL SUMMARY OF THE CASE AND OF CLAIMS**

    **AND DEFENSES**
22
            U.S. Immigration and Customs Enforcement ("Government") seized a 2006
23
    Lamborghini ("Vehicle") from Raul Ernesto Zugasti-Coria ("Zugasti"), a principal of
24
    NCA International services Inc., doing business as Remate Del Monte ("Remate") an
25
    automobile dealer.  NextGear Capital, Inc. ("NextGear") contends that it holds a
26
    perfected security interest in the Vehicle and is an innocent owner as a matter of law
27
    which bars forfeiture of the Vehicle and entitles NextGear to its return.
28

8443.0037 / 856199.1                          1                            SACV13-907-DOC(JPR)

**2.      PRINCIPAL ISSUES IN THE CASE**

a.      Whether the Government lawfully seized the Vehicle.

b.      Whether NextGear is an innocent owner whose interest should not be forfeited.

c.      Whether NextGear holds a perfected security interest in the Vehicle that is superior to the Government's or Zugasti's alleged interest.

d.      Whether Zugasti's Claim Opposing Forfeiture has merit.

**3.      ADDITIONAL PARTIES OR AMENDED PLEADINGS**

NextGear does not seek to add parties or amend the pleadings at this time.

**4.      ISSUES TO BE DETERMINED BY MOTION**

NextGear expects to file a motion for summary judgment.

**5.      SETTLEMENT DISCUSSIONS**

The parties are engaged in ongoing settlement discussions.

**6.      DISCOVERY**

NextGear will need to propound one set of written request for documents and interrogatories and take at least three depositions (Mariscal, Zugasti and Agent Wanda Chavez). NextGear will also seek to inspect the vehicle.

**7.      TRIAL**

NextGear does not seek a jury trial and expects the trial to take three days.

**8.      OTHER ISSUES**

None.

**9.      PROPOSED SPECIFIC DATES**

The Government and NextGear propose the following dates:

(a) Discovery cut-off date:  December 30, 2014.

(b) Motion cut-off date:  February 16, 2015.

(c) Final Pretrial Conference:  March 16, 2015.

(d) Trial: March 30, 2015.

/ / /

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444 • Fax (714) 835-2889

1    Zugasti proposes the following dates:

2        (a) Discovery cutoff:

3        (b) Motion cutoff:

4        (c) Pretrial Conference:

5        (d) Trial:

6    DATED:  February 28, 2014          PRENOVOST, NORMANDIN, BERGH &
                                        DAWE
7                                       A Professional Corporation

8

9

10                                      By:        s/ Paula M. Harrelson
11                                          TOM R. NORMANDIN
                                            PAULA M. HARRELSON
12                                          Attorneys for NEXTGEAR CAPITAL,
                                            INC.
13

14

15   DATED:  February 28, 2014          André Birotte, Jr.
                                        United States Attorney
16                                      Robert E. Dugdale
                                        Assistant United States Attorney
17                                      Chief, Criminal Division
                                        Steven R. Welk
18                                      Assistant United States Attorney
                                        Chief, Asset Forfeiture Section
19

20

21                                      By:        s/ Frank D. Kortum
22                                          FRANK D. KORTUM
                                            Assistant United States Attorney
23                                          Asset Forfeiture Section
                                            Attorneys for UNITED STATES OF
24                                          AMERICA

25

26

27

28

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444 • Fax (714) 835-2889

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 2122 North Broadway, Suite 200, Santa Ana, CA 92706-2614.

On February 28, 2014, I served true copies of the following document(s) described as **JOINT RULE 26(F) REPORT** on the interested parties in this action as follows:

| | |
|---|---|
| André Birotte, Jr. | Attorneys for the UNITED STATES |
| United States Attorney | OF AMERICA |
| Robert E. Dugdale | |
| Assistant United States Attorney | |
| Chief, Criminal Division | |
| Steven R. Welk | |
| Assistant United States Attorney | |
| Chief, Asset Forfeiture Section | |
| Frank D. Kortum | |
| Assistant United States Attorney | |
| Asset Forfeiture Section | |
| United States Courthouse | |
| 312 North Spring Street, Suite 1400 | |
| Los Angeles, CA 90012 | |
| Telephone: (213) 894-5710 | |
| Facsimile: (213) 894-7177 | |
| E-mail: frank.kortum@usdoj.gov | |

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Prenovost, Normandin, Bergh & Dawe's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Santa Ana, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 28, 2014, at Santa Ana, California.


s/Farida Baig
Farida Baig

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
TEL (714) 547-2444 • Fax (714) 835-2889

8443.0037 / 856199.1

RULE 26(f) REPORT

SACV13-907-DOC(JPR)

# EXHIBIT 5

1  PRENOVOST, NORMANDIN, BERGH & DAWE
   A Professional Corporation
2  TOM R. NORMANDIN, SBN 102265
   tnormandin@pnbd.com
3  PAULA M. HARRELSON, SBN 167438
   pharrelson@pnbd.com
4  2122 North Broadway, Suite 200
   Santa Ana, California 92706-2614
5  Phone No.:    (714) 547-2444
   Fax No.:      (714) 835-2889
6
7  Attorneys for NextGear Capital, Inc.

8            UNITED STATES DISTRICT COURT

9   CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10

11 | UNITED STATES OF AMERICA,        | Case No. SACV13-907-DOC(JPR)

12 |              Plaintiff,           | CLAIMANT NEXTGEAR
                                        CAPITAL, INC.'S RESPONSE TO
13 |         v.                        | FIRST SET OF
                                        INTERROGATORIES
14 | ONE    2006    LAMBORGHINI        | PROPOUNDED BY PLAINTIFF
     MURCIELAGO,                         UNITED STATES OF AMERICA
15 |
              Defendant.              | The Hon. David O. Carter
16

17 PROPOUNDING PARTY:  Plaintiff UNITED STATES OF AMERICA

18 RESPONDING PARTY:    Claimant NEXTGEAR CAPITAL, INC.

19 SET NO.:             One

20      Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Claimant

21 NEXTGEAR CAPITAL, INC. ("Responding Party") hereby submits these objections

22 and responses to the First Set of Interrogatories propounded by Plaintiff UNITED

23 STATES OF AMERICA ("Propounding Party").

24                    **PRELIMINARY STATEMENT**

25      Nothing in this response should be construed as an admission by Responding

26 Party with respect to the admissibility or relevance of any fact, or of the truth or

27 accuracy of any characterization or statement of any kind contained in Propounding

28 Party's Interrogatories. Responding Party has not completed his investigation of the

1  facts relating to this case, his discovery or his preparation for trial. All responses and

2  objections contained herein are based only upon information that is presently available

3  to and specifically known by Responding Party. It is anticipated that further discovery,

4  independent investigation, legal research and analysis will supply additional facts and

5  add meaning to known facts, as well as establish entirely new factual conclusions and

6  legal contentions, all of which may lead to substantial additions to, changes in and

7  variations from the responses set forth herein. The following objections and responses

8  are made without prejudice to Responding Party's right to produce at trial, or otherwise,

9  evidence regarding any subsequently discovered information. Responding Party

10  accordingly reserves the right to modify and amend any and all responses herein as

11  research is completed and contentions are made.

## GENERAL OBJECTIONS

13  Responding Party generally objects to the Interrogatories as follows:

14  1.  Responding Party objects generally to the Interrogatories to the extent

15  that they seek to elicit information that is neither relevant to the subject matter of

16  this action, nor reasonably calculated to lead to the discovery of admissible

17  evidence;

18  2.  Responding Party objects generally to the Interrogatories to the extent

19  that they are unreasonably overbroad in scope, and thus burdensome and oppressive,

20  in that each such request seeks information pertaining to items and matters that are

21  not relevant to the subject matter of this action, or, if relevant, so remote therefrom

22  as to make its disclosure of little or no practical benefit to Propounding Party, while

23  placing a wholly unwarranted burden and expense on Responding Party in locating,

24  reviewing and producing the requested information;

25  3.  Responding Party objects generally to the Interrogatories to the extent

26  that they are burdensome and oppressive, in that ascertaining the information

27  necessary to respond to them would require the review and compilation of

28  information from multiple locations, and voluminous records and files, thereby

8443.0037 / 843946.1

2

SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 50

Exhibit 5

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1   involving substantial time of employees of Responding Party and great expense to

2   Responding Party, whereas the information sought to be obtained by Propounding

3   Party would be of little use or benefit to Propounding Party;

4       4.      Responding Party objects generally to the Interrogatories to the extent

5   that they are vague, uncertain and overbroad, being without limitation as to time or

6   specific subject matter;

7       5.      Responding Party objects generally to the Interrogatories to the extent

8   that they seek information at least some of which is protected by the attorney-client

9   privilege or the attorney work-product doctrine, or both;

10      6.      Responding Party objects generally to the Interrogatories to the extent

11  that they seek to have Responding Party furnish information that is a matter of the

12  public record, and therefore, is equally available to the propounding party as to

13  Responding Party; and

14      7.      Responding Party objects generally to the Interrogatories to the extent

15  that they seek to have Responding Party furnish information that is proprietary to

16  Responding Party and contain confidential information.

17      8.      Responding Party objects to the interrogatories, and to any individual

18  interrogatory set forth therein, to the extent that they are compound and constitute an

19  impermissible effort to circumvent the 25 interrogatory limit set by Rule 33 of the

20  Federal Rules of Civil Procedure.

21      9.      Responding Party expressly incorporates each of the foregoing General

22  Objections into each specific response to the requests set forth below as if set forth

23  in full therein.  An answer to a request is not intended to be a waiver of any

24  applicable specific or general objection to such request.

25          Without waiver of the foregoing, Responding Party further responds as follows:

26

27

28

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

3                                           SACV13-907-DOC(JPR)

1              **RESPONSES TO INTERROGATORIES**

2 **INTERROGATORY NO. 1:**

3 As to Nextgear Capital, IDENTIFY and DOCUMENT the following information:

4      A.    All identification numbers including but not limited to tax

5            identification number(s) .

6      B.    All facts regarding formation or organization including but not limited

7            to the date, place and jurisdiction of formation or organization (city,

8            state, province, country), founding individuals and identification of

9            organization documents.

10     C.    All business locations, currently and in the past, and the dates at each

11           location.

12     D.    Each current and past manager and director and all information relating

13           to each appointment, duties, resignation and/or termination.

14     E.    Each officer and all information relating to each appointment,

15           resignation or termination of each officer.

16     F.    All current and past members and owners and all information relating

17           to each member's and/or owner's relationship to Nextgear Capital,

18           including but not, limited to the date(s) that the member's or owner's

19           interest began and ended (if any), the percent of membership and/or

20           ownership interest each 'person or entity has or had in Nextgear

21           Capital, Inc.' since the time of its formation, the consideration (if any)

22           paid for that membership and/or ownership interest, and the member(s)

23           and owner(s) duties and responsibilities.

24     G.    The nature and type of business operated by Nextgear Capital.

25     H.    The name and title of each person or entity who was authorized to bring

26           or defend a legal action on behalf of Nextgear Capital pursuant to the

27           terms of the company's Articles of Organization, bylaws, directives, or

28           other company records; the dates during which the person or entity was

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

1            so authorized; describe the authority given and the document(s) that

2            provide for that authority.

3 **RESPONSE TO INTERROGATORY NO. 1:**

4      No response required. Withdrawn by Government.

5 **INTERROGATORY NO. 2:**

6      IDENTIFY and DOCUMENT whether Nextgear Capital possessed the

7 Defendant Asset and state the source of the Defendant Asset, the owner of the

8 Defendant Asset, and the intended use of the Defendant Asset.

9 **RESPONSE TO INTERROGATORY NO. 2:**

10      NextGear is a secured lender for NCA International Services, Inc. dba Remate

11 del Monte ("Ramate"). During the events described in these interrogatory responses,

12 NextGear was known as Dealer Services Corporation ("DSC"). DSC changed its name

13 to NextGear pursuant to a Certificate of Merger filed with the Delaware Secretary of

14 State filed on January 31, 2013. All responses herein as "NextGear" will include the

15 former entity DSC.

16      NextGear itself never acquired physical possession of the 2006 Lamborghini

17 Murcielago subject of this action ("Vehicle"). NextGear has possession of the original

18 Certificate of Title ("Title") which shows the Vehicle being conveyed to Remate on

19 June 2, 2011. NextGear also has possession of the yellow Buyer's Copy of the

20 Wholesale Report of Sale ("ROS") completed by Lamborghini Newport Beach

21 ("LNB") documenting the sale to Remate for purposes of filing the same with the

22 California Department of Motor Vehicles ("DMV"). The Title and ROS were provided

23 to NextGear by Remate principal Cecilia Saiden Mariscal ("Mariscal"). To the best of

24 NextGear's knowledge the Vehicle was purchased as a wholesale sale between dealers

25 for the purpose of resale to the public and was made part of Remate's inventory

26 pending resale. "Inventory" means "all Units held by [Remate] for wholesale or retail

27 sale, lease, or rent or leased by [Remate]. Inventory includes DSC Financed

28 Inventory." (See Demand Promissory Note and Security Agreement.)

8443.0037 / 843946.1

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

5      SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 53
Exhibit 5

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444 • Fax (714) 835-2889

1    The ROS and the fact that Remate provided the Title to NextGear instead of

2  delivering it to the DMV for issuance of a new title in Remate or anyone else's name

3  establishes that Remate had had the vehicle in inventory and continued to consider the

4  Vehicle as part of its inventory at the time Mariscal delivered the Title to NextGear.

5  See Cal. Veh. Code §§5600 and 5906.

6    DOCUMENTS:  NextGear identifies the following documents:  Demand

7  Promissory Note and Security Agreement dated August 23, 2005, Demand Promissory

8  Note and Security Agreement dated January 21, 2010, UCC-1 Financing Statement

9  filed August 25, 2005 and UCC Financing Continuation Statement filed August 2,

10  2010.  The foregoing Documents shall be hereinafter collectively referred to as "Loan

11  Documents."  NextGear also identifies its Certificate of Merger, April 20, 2012

12  Receivable Detail Report ("Receivable Report"), February 8, 2013 Written Off Dealer

13  Statement ("Statement"), Title, ROS, Declaration of Cecelia Saiden Mariscal dated

14  April 25, 2012 ("Mariscal Declaration"), Declaration of Troy Rogers dated February 8,

15  2013 ("Rogers Declaration").

16    Discovery is ongoing and NextGear reserves the right to supplement or

17  amend this response as additional or different information may become known.

18  **INTERROGATORY NO. 3:**

19    IDENTIFY and DOCUMENT all payments received by you from Remate del

20  Monte Auto Sales.

21  **RESPONSE TO INTERROGATORY NO. 3:**

22    NextGear elects to respond by concurrently producing documents. In this regard,

23  NextGear produces its Payment Received Report Without Payment Detail.

24  **INTERROGATORY NO. 4:**

25    IDENTIFY and DOCUMENT all of your source(s) of income for Nextgear

26  Capital for each year from 2007 through 2012. For example, business revenues,

27  loans, distributions, compensation, gifts, etc.). Sign and return the attached IRS

28  Form 8821 and release of information forms.

Exhibit 5

1 **RESPONSE TO INTERROGATORY NO. 4:**

2     No response required.  Withdrawn by Government.

3 **INTERROGATORY NO. 5:**

4     IDENTIFY and DOCUMENT any legal action in which you have ever been

5 involved in any manner, including criminal, civil, forfeiture or administrative. For

6 each legal action, IDENTIFY and DOCUMENT the court docket number, the

7 location of the legal action, the parties involved, the facts surrounding the action,

8 and the final disposition.

9 **RESPONSE TO INTERROGATORY NO. 5:**

10     No response required.  Withdrawn by Government.

11 **INTERROGATORY NO. 6:**

12     IDENTIFY and DOCUMENT any legal action in which any of your owners,

13 officers, shareholder, managers, or directors have ever been involved in any manner,

14 including criminal, civil, forfeiture or administrative. For each legal action,

15 IDENTIFY and DOCUMENT the court docket number, the location of the legal

16 action, the parties involved, the facts surrounding the action, and the final

17 disposition.

18 **RESPONSE TO INTERROGATORY NO. 6:**

19     No response required.  Withdrawn by Government.

20 **INTERROGATORY NO. 7:**

21     State whether any person or entity other than you has an interest in the

22 Defendant Asset and if so, IDENTIFY the nature of that interest.

23 **RESPONSE TO INTERROGATORY NO. 7:**

24     No other person or entity has a valid or superior interest in the Vehicle as a

25 matter of law.

26 **INTERROGATORY NO. 8:**

27     State whether Defendant Asset has been pledged as security for a loan of any

28 kind.

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

8443.0037 / 843946.1

7

SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 55
Exhibit 5

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

**RESPONSE TO INTERROGATORY NO. 8:**

The Vehicle is subject to NextGear's security interest which secures a line of credit to Remate. The current outstanding balance is $199,212.84 plus accruing interest and attorney fees and costs.

**INTERROGATORY NO. 9:**

IDENTIFY and DOCUMENT all payments received by you in connection with the Defendant Asset.

**RESPONSE TO INTERROGATORY NO. 9:**

NextGear has not received any payments in connection with the Vehicle.

**INTERROGATORY NO. 10:**

IDENTIFY and DOCUMENT the nature of your interest in the Defendant Asset and describe in detail how that interest arose.

**RESPONSE TO INTERROGATORY NO. 10:**

NextGear provides flooring lines to used car dealers across the United States, including the State of California. A flooring line allows dealers to purchase inventory, i.e., vehicles, for resale to the public. NextGear does not make consumer loans, but only commercial loans to auto dealers. NextGear is licensed to make loans by the State of California.

NextGear has provided flooring financing to Remate since 2005. NextGear's security interest was perfected when Remate's initial flooring line was issued. It remains perfected to date. NextGear's security interest extends to "a continuing security interest in all of [Remate's] assets and properties, wherever located, including without limitation, all Equipment of any kind or nature, all vehicles, vehicle parts, all inventory now owned or hereafter acquired, without limitation...." This would include the Vehicle from the moment Remate acquired an interest in it. As of April 20, 2012, when NextGear submitted its petition for return of the subject vehicle, Remate's outstanding balance on its flooring line amounted to $233,824.34. Remate's debt to

8443.0037 / 843946.1                                8                                SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 56
Exhibit 5

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1  DSC remains unpaid and amounts to $199,212.84 plus accruing interest and attorney

2  fees and costs.

3      In early March, 2012, Mariscal informed NextGear representative Troy Rogers

4  ("Rogers") that the Vehicle was owned by Remate and had been impounded by the

5  Irwindale Police. Specifically, in response to NextGear's request for payment on

6  Remate's flooring line of credit, Mariscal told Rogers that Remate owned a

7  Lamborghini that they would like to surrender to NextGear apply to the line of credit

8  but the vehicle had been impounded. Mariscal gave Rogers a copy of the Title and told

9  him that she had the original at home.

10     Approximately a week after this conversation, Mariscal delivered the original

11  Title for the Vehicle to Rogers, together with the Yellow Buyer's Copy of the ROS

12  prepared by the selling dealer. NextGear continues to be in possession of the original

13  Title and ROS.

14     DOCUMENTS: Loan Documents, Receivable Report, Statement, Title, ROS,

15  Mariscal Declaration, Rogers Declaration.

16     Discovery is ongoing and NextGear reserves the right to supplement or

17  amend this response as additional or different information may become known.

18  **INTERROGATORY NO. 11:**

19     If you 'deny that on April 26, 2011, a man identifying himself as Luis Perez

20  presented Remate's business license and Department of Motor Vehicle Dealer

21  License to LNB in connection with a purported dealer to dealer transaction for the

22  purchase of the Defendant Asset, set forth fUlly the facts and theories that support

23  your denial, IDENTIFY all individuals with knowledge of said facts and theories,

24  and IDENTIFY all documents which evidence, reflect or refer to said facts and

25  theories.

26  **RESPONSE TO INTERROGATORY NO. 11:**

27     NextGear is unable to respond to this interrogatory at this time. NextGear is a

28  secured lender who was neither present at nor involved in the sale of the Vehicle by

1  LNB and has no reasonable means of accessing sufficient information to admit or
2  deny this interrogatory.

3  **INTERROGATORY NO. 12:**

4      If you deny that Margarita Silva was not an employee of Remate del Monte
5  Auto Sales, set forth fully the facts and theories that support your denial, IDENTIFY
6  all individuals with knowledge of said facts and theories, and IDENTIFY all
7  documents which evidence, reflect or refer to -said facts and theories.

8  **RESPONSE TO INTERROGATORY NO. 12:**

9      NextGear is unable to respond to this interrogatory at this time.  NextGear is a
10  secured lender who was neither present at nor involved in the sale of the Vehicle by
11  LNB and has no reasonable means of accessing sufficient information to admit or
12  deny this interrogatory.

13  **INTERROGATORY NO. 13:**

14      If you deny that on May 25, 2011, Margarita Silva signed a contract for the
15  purchase of the Defendant Asset, set forth fully the facts and theories that support
16  your denial, IDENTIFY all individuals with knowledge of said facts and theories,
17  and IDENTIFY all documents which evidence, reflect or refer to said facts and
18  theories.

19  **RESPONSE TO INTERROGATORY NO. 13:**

20      NextGear is unable to respond to this interrogatory at this time.  NextGear is a
21  secured lender who was neither present at nor involved in the sale of the Vehicle by
22  LNB and has no reasonable means of accessing sufficient information to admit or
23  deny this interrogatory.

24  **INTERROGATORY NO. 14:**

25      If you deny that Silva made a $7,000 cash down payment on the Defendant
26  Asset and promised to pay the remaining $167,780, set forth fully the facts and
27  theories that support your denial, IDENTIFY all individuals with knowledge of said
28  facts and theories, and IDENTIFY all documents which evidence, reflect or

PRENOVOST, NORMANDIN, BERGH & DAVE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1  2 refer to said facts and theories.

2  **RESPONSE TO INTERROGATORY NO. 14:**

3        NextGear is unable to respond to this interrogatory at this time.  NextGear is a

4  secured lender who was neither present at nor involved in the sale of the Vehicle by

5  LNB and has no reasonable means of accessing sufficient information to admit or

6  deny this interrogatory.

7  **INTERROGATORY NO. 15:**

8        If you deny that the person using Perez's identification was Eddie Escobedo,

9  set forth fully the facts and theories that support your denial, IDENTIFY all

10  individuals with knowledge of said facts and theories, and IDENTIFY all documents

11  which evidence, reflect or refer to said facts and theories.

12  **RESPONSE TO INTERROGATORY NO. 15:**

13        NextGear is unable to respond to this interrogatory at this time.  NextGear is a

14  secured lender who was neither present at nor involved in the sale of the Vehicle by

15  LNB and has no reasonable means of accessing sufficient information to admit or

16  deny this interrogatory.

17  **INTERROGATORY NO. 16:**

18        If you deny that Silva and Escobedo acted in concert to acquire the Defendant

19  Asset, set forth fully the facts and theories that support your denial, IDENTIFY all

20  individuals with knowledge of said facts and theories, and IDENTIFY all documents

21  which evidence, reflect or refer to said facts and theories.

22  **RESPONSE TO INTERROGATORY NO. 16:**

23        NextGear is unable to respond to this interrogatory at this time.  NextGear is a

24  secured lender who was neither present at nor involved in the sale of the Vehicle by

25  LNB and has no reasonable means of accessing sufficient information to admit or

26  deny this interrogatory.

27

28

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 59
Exhibit 5

**INTERROGATORY NO. 17:**

If you contend that Escobedo, Perez, and Silva were authorized to act on behalf of Remate del Monte Auto Sales in connection with the acquisition of the Defendant Asset from LNB, set forth fully the facts and theories that support your contention, IDENTIFY all individuals with knowledge of said facts and theories, and IDENTIFY all documents which evidence, reflect or refer to said facts and theories.

**RESPONSE TO INTERROGATORY NO. 17:**

NextGear is unable to respond to this interrogatory at this time. NextGear is a secured lender who was neither present at nor involved in the sale of the Vehicle by LNB and has no reasonable means of accessing sufficient information to admit or deny this interrogatory.

**INTERROGATORY NO. 18:**

If you contend that Escobedo had permission to use the business and DMV Dealer licenses of Remate del Monte Auto Sales to acquire the Defendant Asset, set forth fully the facts and theories that support your contention, IDENTIFY all individuals with knowledge of.said facts and .theories, and IDENTIFY all documents which evidence, reflect or refer to said facts and theories.

**RESPONSE TO INTERROGATORY NO. 18:**

NextGear is unable to respond to this interrogatory at this time. NextGear is a secured lender who was neither present at nor involved in the sale of the Vehicle by LNB and has no reasonable means of accessing sufficient information to admit or deny this interrogatory.

**INTERROGATORY NO. 19:**

If you contend that the Defendant Asset was part of the inventory of Remate del Monte Auto Sales, set forth fully the facts and theories that support your contention, IDENTIFY all individuals with knowledge of said facts and theories,

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1  and IDENTIFY all documents which evidence, reflect or refer to said facts and
2  theories.

3  **RESPONSE TO INTERROGATORY NO. 19:**

4      NextGear provides flooring lines to used car dealers across the United States,
5  including the State of California. A flooring line allows dealers to purchase inventory,
6  i.e., vehicles, for resale to the public. NextGear does not make consumer loans, but
7  only commercial loans to auto dealers. NextGear is licensed to make loans by the State
8  of California.

9      NextGear has provided flooring financing to Remate since 2005. NextGear's
10  security interest was perfected when Remate's initial flooring line was issued. It
11  remains perfected to date. NextGear's security interest extends to "a continuing
12  security interest in all of [Remate's] assets and properties, wherever located, including
13  without limitation, all Equipment of any kind or nature, all vehicles, vehicle parts, all
14  inventory now owned or hereafter acquired, without limitation...." This would include
15  the Vehicle from the moment Remate acquired an interest in it. As of April 20, 2012,
16  when NextGear submitted its claim for return of the subject vehicle, Remate's
17  outstanding balance on its flooring line amounted to $233,824.34. Remate's debt to
18  NextGear remains unpaid and amounts to $199,212.84 plus accruing interest and
19  attorney fees and costs.

20      In early March, 2012, Mariscal informed NextGear representative Troy Rogers
21  ("Rogers") that the Vehicle was owned by Remate and had been impounded by the
22  Irwindale Police. Specifically, in response to NextGear's request for payment on
23  Remate's flooring line of credit, Mariscal told Rogers that Remate owned a
24  Lamborghini that they would like to surrender to apply to the line of credit but the
25  vehicle had been impounded. Mariscal gave Rogers a copy of the Title and told him
26  that she had the original at home.

27      Approximately a week after this conversation, Mariscal delivered the original
28  Title for the Vehicle to Rogers, together with the Yellow Buyer's Copy of the ROS

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel: (714) 547-2444 • Fax (714) 835-2889

1  prepared by the selling dealer. NextGear continues to be in possession of the original

2  Title and ROS.

3      NextGear's contention is also supported by (1) the Claim Opposing Forfeiture

4  ("Zugasti Claim") filed by Ernesto Zugasti-Coria ("Zugasti") wherein Zugasti admits

5  under penalty of perjury that a certain Eddie Escobedo ("Escobedo") "gave" the

6  Vehicle and the Title to Zugasti in Remate's name for  valuable consideration,

7  specifically a 2011 Infinity Q56, a 2012 BMW B7 and a Mercedes Mclaren

8  ("Exchanged Vehicles") and (2) Zugasti Responses to Interrogatories in which Zugasti

9  states under penalty of perjury that he acquired the Vehicle and the Title pursuant to a

10  vehicle exchange with Luis Perez ("Perez") in January 2012.  Zugasti also states that

11  Perez informed him that Perez intended to "put, register and transfer" the Vehicle into

12  Remate's name.

13      WITNESSES:  Rogers, Mariscal, Zugasti, NextGear custodian of records,

14  Escobedo, Perez.

15      NextGear objects to the disclosure of Rogers address information on privacy

16  grounds. Rogers is available through NextGear's counsel. Mariscal and Zugasti's last

17  known address is 30 Mountain Laurel Way, Azusa, California 91702. NextGear has no

18  information as addresses on any other witnesses.

19      DOCUMENTS:  Loan Documents, Receivable Report, Statement, Title, ROS,

20  Mariscal Declaration, Rogers Declaration, Zugasti Claim including exhibits, Zugasti

21  Responses to Interrogatories.

22      THEORIES:  Pursuant to the terms of its written Security Agreement set forth

23  and perfected in the Loan documents, NextGear has  a perfected security interest in the

24  Vehicle that is superior to any interest the Government or Zugasti might assert.  By

25  definition, a "secured party" is a "person in whose favor a security interest is created or

26  provided for under a security agreement, whether or not any obligation to be secured is

27  outstanding." (Cal. Comm. Code § 9102(72)(A).)  A "security agreement" means an

28

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2589

1    agreement that creates or provides for a security interest." (Cal. Comm. Code §
2    9102(73).)

3         Under California law a security agreement "may create or provide for a security
4    interest in after-acquired collateral." Cal. U. Com. Code, § 9204( in pertinent part). An
5    after-acquired property clause is no less valid than a security interest in collateral in
6    which the debtor has rights at the time value is given. Section 9204 validates a security
7    interest in the debtor's existing and (upon acquisition) future assets, even though the
8    debtor has liberty to use or dispose of collateral without being required to account for
9    proceeds or substitute new collateral. Official Comments to Cal. U. Com. Code, §
10   9204.

11        NextGear's security interest had attached to the Vehicle when the Vehicle was
12   seized. Attachment occurs when each of three events has taken place: (1) the secured
13   party has possession of the collateral pursuant to an agreement, or the debtor has signed
14   a security agreement describing the collateral, (2) the secured party has given value,
15   and (3) the debtor has rights in the collateral. *Bank of the West v. Commercial Credit*
16   *Financial Services, Inc.* (9th Cir. 1988) 852 F.2d 1162, 1166. Here Remate had signed
17   a security agreement describing the collateral which included "all inventory now owned
18   or hereinafter acquired." The Remate principals treated the Vehicle as inventory, not as
19   a general dealer asset. Zugasti traded inventory, the Exchanged Vehicles, for the
20   Vehicle. The Title was retained by Remate consistent with usual dealer practices and
21   applicable law, rather than submitted to the DMV for re-registration and re-titling in
22   Remate's name (see Cal. Veh. Code §§5600 and 5906) and Remate submitted it to
23   NextGear as additional security and to pay down its inventory flooring credit line.
24   Finally, Mariscal stated in a Declaration under penalty of perjury that the Vehicle was
25   part of Remate's inventory.

26        This conduct and the supporting documents establish that Remate had ample
27   interest in the Vehicle for NextGear's security interest to attach. California's
28   Commercial Code does not require that a debtor own or hold title to collateral. Where a

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444 • Fax (714) 835-2889

1  debtor has rights beyond naked possession a security interest may attach. *In Re Coupon*

2  *Clearing Service, Inc.* 113 F. 3d 1091, 1103 (9th Cir. 1997). "[A] debtor who does not

3  own collateral may nonetheless use the collateral for security, thereby obtaining 'rights

4  in the collateral,' when authorized to do so by the actual owner of the collateral. (See s

5  9112, and Un.Com.Code comment. See also s 9105, subd. (1) (d), and Un.Com.Code

6  comment 2.)" *K.N.C. Wholesale, Inc. v. Awmco, Inc.* (1976) 56 Cal.App.3d 315, 318-

7  19.

8  Remate acquired rights in the Vehicle in June, 2011 when LNB transferred its

9  interest to Remate as Perez informed Zugasti he was going to have done and Zugasti,

10  not only made no objection, but gave value for the Vehicle in the form of the

11  Exchanged Vehicles.  The Zugasti Claim and Zugasti Responses to Interrogatories

12  establish that Zugasti acquired rights in the Vehicle well prior to its seizure which

13  acquisition caused NextGear's security interest to attach.  Remate had the title with the

14  power to transfer to a third party at any time.

15  NextGear gave value for Vehicle in that it provided Remate a flooring line with a

16  credit limit of $150,000 to fund Remate's inventory.  Remate was in debt to NextGear

17  in excess of $200,000 at the time the Vehicle was seized.

18  Discovery is ongoing and NextGear reserves the right to supplement or

19  amend this response as additional or different information may become known.

20  **INTERROGATORY NO. 20:**

21  If you deny that Escobedo acquired the Defendant Asset solely for his

22  personal use, set forth fully the facts and theories that support your denial,

23  IDENTIFY all individuals with knowledge of said facts and theories, and

24  IDENTIFY all documents which evidence, reflect or refer to ,said facts 'and

25  theories.

26  **RESPONSE TO INTERROGATORY NO. 20:**

27  NextGear provides flooring lines to used car dealers across the United States,

28  including the State of California.  A flooring line allows dealers to purchase inventory,

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

Page 64

Exhibit 5

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1 i.e., vehicles, for resale to the public.  NextGear does not make consumer loans, but

2 only commercial loans to auto dealers.  NextGear is licensed to make loans by the State

3 of California.

4     NextGear has provided flooring financing to Remate since 2005.  NextGear's

5 security interest was perfected when Remate's initial flooring line was issued.  It

6 remains perfected to date.  NextGear's security interest extends to "a continuing

7 security interest in all of [Remate's] assets and properties, wherever located, including

8 without limitation, all Equipment of any kind or nature, all vehicles, vehicle parts, all

9 inventory now owned or hereafter acquired, without limitation...." This would include

10 the Vehicle from the moment Remate acquired an interest in it.  As of April 20, 2012,

11 when NextGear submitted its claim for return of the subject vehicle, Remate's

12 outstanding balance on its flooring line amounted to $233,824.34.  Remate's debt to

13 NextGear remains unpaid and amounts to $199,212.84 plus accruing interest and

14 attorney fees and costs.

15     In early March, 2012, Mariscal informed NextGear representative Troy Rogers

16 ("Rogers") that the Vehicle was owned by Remate and had been impounded by the

17 Irwindale Police.  Specifically, in response to NextGear's request for payment on

18 Remate's flooring line of credit, Mariscal told Rogers that Remate owned a

19 Lamborghini that they would like to surrender to apply to the line of credit but the

20 vehicle had been impounded.  Mariscal gave Rogers a copy of the Title and told him

21 that she had the original at home.

22     Approximately a week after this conversation, Mariscal delivered the original

23 Title for the Vehicle to Rogers, together with the Yellow Buyer's Copy of the ROS

24 prepared by the selling dealer.  NextGear continues to be in possession of the original

25 Title and ROS.

26     NextGear's contention is also supported by (1) the Zugasti Claim filed by

27 Zugasti wherein Zugasti admits under penalty of perjury that Escobedo "gave" the

28 Vehicle and the Title to Zugasti in Remate's name for valuable consideration,

8443.0037 / 843946.1                              17                        SACV13-907-DOC(JPR)
CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 65
Exhibit 5

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1  specifically the Exchanged Vehicles." and (2) Zugasti Responses to Interrogatories in

2  which Zugasti states under penalty of perjury that he acquired the Vehicle and the Title

3  pursuant to a vehicle exchange with Luis Perez ("Perez") in January 2012. Zugasti also

4  states that Perez informed him that Perez intended to "put, register and transfer" the

5  Vehicle into Remate's name.

6      WITNESSES:   Rogers, Mariscal, Zugasti, NextGear custodian of records,

7  Escobedo.

8      DOCUMENTS:  Loan Documents, Receivable Report, Statement, Title, ROS,

9  Mariscal Declaration, Rogers Declaration, Zugasti Claim including exhibits, Zugasti

10  Responses to Interrogatories

11      THEORIES: Pursuant to its written Security Agreement set forth and perfected

12  in the Loan Documents NextGear has has a perfected security interest in the Vehicle

13  that is superior to any interest the Government or Zugasti might assert. By definition, a

14  "secured party" is a "person in whose favor a security interest is created or provided for

15  under a security agreement, whether or not any obligation to be secured is outstanding."

16  (Cal. Comm. Code § 9102(72)(A).)  A "security agreement" means an agreement that

17  creates or provides for a security interest."  (Cal. Comm. Code § 9102(73).)

18      Under California law a security agreement "may create or provide for a security

19  interest in after-acquired collateral." Cal. U. Com. Code, § 9204( in pertinent part). An

20  after-acquired property clause is no less valid than a security interest in collateral in

21  which the debtor has rights at the time value is given.  Section 9204 validates a security

22  interest in the debtor's existing and (upon acquisition) future assets, even though the

23  debtor has liberty to use or dispose of collateral without being required to account for

24  proceeds or substitute new collateral.   Official Comments to Cal. U. Com. Code, §

25  9204.

26      NextGear's security interest had attached to the Vehicle when the Vehicle was

27  seized.  Attachment occurs when each of three events has taken place: (1) the secured

28  party has possession of the collateral pursuant to an agreement, or the debtor has signed

8443.0037 / 843946.1    18    SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 66
Exhibit 5

1  a security agreement describing the collateral, (2) the secured party has given value,

2  and (3) the debtor has rights in the collateral. *Bank of the West v. Commercial Credit*

3  *Financial Services, Inc.* (9th Cir. 1988) 852 F.2d 1162, 1166. Here Remate had signed

4  a security agreement describing the collateral which included "all inventory now owned

5  or hereinafter acquired." The Remate principals treated the Vehicle as inventory, not as

6  a general dealer asset.  Zugasti traded inventory, the Exchanged Vehicles, for the

7  Vehicle.  The Title was retained by Remate consistent with usual dealer practices and

8  applicable law, rather than submitted to the DMV for re-registration and re-titling in

9  Remate's name (see Cal. Veh. Code §§5600 and 5906) and  Remate submitted it to

10  NextGear as additional security and to pay down its inventory flooring credit line.

11  Finally, Mariscal stated in a Declaration under penalty of perjury that the Vehicle was

12  part of Remate's inventory.

13      This conduct and the supporting documents establish that Remate had ample

14  interest in the Vehicle for NextGear's security interest to attach.   California's

15  Commercial Code does not require that a debtor own or hold title to collateral.  Where a

16  debtor has rights beyond naked possession a security interest may attach. *In Re Coupon*

17  *Clearing Service, Inc.* 113 F. 3d 1091, 1103 (9th Cir. 1997). "[A] debtor who does not

18  own collateral may nonetheless use the collateral for security, thereby obtaining 'rights

19  in the collateral,' when authorized to do so by the actual owner of the collateral. (See s

20  9112, and Un.Com.Code comment. See also s 9105, subd. (1) (d), and Un.Com.Code

21  comment 2.)" *K.N.C. Wholesale, Inc. v. Awmco, Inc.* (1976) 56 Cal.App.3d 315, 318-

22  19.

23      Remate acquired rights in the Vehicle in June, 2011 when LNB transferred its

24  interest to Remate as Perez informed Zugasti he was going to have done and Zugasti,

25  not only made no objection, but gave value for the Vehicle in the form of the

26  Exchanged Vehicles.  The Zugasti Claim and Zugasti Responses to Interrogatories

27  establish that Zugasti acquired rights in the Vehicle well prior to its seizure which

28

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1   acquisition caused NextGear's security interest to attach. Remate had the title with the

2   power to transfer to a third party at any time.

3       NextGear gave value for Vehicle in that it provided Remate a flooring line with a

4   credit limit of $150,000 to fund Remate's inventory. Remate was in debt to NextGear

5   in excess of $200,000 at the time the Vehicle was seized.

6       Discovery is ongoing and NextGear reserves the right to supplement or

7   amend this response as additional or different information may become known.

8   **INTERROGATORY NO. 21:**

9       If you deny that Escobedo used the Defendant Asset solely for personal

10  purposes after his acquisition thereof, set forth fully the facts and theories that

11  support your denial, IDENTIFY all individuals with knowledge of said facts and

12  theories, and IDENTIFY all documents which evidence, reflector refer to said

13  facts and theories.

14  **RESPONSE TO INTERROGATORY NO. 21:**

15      NextGear provides flooring lines to used car dealers across the United States,

16  including the State of California. A flooring line allows dealers to purchase inventory,

17  i.e., vehicles, for resale to the public. NextGear does not make consumer loans, but

18  only commercial loans to auto dealers. NextGear is licensed to make loans by the State

19  of California.

20      NextGear has provided flooring financing to Remate since 2005. NextGear's

21  security interest was perfected when Remate's initial flooring line was issued. It

22  remains perfected to date. NextGear's security interest extends to "a continuing

23  security interest in all of [Remate's] assets and properties, wherever located, including

24  without limitation, all Equipment of any kind or nature, all vehicles, vehicle parts, all

25  inventory now owned or hereafter acquired, without limitation...." This would include

26  the Vehicle from the moment Remate acquired an interest in it. As of April 20, 2012,

27  when NextGear submitted its claim for return of the subject vehicle, Remate's

28  outstanding balance on its flooring line amounted to $233,824.34. Remate's debt to

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92705-2814
Tel (714) 547-2444 • Fax (714) 835-2889

1  NextGear remains unpaid and amounts to $199,212.84 plus accruing interest and

2  attorney fees and costs.

3      In early March, 2012, Mariscal informed NextGear representative Troy Rogers

4  ("Rogers") that the Vehicle was owned by Remate and had been impounded by the

5  Irwindale Police. Specifically, in response to NextGear's request for payment on

6  Remate's flooring line of credit, Mariscal told Rogers that Remate owned a

7  Lamborghini that they would like to surrender to apply to the line of credit but the

8  vehicle had been impounded. Mariscal gave Rogers a copy of the Title and told him

9  that she had the original at home.

10      Approximately a week after this conversation, Mariscal delivered the original

11  Title for the Vehicle to Rogers, together with the Yellow Buyer's Copy of the ROS

12  prepared by the selling dealer. NextGear continues to be in possession of the original

13  Title and ROS.

14      NextGear's contention is also supported by (1) the Zugasti Claim filed by

15  Zugasti wherein Zugasti admits under penalty of perjury that Escobedo "gave" the

16  Vehicle and the Title to Zugasti in Remate's name for valuable consideration,

17  specifically the Exchanged Vehicles and (2) Zugasti Responses to Interrogatories in

18  which Zugasti states under penalty of perjury that he acquired the Vehicle and the Title

19  pursuant to a vehicle exchange with Luis Perez ("Perez") in January 2012. Zugasti also

20  states that Perez informed him that Perez intended to "put, register and transfer" the

21  Vehicle into Remate's name.

22      WITNESSES: Rogers, Mariscal, Zugasti, NextGear custodian of records,

23  Escobedo.

24      DOCUMENTS: Pursuant to its written Security Agreement set forth and

25  perfected in the Loan Documents Loan Documents, Receivable Report, Statement,

26  Title, ROS, Mariscal Declaration, Rogers Declaration, Zugasti Claim including

27  exhibits, Zugasti Responses to Interrogatories

28

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

8443.0037 / 843946.1      21      SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 69
Exhibit 5

1    THEORIES: Pursuant to a written Security Agreement set forth and perfected in

2  the Loan Docuemnts NextGear has has a perfected security interest in the Vehicle that

3  is superior to any interest the Government or Zugasti might assert. By definition, a

4  "secured party" is a "person in whose favor a security interest is created or provided for

5  under a security agreement, whether or not any obligation to be secured is outstanding."

6  (Cal. Comm. Code § 9102(72)(A).) A "security agreement" means an agreement that

7  creates or provides for a security interest." (Cal. Comm. Code § 9102(73).)

8    Under California law a security agreement "may create or provide for a security

9  interest in after-acquired collateral." Cal. U. Com. Code, § 9204( in pertinent part). An

10  after-acquired property clause is no less valid than a security interest in collateral in

11  which the debtor has rights at the time value is given. Section 9204 validates a security

12  interest in the debtor's existing and (upon acquisition) future assets, even though the

13  debtor has liberty to use or dispose of collateral without being required to account for

14  proceeds or substitute new collateral.  Official Comments to Cal. U. Com. Code, §

15  9204.

16    NextGear's security interest had attached to the Vehicle when the Vehicle was

17  seized. Attachment occurs when each of three events has taken place: (1) the secured

18  party has possession of the collateral pursuant to an agreement, or the debtor has signed

19  a security agreement describing the collateral, (2) the secured party has given value,

20  and (3) the debtor has rights in the collateral. *Bank of the West v. Commercial Credit*

21  *Financial Services, Inc.* (9th Cir. 1988) 852 F.2d 1162, 1166. Here Remate had signed

22  a security agreement describing the collateral which included "all inventory now owned

23  or hereinafter acquired." The Remate principals treated the Vehicle as inventory, not as

24  a general dealer asset. Zugasti traded inventory, the Exchanged Vehicles, for the

25  Vehicle. The Title was retained by Remate consistent with usual dealer practices and

26  applicable law, rather than submitted to the DMV for re-registration and re-titling in

27  Remate's name (see Cal. Veh. Code §§5600 and 5906) and Remate submitted it to

28  NextGear as additional security and to pay down its inventory flooring credit line.

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1   Finally, Mariscal stated in a Declaration under penalty of perjury that the Vehicle was

2   part of Remate's inventory.

3       This conduct and the supporting documents establish that Remate had ample

4   interest in the Vehicle for NextGear's security interest to attach.   California's

5   Commercial Code does not require that a debtor own or hold title to collateral. Where a

6   debtor has rights beyond naked possession a security interest may attach. *In Re Coupon*

7   *Clearing Service, Inc.* 113 F. 3d 1091, 1103 (9th Cir. 1997). "[A] debtor who does not

8   own collateral may nonetheless use the collateral for security, thereby obtaining 'rights

9   in the collateral,' when authorized to do so by the actual owner of the collateral. (See s

10  9112, and Un.Com.Code comment. See also s 9105, subd. (1) (d), and Un.Com.Code

11  comment 2.)" *K.N.C. Wholesale, Inc. v. Awmco, Inc.* (1976) 56 Cal.App.3d 315, 318-

12  19.

13      Remate acquired rights in the Vehicle in June, 2011 when LNB transferred its

14  interest to Remate as Perez informed Zugasti he was going to have done and Zugasti,

15  not only made no objection, but gave value for the Vehicle in the form of the

16  Exchanged Vehicles.   The Zugasti Claim and Zugasti Responses to Interrogatories

17  establish that Zugasti acquired rights in the Vehicle well prior to its seizure which

18  acquisition caused NextGear's security interest to attach. Remate had the title with the

19  power to transfer to a third party at any time.

20      NextGear gave value for Vehicle in that it provided Remate a flooring line with a

21  credit limit of $150,000 to fund Remate's inventory.  Remate was in debt to NextGear

22  in excess of $200,000 at the time the Vehicle was seized.

23      Discovery is ongoing and NextGear reserves the right to supplement or

24  amend this response as additional or different information may become known.

25  **INTERROGATORY NO. 22:**

26      If you deny that on June 1, 2011, 17 deposits totaling $164,200 were made to

27  a bank account at U.S. Bank in the name of LNB in connection with the purchase of

28  the Defendant Asset, set forth fully the facts and theories that support your denial,

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

1   IDENTIFY all individuals with knowledge of said facts and theories, and

2   IDENTIFY all documents which evidence, reflect or refer to said facts and theories.

3   **RESPONSE TO INTERROGATORY NO. 22:**

4   　　NextGear is unable to respond to this interrogatory at this time.  NextGear is a

5   secured lender who was neither present at nor involved with the sale of the Vehicle

6   by LNB and has no reasonable means of accessing sufficient information to admit or

7   deny this interrogatory

8   **INTERROGATORY NO. 23:**

9   　　If you deny that each of the 17 deposits made on June 1, 2011 into the LNB

10  Account at U.S. Bank were just under the amount of $10,000, set forth fully the

11  facts and theories that support your denial, IDENTIFY all individuals with

12  knowledge of said facts and theories, and IDENTIFY all documents which

13  evidence, reflector refer to said facts and theories.

14  **RESPONSE TO INTERROGATORY NO. 23:**

15  　　NextGear is unable to respond to this interrogatory at this time.  NextGear is a

16  secured lender who was neither present at nor involved with the sale of the Vehicle

17  by LNB and has no reasonable means of accessing sufficient information to admit or

18  deny this interrogatory.

19  **INTERROGATORY NO. 24:**

20  　　If you deny that the deposit of $164,000 into the bank account at U.S. Bank in

21  the name of LNB on June 1, 2011 was made in violation of 31 U.S.C. § 5324

22  (structuring), set forth fully the facts and theories that support your denial,

23  IDENTIFY all individuals with knowledge of said facts and theories, and

24  IDENTIFY all documents which evidence, reflect or refer to said facts and theories.

25  **RESPONSE TO INTERROGATORY NO. 24:**

26  　　NextGear is unable to respond to this interrogatory at this time.  NextGear is a

27  secured lender who was neither present at nor involved with the sale of the Vehicle

28

PREVOYOST, NORMANDIN, BERGH & DAVE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2589

1  by LNB and has no reasonable means of accessing sufficient information to admit or

2  deny this interrogatory.

3  **INTERROGATORY NO. 25:**

4       If you deny that the Defendant Asset is traceable to one or more violations of

5  31 U.S.C. § 5324 (structuring), set forth fully the facts and theories that support your

6  denial, IDENTIFY all individuals with knowledge of said facts and theories, and

7  IDENTIFY all documents which evidence, reflect or refer to said facts and theories.

8  **RESPONSE TO INTERROGATORY NO. 25:**

9       NextGear is unable to respond to this interrogatory at this time.  NextGear is a

10  secured lender who was neither present at nor involved with the sale of the Vehicle

11  by LNB and has no reasonable means of accessing sufficient information to admit or

12  deny this interrogatory.

13  **INTERROGATORY NO. 26:**

14       If you deny that Escobedo acquired the Defendant Asset from LNB as a result

15  of fraud, set forth fully the facts and theories that support your denial, IDENTIFY

16  all individuals with knowledge of said facts and theories, and IDENTIFY all

17  documents which evidence, reflect or refer to said facts and theories.

18  **RESPONSE TO INTERROGATORY NO. 26:**

19       NextGear is a secured lender who was neither present at nor involved with the

20  sale of the Vehicle by LNB and has no reasonable means of accessing sufficient

21  information to admit or deny this interrogatory.  However, NextGear denies the

22  interrogatory to the extent that is inconsistent with NextGear's claim as established

23  hereinbelow.

24   NextGear provides flooring lines to used car dealers across the United States, including

25  the State of California.  A flooring line allows dealers to purchase inventory, i.e.,

26  vehicles, for resale to the public.  NextGear does not make consumer loans, but only

27  commercial loans to auto dealers.  NextGear is licensed to make loans by the State of

28  California.

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444 • Fax (714) 835-2889

8443.0037 / 843946.1                    25                    SACV13-907-DOC(JPR)
CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 73
Exhibit 5

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1    NextGear has provided flooring financing to Remate since 2005.  NextGear's

2  security interest was perfected when Remate's initial flooring line was issued.  It

3  remains perfected to date.  NextGear's security interest extends to "a continuing

4  security interest in all of [Remate's] assets and properties, wherever located, including

5  without limitation, all Equipment of any kind or nature, all vehicles, vehicle parts, all

6  inventory now owned or hereafter acquired, without limitation...."  This would include

7  the Vehicle from the moment Remate acquired an interest in it.  As of April 20, 2012,

8  when NextGear submitted its claim for return of the subject vehicle, Remate's

9  outstanding balance on its flooring line amounted to $233,824.34.  Remate's debt to

10  NextGear remains unpaid and amounts to $199,212.84 plus accruing interest and

11  attorney fees and costs.

12    In early March, 2012, Mariscal informed NextGear representative Troy Rogers

13  ("Rogers") that the Vehicle was owned by Remate and had been impounded by the

14  Irwindale Police.  Specifically, in response to NextGear's request for payment on

15  Remate's flooring line of credit, Mariscal told Rogers that Remate owned a

16  Lamborghini that they would like to surrender to apply to the line of credit but the

17  vehicle had been impounded.  Mariscal gave Rogers a copy of the Title and told him

18  that she had the original at home.

19    Approximately a week after this conversation, Mariscal delivered the original

20  Title for the Vehicle to Rogers, together with the Yellow Buyer's Copy of the ROS

21  prepared by the selling dealer.  NextGear continues to be in possession of the original

22  Title.

23    NextGear's contention is also supported by (1) the Zugasti Claim filed by

24  Zugasti wherein Zugasti admits under penalty of perjury that Escobedo "gave" the

25  Vehicle and the Title to Zugasti in Remate's name for valuable consideration,

26  specifically the Exchanged Vehicles and (2) Zugasti Responses to Interrogatories in

27  which Zugasti states under penalty of perjury that he acquired the Vehicle and the Title

28  pursuant to a vehicle exchange with Luis Perez ("Perez") in January 2012. Zugasti also

8443.0037 / 843946.1                                   26                          SACV13-907-DOC(JPR)
CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 74
Exhibit 5

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1 states that Perez informed him that Perez intended to "put, register and transfer" the

2 Vehicle into Remate's name.

3       WITNESSES:   Rogers, Mariscal, Zugasti, NextGear custodian of records,

4 Escobedo.

5       DOCUMENTS:  Loan Documents, Receivable Report, Statement, Title, ROS,

6 Mariscal Declaration, Rogers Declaration, Zugasti Claim including exhibits, Zugasti

7 Responses to Interrogatories

8       THEORIES:  Pursuant to its written Security Agreement set forth and perfected

9 in the Loan documents NextGear has a perfected security interest in the Vehicle that is

10 superior to any interest the Government or Zugasti might assert.  By definition, a

11 "secured party" is a "person in whose favor a security interest is created or provided for

12 under a security agreement, whether or not any obligation to be secured is outstanding."

13 (Cal. Comm. Code § 9102(72)(A).)  A "security agreement" means an agreement that

14 creates or provides for a security interest."  (Cal. Comm. Code § 9102(73).)

15       Under California law a security agreement "may create or provide for a security

16 interest in after-acquired collateral."  Cal. U. Com. Code, § 9204( in pertinent part).  An

17 after-acquired property clause is no less valid than a security interest in collateral in

18 which the debtor has rights at the time value is given.  Section 9204 validates a security

19 interest in the debtor's existing and (upon acquisition) future assets, even though the

20 debtor has liberty to use or dispose of collateral without being required to account for

21 proceeds or substitute new collateral.   Official Comments to Cal. U. Com. Code, §

22 9204.

23       NextGear's security interest had attached to the Vehicle when the Vehicle was

24 seized.  Attachment occurs when each of three events has taken place: (1) the secured

25 party has possession of the collateral pursuant to an agreement, or the debtor has signed

26 a security agreement describing the collateral, (2) the secured party has given value,

27 and (3) the debtor has rights in the collateral. *Bank of the West v. Commercial Credit*

28 *Financial Services, Inc.* (9th Cir. 1988) 852 F.2d 1162, 1166.  Here Remate had signed

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

1  a security agreement describing the collateral which included "all inventory now owned
2  or hereinafter acquired." The Remate principals treated the Vehicle as inventory, not as
3  a general dealer asset. Zugasti traded inventory, the Exchanged Vehicles, for the
4  Vehicle. The Title was retained by Remate consistent with usual dealer practices and
5  applicable law, rather than submitted to the DMV for re-registration and re-titling in
6  Remate's name (see Cal. Veh. Code §§5600 and 5906) and Remate submitted it to
7  NextGear as additional security and to pay down its inventory flooring credit line.
8  Finally, Mariscal stated in a Declaration under penalty of perjury that the Vehicle was
9  part of Remate's inventory.

10       This conduct and the supporting documents establish that Remate had ample
11  interest in the Vehicle for NextGear's security interest to attach. California's
12  Commercial Code does not require that a debtor own or hold title to collateral. Where a
13  debtor has rights beyond naked possession a security interest may attach. *In Re Coupon*
14  *Clearing Service, Inc.* 113 F. 3d 1091, 1103 (9th Cir. 1997). "[A] debtor who does not
15  own collateral may nonetheless use the collateral for security, thereby obtaining 'rights
16  in the collateral,' when authorized to do so by the actual owner of the collateral. (See s
17  9112, and Un.Com.Code comment. See also s 9105, subd. (1) (d), and Un.Com.Code
18  comment 2.)" *K.N.C. Wholesale, Inc. v. Awmco, Inc.* (1976) 56 Cal.App.3d 315, 318-
19  19.

20       Remate acquired rights in the Vehicle in June, 2011 when LNB transferred its
21  interest to Remate as Perez informed Zugasti he was going to have done and Zugasti,
22  not only made no objection, but gave value for the Vehicle in the form of the
23  Exchanged Vehicles. The Zugasti Claim and Zugasti Responses to Interrogatories
24  establish that Zugasti acquired rights in the Vehicle well prior to its seizure which
25  acquisition caused NextGear's security interest to attach. Remate had the title with the
26  power to transfer to a third party at any time.

27
28

8443.0037 / 843946.1      28      SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 76
Exhibit 5

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1   NextGear gave value for Vehicle in that it provided Remate a flooring line with a

2   credit limit of $150,000 to fund Remate's inventory.  Remate was in debt to NextGear

3   in excess of $200,000 at the time the Vehicle was seized.

4   Discovery is ongoing and NextGear reserves the right to supplement or

5   amend this response as additional or different information may become known.

6   **INTERROGATORY NO. 27:**

7   If you deny that the Defendant Asset was acquired from LNB as a result of

8   fraud, set forth fully the facts and theories that support your denial, IDENTIFY all

9   individuals with knowledge of said facts and theories, and IDENTIFY all documents

10  which evidence, reflect or refer to said facts and theories.

11  **RESPONSE TO INTERROGATORY NO. 27:**

12  NextGear is a secured lender who was neither present at nor involved with the

13  sale of the Vehicle by LNB and has no reasonable means of accessing sufficient

14  information to admit or deny this interrogatory.  However, NextGear denies the

15  interrogatory to the extent that is inconsistent with NextGear's claim as established

16  hereinbelow.

17  NextGear provides flooring lines to used car dealers across the United States,

18  including the State of California.  A flooring line allows dealers to purchase inventory,

19  i.e., vehicles, for resale to the public.  NextGear does not make consumer loans, but

20  only commercial loans to auto dealers.  NextGear is licensed to make loans by the State

21  of California.

22  NextGear has provided flooring financing to Remate since 2005.  NextGear's

23  security interest was perfected when Remate's initial flooring line was issued.  It

24  remains perfected to date.  NextGear's security interest extends to "a continuing

25  security interest in all of [Remate's] assets and properties, wherever located, including

26  without limitation, all Equipment of any kind or nature, all vehicles, vehicle parts, all

27  inventory now owned or hereafter acquired, without limitation...." This would include

28  the Vehicle from the moment Remate acquired an interest in it.  As of April 20, 2012,

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1   when NextGear submitted its claim for return of the subject vehicle, Remate's

2   outstanding balance on its flooring line amounted to $233,824.34. Remate's debt to

3   NextGear remains unpaid and amounts to $199,212.84 plus accruing interest and

4   attorney fees.

5        In early March, 2012, Mariscal informed NextGear representative Troy Rogers

6   ("Rogers") that the Vehicle was owned by Remate and had been impounded by the

7   Irwindale Police. Specifically, in response to NextGear's request for payment on

8   Remate's flooring line of credit, Mariscal told Rogers that Remate owned a

9   Lamborghini that they would like to surrender to apply to the line of credit but the

10  vehicle had been impounded. Mariscal gave Rogers a copy of the Title and told him

11  that she had the original at home.

12       Approximately a week after this conversation, Mariscal delivered the original

13  Title for the Vehicle to Rogers, together with the Yellow Buyer's Copy of the ROS

14  prepared by the selling dealer. NextGear continues to be in possession of the original

15  Title.

16       NextGear's contention is also supported by (1) the Zugasti Claim filed by

17  Zugasti wherein Zugasti admits under penalty of perjury that Escobedo "gave" the

18  Vehicle and the Title to Zugasti in Remate's name for valuable consideration,

19  specifically the Exchanged Vehicles and (2) Zugasti Responses to Interrogatories in

20  which Zugasti states under penalty of perjury that he acquired the Vehicle and the Title

21  pursuant to a vehicle exchange with Luis Perez ("Perez") in January 2012. Zugasti also

22  states that Perez informed him that Perez intended to "put, register and transfer" the

23  Vehicle into Remate's name.

24       WITNESSES: Rogers, Mariscal, Zugasti, NextGear custodian of records,

25  Escobedo.

26       DOCUMENTS: Loan Documents, Receivable Report, Statement, Title, ROS,

27  Mariscal Declaration, Rogers Declaration, Zugasti Claim including exhibits, Zugasti

28  Responses to Interrogatories

8443.0037 / 843946.1                30            SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1  THEORIES:  Pursuant to its written Security Agreement set forth and perfected
2  in the Loan documents NextGear has a perfected security interest in the Vehicle that is
3  superior to any interest the Government or Zugasti might assert.  By definition, a
4  "secured party" is a "person in whose favor a security interest is created or provided for
5  under a security agreement, whether or not any obligation to be secured is outstanding."
6  (Cal. Comm. Code § 9102(72)(A).)  A "security agreement" means an agreement that
7  creates or provides for a security interest."  (Cal. Comm. Code § 9102(73).)

8  Under California law a security agreement "may create or provide for a security
9  interest in after-acquired collateral."  Cal. U. Com. Code, § 9204( in pertinent part).  An
10  after-acquired property clause is no less valid than a security interest in collateral in
11  which the debtor has rights at the time value is given.  Section 9204 validates a security
12  interest in the debtor's existing and (upon acquisition) future assets, even though the
13  debtor has liberty to use or dispose of collateral without being required to account for
14  proceeds or substitute new collateral.    Official Comments to Cal. U. Com. Code, §
15  9204.

16  NextGear's security interest had attached to the Vehicle when the Vehicle was
17  seized.  Attachment occurs when each of three events has taken place: (1) the secured
18  party has possession of the collateral pursuant to an agreement, or the debtor has signed
19  a security agreement describing the collateral, (2) the secured party has given value,
20  and (3) the debtor has rights in the collateral. *Bank of the West v. Commercial Credit*
21  *Financial Services, Inc.* (9th Cir. 1988) 852 F.2d 1162, 1166.  Here Remate had signed
22  a security agreement describing the collateral which included "all inventory now owned
23  or hereinafter acquired."  The Remate principals treated the Vehicle as inventory, not as
24  a general dealer asset.   Zugasti traded inventory, the Exchanged Vehicles, for the
25  Vehicle.  The Title was retained by Remate consistent with usual dealer practices and
26  applicable law, rather than submitted to the DMV for re-registration and re-titling in
27  Remate's name (see Cal. Veh. Code §§5600 and 5906) and  Remate submitted it to
28  NextGear as additional security and to pay down its inventory flooring credit line.

1   Finally, Mariscal stated in a Declaration under penalty of perjury that the Vehicle was
2   part of Remate's inventory.

3         This conduct and the supporting documents establish that Remate had ample
4   interest in the Vehicle for NextGear's security interest to attach.   California's
5   Commercial Code does not require that a debtor own or hold title to collateral.  Where a
6   debtor has rights beyond naked possession a security interest may attach. *In Re Coupon*
7   *Clearing Service, Inc.* 113 F. 3d 1091, 1103 (9th Cir. 1997). "[A] debtor who does not
8   own collateral may nonetheless use the collateral for security, thereby obtaining 'rights
9   in the collateral,' when authorized to do so by the actual owner of the collateral. (See s
10  9112, and Un.Com.Code comment. See also s 9105, subd. (1) (d), and Un.Com.Code
11  comment 2.)" *K.N.C. Wholesale, Inc. v. Awmco, Inc.* (1976) 56 Cal.App.3d 315, 318-
12  19.

13        Remate acquired rights in the Vehicle in June, 2011 when LNB transferred its
14  interest to Remate as Perez informed Zugasti he was going to have done and Zugasti,
15  not only made no objection, but gave value for the Vehicle in the form of the
16  Exchanged Vehicles.  The Zugasti Claim and Zugasti Responses to Interrogatories
17  establish that Zugasti acquired rights in the Vehicle well prior to its seizure which
18  acquisition caused NextGear's security interest to attach.  Remate had the title with the
19  power to transfer to a third party at any time.

20        NextGear gave value for Vehicle in that it provided Remate a flooring line with a
21  credit limit of $150,000 to fund Remate's inventory.  Remate was in debt to NextGear
22  in excess of $200,000 at the time the Vehicle was seized.

23        Discovery is ongoing and NextGear reserves the right to supplement or
24  amend this response as additional or different information may become known.

25  **INTERROGATORY NO. 28:**

26        If you contend that you had a security interest in the Defendant Asset, set
27  forth fully the facts and theories that support your contention, IDENTIFY all

28

8443.0037 / 843946.1

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

32

SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 80
Exhibit 5

1  individuals with knowledge of said facts and theories, and IDENTIFY all documents

2  which evidence, reflect or, refer to said facts and theories.

3  **RESPONSE TO INTERROGATORY NO. 28:**

4      NextGear provides flooring lines to used car dealers across the United States,

5  including the State of California. A flooring line allows dealers to purchase inventory,

6  i.e., vehicles, for resale to the public. NextGear does not make consumer loans, but

7  only commercial loans to auto dealers. NextGear is licensed to make loans by the State

8  of California.

9      NextGear has provided flooring financing to Remate since 2005. NextGear's

10  security interest was perfected when Remate's initial flooring line was issued. It

11  remains perfected to date. NextGear's security interest extends to "a continuing

12  security interest in all of [Remate's] assets and properties, wherever located, including

13  without limitation, all Equipment of any kind or nature, all vehicles, vehicle parts, all

14  inventory now owned or hereafter acquired, without limitation...." This would include

15  the Vehicle from the moment Remate acquired an interest in it. As of April 20, 2012,

16  when NextGear submitted its claim for return of the subject vehicle, Remate's

17  outstanding balance on its flooring line amounted to $233,824.34. Remate's debt to

18  NextGear remains unpaid and amounts to $199,212.84 plus accruing interest and

19  attorney fees and costs.

20      In early March, 2012, Mariscal informed NextGear representative Troy Rogers

21  ("Rogers") that the Vehicle was owned by Remate and had been impounded by the

22  Irwindale Police. Specifically, in response to NextGear's request for payment on

23  Remate's flooring line of credit, Mariscal told Rogers that Remate owned a

24  Lamborghini that they would like to surrender to apply to the line of credit but the

25  vehicle had been impounded. Mariscal gave Rogers a copy of the Title and told him

26  that she had the original at home.

27      Approximately a week after this conversation, Mariscal delivered the original

28  Title for the Vehicle to Rogers, together with the Yellow Buyer's Copy of the ROS

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 · Fax (714) 835-2889

8443.0037 / 843946.1      33      SACV13-907-DOC(JPR)
CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 81
Exhibit 5

1  prepared by the selling dealer. NextGear continues to be in possession of the original

2  Title.

3  NextGear's contention is also supported by (1) the Zugasti Claim filed by

4  Zugasti wherein Zugasti admits under penalty of perjury that Escobedo "gave" the

5  Vehicle and the Title to Zugasti in Remate's name for valuable consideration,

6  specifically the Exchanged Vehicles and (2) Zugasti Responses to Interrogatories in

7  which Zugasti states under penalty of perjury that he acquired the Vehicle and the Title

8  pursuant to a vehicle exchange with Luis Perez ("Perez") in January 2012. Zugasti also

9  states that Perez informed him that Perez intended to "put, register and transfer" the

10 Vehicle into Remate's name.

11 WITNESSES: Rogers, Mariscal, Zugasti, NextGear custodian of records,

12 Escobedo.

13 DOCUMENTS: Loan Documents, Receivable Report, Statement, Title, ROS,

14 Mariscal Declaration, Rogers Declaration, Zugasti Claim including exhibits, Zugasti

15 Responses to Interrogatories

16 THEORIES: Pursuant to a written Security Agreement set forth and perfected in

17 the Loan Documents NextGear has a perfected security interest in the Vehicle that is

18 superior to any interest the Government or Zugasti might assert. By definition, a

19 "secured party" is a "person in whose favor a security interest is created or provided for

20 under a security agreement, whether or not any obligation to be secured is outstanding."

21 (Cal. Comm. Code § 9102(72)(A).) A "security agreement" means an agreement that

22 creates or provides for a security interest." (Cal. Comm. Code § 9102(73).)

23 Under California law a security agreement "may create or provide for a security

24 interest in after-acquired collateral." Cal. U. Com. Code, § 9204( in pertinent part). An

25 after-acquired property clause is no less valid than a security interest in collateral in

26 which the debtor has rights at the time value is given. Section 9204 validates a security

27 interest in the debtor's existing and (upon acquisition) future assets, even though the

28 debtor has liberty to use or dispose of collateral without being required to account for

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

1 proceeds or substitute new collateral.    Official Comments to Cal. U. Com. Code, §
2 9204.

3        NextGear's security interest had attached to the Vehicle when the Vehicle was
4 seized.  Attachment occurs when each of three events has taken place: (1) the secured
5 party has possession of the collateral pursuant to an agreement, or the debtor has signed
6 a security agreement describing the collateral, (2) the secured party has given value,
7 and (3) the debtor has rights in the collateral. *Bank of the West v. Commercial Credit
8 Financial Services, Inc.* (9th Cir. 1988) 852 F.2d 1162, 1166.  Here Remate had signed
9 a security agreement describing the collateral which included "all inventory now owned
10 or hereinafter acquired." The Remate principals treated the Vehicle as inventory, not as
11 a general dealer asset.  Zugasti traded inventory, the Exchanged Vehicles, for the
12 Vehicle.  The Title was retained by Remate consistent with usual dealer practices and
13 applicable law, rather than submitted to the DMV for re-registration and re-titling in
14 Remate's name (see Cal. Veh. Code §§5600 and 5906) and  Remate submitted it to
15 NextGear as additional security and to pay down its inventory flooring credit line.
16 Finally, Mariscal stated in a Declaration under penalty of perjury that the Vehicle was
17 part of Remate's inventory.

18        This conduct and the supporting documents establish that Remate had ample
19 interest in the Vehicle for NextGear's security interest to attach.    California's
20 Commercial Code does not require that a debtor own or hold title to collateral.  Where a
21 debtor has rights beyond naked possession a security interest may attach. *In Re Coupon
22 Clearing Service, Inc.* 113 F. 3d 1091, 1103 (9th Cir. 1997).  "[A] debtor who does not
23 own collateral may nonetheless use the collateral for security, thereby obtaining 'rights
24 in the collateral,' when authorized to do so by the actual owner of the collateral. (See s
25 9112, and Un.Com.Code comment. See also s 9105, subd. (1) (d), and Un.Com.Code
26 comment 2.)" *K.N.C. Wholesale, Inc. v. Awmco, Inc.* (1976) 56 Cal.App.3d 315, 318-
27 19.

28

8443.0037 / 843946.1

SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1    Remate acquired rights in the Vehicle in June, 2011 when LNB transferred its
2   interest to Remate as Perez informed Zugasti he was going to have done and Zugasti,
3   not only made no objection, but gave value for the Vehicle in the form of the
4   Exchanged Vehicles.  The Zugasti Claim and Zugasti Responses to Interrogatories
5   establish that Zugasti acquired rights in the Vehicle well prior to its seizure which
6   acquisition caused NextGear's security interest to attach.  Remate had the title with the
7   power to transfer to a third party at any time.

8    NextGear gave value for Vehicle in that it provided Remate a flooring line with a
9   credit limit of $150,000 to fund Remate's inventory.  Remate was in debt to NextGear
10  in excess of $200,000 at the time the Vehicle was seized.

11    Discovery is ongoing and NextGear reserves the right to supplement or
12  amend this response as additional or different information may become known.

13  **INTERROGATORY NO. 29:**

14    If you contend that Remate del Monte Auto Sales acknowledged that you had
15  a security interest in the Defendant Asset, set forth fully the facts and theories that
16  support your contention, IDENTIFY all individuals with knowledge of said
17  facts and theories, and IDENTIFY all documents which evidence,
18  reflect or refer to said facts and theories.

19  **RESPONSE TO INTERROGATORY NO. 29:**

20    Remate signed written Demand Promissory Note and Security Agreements in
21  2005 and 2010, among other loan documents including personal guaranties by the
22  Remate principals.  By the terms of the Loan Documents Remate granted NextGear a
23  security interests in all of Remate's assets including after acquired inventory.  Mariscal
24  acknowledged that security interest when she provided the Vehicle Title to NextGear as
25  payment on the flooring line.

26    WITNESSES:  Mariscal, Zugasti, NextGear custodian of records.

27    DOCUMENTS:  Loan Documents, Receivable Report, Statement, Title, ROS,
28  Mariscal Declaration, Rogers Declaration, Zugasti Claim including exhibits,

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92705-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1  Mariscal and Zugasti Individual Guaranties dated August 23, 2005 and January 21,
2  2010 and Floorplan Applications of August 23, 2005 and January 21, 2010.

3  **INTERROGATORY NO. 30:**

4      If you contend that Remate del Monte Auto Sales (or anyone acting on its
5  behalf) approved or ratified Escobedo's acquisition of the Defendant Asset, set forth
6  fully the facts and theories that support your contention, IDENTIFY all individuals
7  with knowledge of said facts and theories, and IDENTIFY all documents which
8  evidence, reflect or refer to said facts and theories,

9  **RESPONSE TO INTERROGATORY NO. 30:**

10      NextGear has no first hand or personal knowledge of the specific facts as to how
11  the sale of the Vehicle from LNB to Remate occurred but contends that Zugasti's
12  statements made in his Claim opposing Forfeiture that Escobedo gave him the Vehicle
13  in exchange for three other vehicles operates as a admission of ratification.
14  Additionally, Remate's possession of the Title ROS, and the delivery of the same to
15  NextGear as Remate's secured flooring lender also supports a finding that Remate
16  ratified and/or participated in the purchase of the Vehicle from LNB. Remate's
17  delivery of the Title to NextGear rather than surrendering the Title to the DMV for
18  transfer and registration also establishes that Remate considered the Vehicle to be
19  inventory rather than a general dealer asset or property of any other third party.
20  Witnesses: Zugasti, Mariscal, Rogers,

21      DOCUMENTS: Certificate of Title, ROS, Zugasti Claim, Loan Documents
22  and Receivable Report and Statement.

23  **INTERROGATORY NO. 31:**

24      If you contend that the Defendant Asset was given to Remate del Monte Auto
25  Sales, set forth fully the facts and theories that support your contention, IDENTIFY
26  all individuals with knowledge of said facts and theories, and IDENTIFY all
27  documents which evidence, reflect or refer to said facts and theories.

28

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

**RESPONSE TO INTERROGATORY NO. 31:**

NextGear has no personal knowledge of this contention but asserts that Zugasti's Claim, made under penalty of perjury, describes an exchange of the Vehicle for value. Zugasti uses the word "gave" but the transaction described is an exchange or sale for value.

**INTERROGATORY NO. 32:**

If you contend that any assets of Remate del Monte were used to acquire the Defendant Asset, set forth fully the facts and theories that support your contention, IDENTIFY all individuals with knowledge of said facts and theories, and IDENTIFY all documents which evidence, reflect or refer to said facts and theories.

**RESPONSE TO INTERROGATORY NO. 32:**

NextGear has no personal knowledge of this contention but asserts that Zugasti's Claim, made under penalty of perjury, describes an exchange of the Vehicle for value. Zugasti uses the word "gave" but the transaction described is an exchange or sale for value. The exchange was for Remate inventory:  2011 Infinity Q56, 2012 BMW B7 and a Mercedes Mclaren. See Zugasti Claim.

**INTERROGATORY NO. 33:**

IDENTIFY any consideration paid by Remate del Monte Auto Sales in connection with the Defendant Asset.

**RESPONSE TO INTERROGATORY NO. 33:**

NextGear has no personal knowledge of this contention but asserts that Zugasti's Claim, made under penalty of perjury, describes an exchange of the Vehicle for value. Zugasti uses the word "gave" but the transaction described is an exchange or sale for value. The exchange was for Remate inventory:  2011 Infinity Q56, 2012 BMW B7 and a Mercedes Mclaren. See Zugasti Claim.

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

**INTERROGATORY NO. 34:**

Describe in detail the current status of the business relationship between you and Remate del Monte Auto Sales including but not limited to any changes in that relationship since 2010, IDENTIFY all individuals with knowledge of ,said relationship, and IDENTIFY all documents which evidence, reflect or refer to said relationship.

**RESPONSE TO INTERROGATORY NO. 34:**

The business relationship between Remate and NextGear has been terminated. Remate's inventory flooring line has been cut-off. Remate is in default of its flooring line obligations and owes NextGear approximately $199,212.94 plus interest, attorney fees and costs. Zugasti and Mariscal are in default of their Guaranties. NextGear has made some collection efforts but has not filed suit against Remate or its principals at this time.

WITNESSES: Troy Rogers, Mariscal, Zugasti, NextGear custodian of records.

DOCUMENTS: Receivable Report, Statement, Loan Documents, Guaranties.

**INTERROGATORY NO. 35:**

If after 2010 any vehicles in the inventory of Remate del Monte Auto Sales were sold, exchanged, given away, taken away" or otherwise disposed of in a manner that was in derogation of or otherwise adverse to your security interest in any of said vehicles, describe in detail the facts that occurred in connection with said disposal, IDENTIFY all individuals with knowledge of said facts, and IDENTIFY all documents which evidence, reflect or refer to said facts.

**RESPONSE TO INTERROGATORY NO. 35:**

There are eighteen (18)vehicles that have been "sold out of trust" – this means that the vehicles have been sold to other parties, transferred, conveyed, concealed or are otherwise unlocateable or unavailable to NextGear.   See SOT Report produced concurrently herewith.

WITNESSES: Rogers, NextGear custodian of records

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

8443.0037 / 843946.1                    39                    SACV13-907-DOC(JPR)
CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES
PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA
Page 87

Exhibit 5

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

1    DOCUMENTS:  Receivable Report, Statement, SOT Report.

2    **INTERROGATORY NO. 36:**

3         If you filed an income tax return, for the years from 2006 through 2012

4    IDENTIFY and DOCUMENT the years filed, and the name, address and tax

5    identification number used on each return.  Complete and return the enclosed Tax

6    Information Authorization.

7    **RESPONSE TO INTERROGATORY NO. 36:**

8         No response required.  Withdrawn by Government.

9    **INTERROGATORY NO. 37:**

10        IDENTIFY all individuals, other than counsel who assisted you in responding

11   to these interrogatories, specifying the answer with which they assisted.

12   **RESPONSE TO INTERROGATORY NO. 37:**

13   Rogers provided general assistance with the responses.

14   **INTERROGATORY NO. 38:**

15        IDENTIFY and DOCUMENT any additional information relevant to the

16   subject your identity and your interest in the Defendant Asset, to the extent such

17   information is not previously set out in your answers above.

18   **RESPONSE TO INTERROGATORY NO. 38:**

19        None.

20   **INTERROGATORY NO. 39:**

21        Sign and notarize the following attached documents:

22        A.    Authorization to Release Financial Records and Documents;

23        B.    Authorization to Release Customer Records and Documents;

24        C.    Authorization to Release State Tax documents; and

25        D.    Form 8821, Tax release. Sign the attached declaration under oath and

26              forward along with your responses. (Signature of counsel is not

27              acceptable.)

28

**RESPONSE TO INTERROGATORY NO. 39:**

No response required.  Withdrawn by Government.

DATED: January 8, 2014

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation

By: _____
TOM R. NORMANDIN
PAULA M. HARRELSON
Attorneys for NextGear Capital, Inc.

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

03/27/2007  07:02  909  CADE  PAGE  01/02

1  **PRENOVOST, NORMANDIN, BERGH & DAWE**
A Professional Corporation
2  TOM R. NORMANDIN, SBN 102265
tnormandin@pnbd.com
3  PAULA M. HARRELSON, SBN 167438
pharrelson@pnbd.com
4  2122 North Broadway, Suite 200
Santa Ana, California 92706-2614
5  Phone No.:   (714) 547-2444
Fax No.:     (714) 835-2889
6
Attorneys for NextGear Capital, Inc.
7

8  ## UNITED STATES DISTRICT COURT

9  ## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10

11  UNITED STATES OF AMERICA,  | Case No. SACV13-907-DOC(JPR)

12  Plaintiff,  | **VERIFICATION FOR NEXTGEAR RESPONSES TO INTERROGATORIES**

13  v.  |

14  ONE   2006   LAMBORGHINI  | The Hon. David O. Carter
MURCIELAGO,
15
Defendant.
16

17

18      I, TROY ROGERS, am not a party to this action.  I am an Account

19  Executive  Manager  for  NextGear  Capital,  Inc.  ("NextGear"),  a

20  Claimant/Defendant in this matter, and I am authorized to make this verification

21  on its behalf and make this verification for that purpose.  I have read NextGear's

22  Responses to the Government's Interrogatories and state that I am informed and

23  believe that the information contained therein is true.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

854684.1                          1                    SACV13-907-DOC(JPR)
VERIFICATION FOR NEXTGEAR RESPONSES TO INTERROGATORIES

03/27/2007  07:02   909                        CADE                           PAGE  02/02

1        I declare under penalty of perjury, under the laws of the United States of

2    America, that the foregoing is true and correct to the best of my knowledge.

3

4        Executed on January 8, 2014, at Anaheim____, California.

5

6                                       

7                      TROY ROGERS

8

9

10

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444 • Fax (714) 835-2311

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

854684.1                              2                    SACV13-907-DOC(JPR)

VERIFICATION FOR NEXTGEAR RESPONSES TO INTERROGATORIES

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 2122 North Broadway, Suite 200, Santa Ana, CA 92706-2614.

On January 8, 2014, I served true copies of the following document(s) described as **CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA** on the interested parties in this action as follows:

André Birotte, Jr.                          Attorneys for the UNITED STATES
United States Attorney                       OF AMERICA
Robert E. Dugdale
Assistant United States Attorney
Chief, Criminal Division
Steven R. Welk
Assistant United States Attorney
Chief, Asset Forfeiture Section
Frank D. Kortum
Assistant United States Attorney
Asset Forfeiture Section
United States Courthouse
312 North Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone: (213) 894-5710
Facsimile: (213) 894-7177
E-mail: frank.kortum@usdoj.gov

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Prenovost, Normandin, Bergh & Dawe's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Santa Ana, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 8, 2014, at Santa Ana, California.

Farida Baig

PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel (714) 547-2444 • Fax (714) 835-2889

8443.0037 / 843946.1

SACV13-907-DOC(JPR)

CLAIMANT NEXTGEAR CAPITAL, INC.'S RESPONSE TO FIRST SET OF INTERROGATORIES PROPOUNDED BY PLAINTIFF UNITED STATES OF AMERICA

Page 92

Exhibit 5

**PRENOVOST, NORMANDIN, BERGH & DAWE**
A Professional Corporation
2122 NORTH BROADWAY, SUITE 200
SANTA ANA, CALIFORNIA 92706-2614
Tel. (714) 547-2444 • Fax (714) 835-2889

1

## PROOF OF SERVICE

2   **STATE OF CALIFORNIA, COUNTY OF ORANGE**

3        At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 2122 North Broadway, Suite
4   200, Santa Ana, CA 92706-2614.

5        On May ___, 2015, I served true copies of the following document(s) described as **DECLARATION OF PAULA M. HARRELSON IN OPPOSITION TO PLAINTIFF'S**
6   **MOTION IN LIMINE** on the interested parties in this action as follows:

7        JOHN KUCERA                          Attorneys for the UNITED STATES OF
         Assistant United States Attorney     AMERICA
8        CHRISTINE SPROULE
         Assistant United States Attorney
9        LUCAS E. ROW
         Assistant United States Attorney
10       United States Courthouse
         312 North Spring Street, Suite 1400
11       Los Angeles, CA 90012
         Telephone:  (213) 894-5710
12       Facsimile:  (213) 894-7177
         E-mail:  frank.kortum@usdoj.gov
13

14       **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing,
15   following our ordinary business practices.  I am readily familiar with Prenovost, Normandin, Bergh & Dawe's practice for collecting and processing correspondence for mailing.  On the same day that
16   correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident
17   or employed in the county where the mailing occurred.  The envelope was placed in the mail at Santa Ana, California.

18       **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered
19   CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.
20

21       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22       Executed on May ___, 2015, at Santa Ana, California.

23

24

                                             _____
25                                           Farida Baig

26

27

28

1