STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
CHRISTEN A. SPROULE (Cal Bar. Pending)
Assistant United States Attorney
LUCAS E. ROWE (CBN: 298697)
Special Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2426
                  (213) 894-4493
    Facsimile: (213) 894-7177
    E-mail: Lucas.Rowe@usdoj.gov
             Christen.A.Sproule@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>ONE 2006 LAMBORGHINI MURCIELAGO,<br><br>          Defendant.<br>_____<br>NEXTGEAR CAPITAL, INC.,<br><br><br>          Claimant.<br>_____ | Case No. SACV-13-907-DOC(ANx)<br><br>[PROPOSED]<br>STATEMENT OF FACTS AND CONCLUSIONS OF LAW<br><br>TRIAL DATE: May 26, 2015<br>TIME: 10:00a.m.<br>COURTROOM: 9D<br>Honorable David O. Carter |

# I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 52 and Local Rule 52-1 of the Central District of California, the plaintiff United States of America (the "Government") files its proposed Findings of Facts and Conclusions of Law.

# II.    STATEMENT OF FACTS

1. On June 1, 2011, 17 separate cash deposits totaling $164,200.00 were deposited to a U.S. Bank National Association ("U.S. Bank") account owned by Lamborghini of Newport Beach ("LNB") in connection with the purchase of the defendant 2006 Lamborghini Murcielago bearing VIN ZHWBU26S9LA02025 ("the defendant asset").

2. These 17 deposits were conducted at 16 different U.S. Bank branches throughout southern California between 10:07 a.m. and 4:56 p.m. as set forth below:

|    | AMOUNT  | TIME     | BRANCH                  | LOCATION             |
|----|---------|----------|-------------------------|----------------------|
| 1  | $9,500  | 10:07 AM | Northridge              | Northridge, CA       |
| 2  | $9,500  | 11:09 AM | Burbank-Victory (Ralph's) | Burbank Victory, CA |
| 3  | $9,800  | 11:45 AM | Van Nuys                | Van Nuys, CA         |
| 4  | $9,400  | 12:00 PM | Montebello              | Montebello, CA       |
| 5  | $9,800  | 1:29 PM  | Downey Main             | Downey, CA           |
| 6  | $9,500  | 1:36 PM  | Downey-Florence Ave.    | Downey, CA           |
| 7  | $9,700  | 2:37 PM  | Norwalk                 | Norwalk, CA          |
| 8  | $9,800  | 3:18 PM  | Edinger (Vons)          | Huntington Beach, CA |
| 9  | $9,600  | 3:30 PM  | Huntington Beach-Edinger | Huntington Beach, CA |
| 10 | $9,800  | 3:56 PM  | Granada Hills (Ralph's) | Granada Hills, CA    |
| 11 | $9,700  | 4:12 PM  | Costa Mesa (Albertson's) | Costa Mesa, CA      |
| 12 | $9,800  | 4:39 PM  | Panorama City           | Panorama City, CA    |
| 13 | $9,800  | 4:56 PM  | Panorama City           | Panorama City, CA    |

| 14 | $9,500 | Illegible | Maywood | Maywood, CA |
| 15 | $9,500 | Illegible | Reseda (Albertson's) | Reseda, CA |
| 16 | $9,800 | Illegible | Mission Hills (Ralph's) | Mission Hills, CA |
| 17 | $9,700 | Illegible | Van Nuys | Van Nuys, CA |

3. Each of the 17 cash deposits was for an amount between $9,400.00 and $9,800.00, and the pattern of deposits was indicative of structuring in order to evade the transaction reporting requirements, in violation of 31 U.S.C. § 5324.

4. On July 15, 2011, LNB disclosed in an IRS Form 8300[1] that it had received the 17 cash deposits into its U.S. Bank account in connection with the sale of the defendant asset. The defendant asset is traceable to violations of 31 U.S.C. § 5324 and is subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2).

5. On or about January 16, 2012, the Irwindale Police Department impounded the defendant asset following a traffic stop after the responding officer determined that the vehicle's license plates were expired and that the registration did not match the license plate data. At the time of the traffic stop, the registered owner of the defendant asset was Shah Darshan.

6. On or about February 1, 2012, the defendant was seized from the Irwindale Police Department by United States Immigration and Customs Enforcement ("ICE") agents pursuant to a federal seizure warrant.

7. No funds under the control of used car dealership Remate del Monte ("Remate") were used to pay in whole or part for the defendant asset.

8. No employee or authorized representative of Remate purchased the defendant asset from LNB or any other party.

---

[1] A Form 8300 is a document used to report to the Internal Revenue Service the receipt of cash payments exceeding $10,000 in a single transaction or in two or more related transactions. Form 8300 is required pursuant to 26 U.S.C. § 6050I.

3

9. At no time was the defendant asset held in Remate's inventory for sale, lease, or rent.

10. At no time was the defendant asset financed by Claimant NextGear Capital, Inc. (the "Claimant").

11. The State of California Certificate of Title to the defendant asset was not issued in Remate's name until on or about February 4, 2012, after the defendant asset had been impounded by the Irwindale Police Department and seized for forfeiture by the United States.

### III. CONCLUSIONS OF LAW

**A. Venue and Jurisdiction**

12. This court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

13. Venue lies in this district pursuant to 28 U.S.C. § 1395(b).

**B. Standard of Proof**

14. The Government must prove by a preponderance of the evidence that the defendant asset is subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) as proceeds of a violation of 31 U.S.C. § 5324 (anti-structuring statute). *See* 18 U.S.C. § 983(c)(1).

15. Instruction 1.3 of the Ninth Circuit Manual of Model Jury Instructions defines preponderance of the evidence as "more probably true than not true." Black's Law Dictionary defines the standard as evidence that is "sufficient to incline a fair and impartial mind to one side of the issue rather than the other." *Black's Law Dictionary* 1201 (7th ed. 1999).

**C. Relevant Law**

16. The Government must prove by a preponderance of the evidence the following: first, that the person who deposited the funds, or caused them to be

4

deposited, knowingly structured a currency transaction; second, that the person who deposited the funds knew of the financial institution's legal obligation to report currency transactions in excess of $10,000; and third, the person who deposited the funds acted with the intent to evade this reporting requirement. 31 U.S.C. § 5313(a) and 5324(a); 31 C.F.R. § 103; *United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005); *see also United States v. Peterson*, 607 F.3d 975, 977 (4th Cir. 2010); *United States v. Pang*, 362 F.3d 1187, 1193-94 (9th Cir. 2004).

17.   Congress enacted the Currency and Foreign Transactions Reporting Act ("Bank Secrecy Act") in 1970, Pub.L. 91-2508, Tit. II, 84 Stat. 1118, in response to the increasing use of banks and other institutions as financial intermediaries by persons engaged in criminal activity. The Act imposes a variety of reporting requirements on individuals and institutions regarding foreign and domestic financial transactions. *See* 31 U.S.C. §§ 5311-5325. Federal law requires financial institutions to file a Currency Transaction report ("CTR") for any cash transaction exceeding $10,000. 31 U.S.C. § 5313. Structuring a transaction for the purpose of evading a financial institution's CTR reporting requirement is prohibited. 31 U.S.C. § 5324(a).

18.   Furthermore, "[a]ny property involved in a violation of section 5313 . . . and any property traceable to any such violation . . . may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code." 31 U.S.C. § 5317. Regulations set forth in 31 C.F.R. § 103.11(gg) define when "structuring" occurs:

> [A] person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under section 103.22 of this part. "In any manner" includes, but is not limited to, the

> breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

19.     The Court may consider circumstantial evidence, such as the number and pattern of transactions, in determining whether a violator acted with intent. *MacPherson*, 424 F.3d at 189 ("The law, however, recognizes that the *mens rea* elements of knowledge and intent can often be proved through circumstantial evidence") (citations omitted).  In *MacPherson*, the U.S. Court of Appeals for the Second Circuit affirmed a district court's inference that a defendant's willingness to sacrifice efficiency in depositing "a quarter-million dollars through multiple small transactions structured to ensure that no one [deposit] exceeded $10,000 amply supported a reasonable inference that [he] knew of and was intent on avoiding [the] reporting requirements."  424 F.3d at 191; *see also United States v. Van Allen*, 524 F.3d 814, 820 (7th Cir. 2008) (finding that "the sheer volume of the transactions almost compels the [guilty verdict] reached by the jury").

20.     Whether a report was filed is irrelevant to the determination of whether the statute was violated as, pursuant to 31 U.S.C. § 5324(a)(1), the mere "attempt to cause a financial institution to fail to file a report" is a criminal act. *See, e.g.*, *United States v. Gibbons,* 968 F.2d 639, 645 (8th Cir. 1992) ("[W]hether or not [the accused or claimant] actually fooled [the financial institution] has no bearing on the substantive violation under 31 U.S.C. § 5324(a)"); *Van Allen,* 524 F.3d at 825 (excluding evidence at trial on relevancy grounds that bank at which defendant had made structured deposits had filed a CTR).

**D.     The Defendant Asset Is Traceable to Structured Funds.**

21.     In this case, the violator caused 17 separate cash deposits to be made at 16 different U.S. Bank branches into the same LNB U.S. Bank account within a

seven-hour period on the same day for the purpose of purchasing the defendant asset.  No other reasonable explanation for this activity can be provided (nor has any been offered by the Claimant) other than knowledge of the reporting requirements and the intent to avoid them.  Accordingly, one or more violations of 31 U.S.C. § 5313(a) has occurred.

22.    The funds from the 17 structured cash deposits made into LNB's U.S. Bank account were used exclusively to purchase the defendant asset, and, therefore, the defendant asset is traceable to one or more violations of 31 U.S.C. § 5324, and is, therefore, subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2).

### E.    Remate's Innocent Owner Affirmative Defense[2]

23.    Innocent ownership is an affirmative defense governed by statute that must be established by a preponderance of the evidence by the claimant.  18 U.S.C. § 983(d)(1); *United States v. 144,774 Pounds of Blue King Crab*, 410 F.3d 1131, 1134 (9th Cir. 2005).

24.    As a threshold matter, under 18 U.S.C. § 983(d), a claimant must establish that she was an owner of the defendant property.  *United States v. $100,348 U.S. Currency*, 157 F. Supp. 2d 1110, 1117 (C.D. Cal. 2001), aff'd, 354 F.3d 1110 (9th Cir. 2004); *United States v. One 1990 Beechcraft*, 619 F.3d 1275, 1277 (11th Cir. 2010); *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 77 (2d Cir. 2002).  "Owner" is defined in 18 U.S.C. § 983(d) and specifically *excludes* a "nominee who exercises no dominion or control over the property."  *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1015 (8th Cir. 2003) (state law used to determine if claimants are owners, but state law is

---

[2] The Government has objected to Claimant's assertion of the affirmative defense of innocent ownership defense as Claimant did not properly and timely plead it in its Answer.  (Dkt. 50.)  The Government provides findings regarding the innocent owner defense in an abundance of caution.

overridden by section 983(d)(6) if the owner is a nominee who exercises no dominion and control over the property); *United States v. One 2005 Dodge Magnum*, 845 F. Supp. 2d 1361, 1370 n.4 (N.D. Ga. 2012) (even if she had standing, straw owner of vehicle could not be an innocent owner because person who does not exercise dominion or control is not an "owner" under § 983(d)(6)); *United States v. One 1998 Prevost Liberty Motor Home*, 952 F. Supp. 1180, 1204 (S.D. Tex. 1996) (corporation that was titled owner of motor home was not owner if defendant exercised exclusive dominion and control over the vehicle).

25. A claimant must then establish either that it had an interest in the defendant property before it was involved in the conduct triggering forfeiture (in which case the elements of the affirmative defense are dictated by § 983(d)(2)), or that its interest arose after the illegal conduct in question (in which case the elements are dictated by § 983(d)(3)).

26. Title 18, United States Code, Section 983(d)(3) defines the term "innocent owner" as someone who acquired an interest in the property after the conduct triggering forfeiture, and who, at the time he or she acquired his or her interest in the property, "(i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture."

**F.     Because Remate Never Owned the Defendant Asset, NextGear Is Not an Innocent Owner of the Defendant.**

27. Claimant asserts an interest in the defendant asset by virtue of its security agreement with Remate that purported to give Claimant a secured interest in Remate's inventory at the relevant time. (Claimant's Contentions of Fact and Law, Dkt. 52, at 3 ("Cl.'s Contentions").) As such, Claimant asserts an interest acquired after the acts giving rise to forfeiture (here, the structured payments) as

contemplated by 18 U.S.C. § 983(d)(3), (Cl.'s Contentions at 2), and, therefore, must prove that it is a bona fide purchaser or seller for value and did not know and was reasonably without cause to believe that the property was subject to forfeiture. Because of its alleged secured interest in Remate's inventory, Claimant's ownership interest in the defendant asset is derivative of Remate's—that is, if Remate never owned the defendant asset, the Claimant cannot be an innocent owner.

28. Remate was neither an owner nor a bona fide purchaser for value of the defendant asset. No funds under the control of Remate were used to pay in whole or part for the defendant asset. No employee or authorized representative of Remate purchased the defendant asset from LNB or any other party. At no time was the defendant asset held in Remate's inventory for sale, lease, or rent. At no time was the defendant asset financed by Claimant NextGear Capital, Inc. (the "Claimant"). Accordingly, because Remate never owned the defendant asset nor held it in its inventory, because it was, at best, a nominee of the property, the Claimant's security agreement never reached the defendant asset.

29. Moreover, at the time that Cecilia Saiden Mariscal obtained the Certificate of Title for the defendant asset on or about February 4, 2012, all relevant parties knew or should have known that the vehicle was subject to forfeiture because it had already been seized by the United States pursuant to a seizure warrant. *United States v. An Interest in the Real Prop. Located at 2101 Lincoln Blvd., Los Angeles, Cal.*, 729 F. Supp. 2d 1150, 1154-55 (C.D. Cal. 2010) (finding that Section 983(d)(3) prevents a claimant from prevailing on an innocent owner defense if the claimant knew (or should have known) that the government was already in the process of forfeiting the property, **regardless** of whether or not

9

1  the claimant know or should have known that criminal conduct even occurred or
2  that the property was connected to criminal conduct) (emphasis in original).
3      30.     Accordingly, the Claimant's innocent owner affirmative defense fails.

### IV. VERDICT

31. For the reasons set out above, the Court finds that the Government has proved by a preponderance of the evidence that the defendant asset, one 2006 Lamborghini Murcielago bearing VIN ZHWBU26S9LA02025, constitutes property involved in or traceable to one or more violations of 31 U.S.C. § 5324, and, therefore, is forfeitable pursuant to 31 U.S.C. § 5317(c)(2).

32. The Court also finds that the claimant, NextGear Capital, Inc. has not proved by a preponderance of the evidence that it is an innocent owner of the defendant asset pursuant to 18 U.S.C. § 983(d).

///
///

33. **THEREFORE**, the defendant asset is ordered forfeited to the United States pursuant to 31 U.S.C. § 5317(c)(2).

**IT IS SO ORDERED.**

DATED:_____    _____
HONORABLE DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Respectfully submitted:

STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

    /s/
CHRISTEN A. SPROULE
LUCAS E. ROWE
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
United States of America