STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
CHRISTEN A. SPROULE (Cal Bar. Pending)
Assistant United States Attorney
LUCAS E. ROWE (CBN: 298697)
Special Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-2426
                 (213) 894-4493
    Facsimile:  (213) 894-7177
    E-mail: Lucas.Rowe@usdoj.gov
            Christen.A.Sproule@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ONE 2006 LAMBORGHINI MURCIELAGO,<br><br>    Defendant.<br>_____<br>NEXTGEAR CAPITAL, INC.,<br><br>    Claimant.<br>_____ | Case No. SACV-13-907-DOC(ANx)<br><br><br><br>POST-TRIAL BRIEFING |

## I. INTRODUCTION

As ordered by the Court at the conclusion of trial on May 26, 2015, Plaintiff the United States of America (the "Government") submits this post-trial briefing.

The evidence that the defendant 2006 Lamborghini Murcielago bearing VIN ZHWBU26S9LA02025 ("the defendant asset") was acquired with funds traceable to multiple structured transactions, in violation of 31 U.S.C. § 5324, was undisputed and overwhelming. The Government clearly met its burden of establishing that the defendant asset is subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2).

Claimant NextGear Capital, Inc. (the "Claimant") failed to establish the elements of the affirmative defense of innocent ownership, as set out in 18 U.S.C. § 983(d), because it failed to show that Remate del Monte ("Remate") was anything more than a nominee that exercised no dominion or control over the property. First, nominees are specifically excluded from the definition of who is considered an "owner" within the meaning of § 983(d), and Claimant's purported security interest in the defendant asset is necessarily dependent on and derivative of Remate's ownership. Second, Claimant's lack of knowledge of the existence of the asset until after it had been seized by law enforcement makes it impossible for Claimant to demonstrate that it was reasonably without cause to believe that the defendant asset was subject to forfeiture. Claimant is thus neither an owner nor innocent.

The Government is entitled to a verdict of forfeiture.

2

## II. ARGUMENT

### A. The Defendant Asset Is Traceable to Structured Funds.

#### 1. *Relevant Law*

In order to prevail on a forfeiture claim made pursuant to 31 U.S.C. § 5313(a) and 5324(a), the Government must show: first, that the person who deposited the funds, or caused them to be deposited, knowingly structured a cash transaction; second, that the person who deposited the funds knew of the bank's legal obligation to report cash transactions in excess of $10,000; and third, the person who deposited the funds acted with the intent to evade this reporting requirement. The evidence establishing these elements was undisputed.

#### 2. *Evidence*

In May 2011, several men walked into Lamborghini of Newport Beach ("LNB") and attempted to purchase a car with more than $160,000 in currency. One of these men was either Eddie Escobedo or Luiz Perez (or Eddie Escobedo posing as Luiz Perez)[1], and it appears from the evidence adduced at trial that he purchased the Lamborghini in an attempt to launder drug proceeds. When the salesperson, David Ortiz, informed Escobedo or Perez that LNB could not accept U.S. currency, he was forced to find another way to pay for the defendant asset.

David Ortiz testified that he provided Perez/Escobedo with the wire transfer account number for LNB held at U.S. Bank National Association ("U.S. Bank"). Thereafter, on June 1, 2011, 17 separate cash deposits ranging between $9,400 and $9,800, and totaling $164,200, were deposited into LNB's U.S. Bank wire account. These 17 deposits were conducted at 16 different U.S. Bank branches throughout

---

[1] The LNB business records reflect that the purchaser was "Luiz Perez." However, the testimony of Cecilia Saiden Mariscal (partial owner of Remate) established that the defendant asset was owned, possessed, and controlled by Eddie Escobedo.

southern California between 10:07 a.m. and 4:56 p.m. Terry Holloway, the controller from LNB, described this as a "screwy deal"[2] and a "mess."

Perez/Escobedo's structured deposits of more than $160,000 at 16 branches over the course of seven hours is overwhelming evidence of knowledge of and intent to avoid the currency reporting requirement triggered by cash transactions exceeding $10,000 in a single day. There is simply no other credible explanation for this pattern of transactions (nor has any been suggested by Claimant).

### B. Because Remate Never Owned the Defendant Asset, NextGear Is Not an Innocent Owner of the Defendant.

#### 1. Relevant Law

Innocent ownership is an affirmative defense governed by statute that must be established by a preponderance of the evidence by the claimant. 18 U.S.C. § 983(d)(1). As a threshold matter, under 18 U.S.C. § 983(d), a claimant must establish that it was an owner of the defendant property within the meaning of both state and federal law. *See, e.g.*, *United States v. $100,348 U.S. Currency*, 157 F. Supp. 2d 1110, 1117 (C.D. Cal. 2001), aff'd, 354 F.3d 1110 (9th Cir. 2004). The definition of "owner" is set out at 18 U.S.C. § 983(d), and specifically *excludes* a "nominee who exercises no dominion or control over the property." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1015 (8th Cir. 2003).

Ownership under state and federal law are distinct questions. Even if a claimant can establish ownership under state law, that finding is overridden by a finding that claimant was a nominee who did not exercise dominion and control

---

[2] Nor was this the first such transaction at LNB. Ortiz testified that, in 2010, a similar group purchased a 2010 Lamborghini at LNB using the same dealer's license and seller's permit, and paying for the vehicle (which cost more than $500,000) through structured cash deposits into LNB's U.S. Bank wire account. Both Ortiz and Holloway testified that they had never seen a vehicle purchased in this manner during their time at the dealership.

over the asset.  *Id.*; *United States v. Carrell*, 252 F.3d 1193, 1204-05 (11th Cir. 2001) (innocent ownership fails if claimant titleholder was merely a straw owner).

Next, under 18 U.S.C. § 983(d)(3), Claimant, who alleges that it acquired an interest in the property after the conduct triggering forfeiture, must establish that, at the time it acquired the interest in the defendant asset, it "(i) was a bona fide purchaser or seller for value . . . ; and (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture."

        2.     *Evidence*

Claimant is a loan company who provided financing to Remate in exchange for a security interest in Remate's vehicle inventory and other assets.  But that interest is limited to property in which Remate had a legally cognizable interest, and that did not include the defendant asset.  Any interest of Claimant is necessarily derivative of Remate's—if Remate never owned the defendant asset, Claimant cannot be an innocent owner of a security interest in that asset.

At the relevant time, Remate was a used car dealership in El Monte, California that sold "middle class" vehicles like Hondas and Toyotas.  On occasion, Zugasti, the owner of Remate, would purchase cars directly from an auction for immediate delivery to a customer.  Griselda Vera, one of the two salespeople for Remate, and the salesperson responsible for updating the dealership's inventory, testified that, to her knowledge, all vehicles that were for sale were kept on the lot, and the defendant asset was neither on the lot nor part of the dealership's inventory.

Further, while Perez/Escobedo provided Remate's dealership license to LNB when he purchased the defendant asset, Ortiz testified that he did not really believe this person worked at Remate, nor did he investigate whether this person actually represented Remate.  Ortiz explained that individuals often submit licenses for

5

dealerships with which they are not truly affiliated to avoid paying substantial sales tax and registration fees, and, in fact, the purchaser here paid no sales tax or registration fee.  Moreover, Ms. Mariscal testified that the dealership licenses and other documents were posted on the wall in Remate's office, where anyone could access them, including people like Escobedo who "hung around" the lot.  Ortiz explained that the vehicle was delivered to a residential address in Los Angeles, not to Remate or any other car dealership.

Claimant completely failed to establish that Remate had any indicia of ownership of this vehicle:

- According to Mariscal, Escobedo immediately took ownership of the defendant asset and exclusively controlled and possessed it until it was seized.
- Mariscal stated that no funds under the control of Remate were used to pay in whole or part for the defendant asset.
- Claimant took pains to establish that Remate was a legitimate dealership, yet failed to explain why, if Remate had purchased the vehicle as Claimant argued, this legitimate dealer structured cash deposits to purchase the vehicle when it had "several bank accounts."
- No employee or authorized representative of Remate purchased the defendant asset from LNB or any other party.  Mariscal and Vera were both clear that neither Perez nor Escobedo were employed by Remate.
- At no time was the defendant asset for sale on Remate's lot or advertised on its website for sale.
- The defendant asset was not financed by Claimant.

6

On January 16, 2012, the Irwindale Police Department impounded the defendant asset following a traffic stop after the responding officer determined that the vehicle's license plates were expired and the registration did not match the license plate data. The defendant was seized from the Irwindale Police Department by United States Immigration and Customs Enforcement ("ICE") agents pursuant to a federal seizure warrant on February 1, 2012.

Mariscal testified that, after the seizure, Eddie Escobedo contacted her to get her help in attempting to retrieve the car from impound. He explained that he needed her to obtain the title for the car from LNB because he had used Remate's documents to purchase the car. She testified that she agreed to do so because she was afraid that if she did not, Escobedo could hurt her family. She obtained the title in February 2012 and held it, expecting Escobedo to pick it up from her, but he never did.

In March 2012, Mariscal had contact with Troy Rogers, NextGear's loan manager for Remate. She said that she was "worried about her house," because she thought that NextGear could seek recovery for Remate's debts from her personally. She agreed to provide the title to Rogers, but she said that she never told him that the vehicle had ever been in Remate's inventory. Rather, she said that the car was exclusively owned, possessed, and controlled by Eddie Escobedo. Nevertheless, she hoped Claimant could use the defendant asset to clear the debt against her. Moreover, Troy Rogers stood to increase his bonus if he cleared this account, so he willingly assisted Mariscal in facilitating this fraud.

By the time that Mariscal obtained the Certificate of Title for the defendant asset on or about February 4, 2012, all relevant parties knew that the vehicle was subject to forfeiture because it had already been seized by the United States pursuant to a seizure warrant. Thus, though Claimant attempts to make much of

7

the fact that it is currently in possession of the "pink slip," as it was obtained after notice that the vehicle was subject to forfeiture, the second prong of the innocent owner defense cannot be met.

Because Remate never owned the defendant asset nor held it in its inventory, it was, at best, a nominee of the property, and the Claimant's security agreement never reached the defendant asset. Claimant has no interest in the defendant asset.

### III. CONCLUSION

For the reasons set out above, the Court should find that the Government has proved by a preponderance of the evidence that the defendant asset, one 2006 Lamborghini Murcielago bearing VIN ZHWBU26S9LA02025, constitutes property involved in or traceable to one or more violations of 31 U.S.C. § 5324, and, therefore, is forfeitable pursuant to 31 U.S.C. § 5317(c)(2).

///
///

The Court should also find that the Claimant, NextGear Capital, Inc. has not proved by a preponderance of the evidence that it is an innocent owner of the defendant asset pursuant to 18 U.S.C. § 983(d).

Respectfully submitted:

STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

     /s/
CHRISTEN A. SPROULE
LUCAS E. ROWE
Assistant United States Attorneys
Asset Forfeiture Section

Attorneys for Plaintiff
United States of America