PRENOVOST, NORMANDIN, BERGH & DAWE
A Professional Corporation
TOM R. NORMANDIN, SBN 102265
tnormandin@pnbd.com
PAULA M. HARRELSON, SBN 167438
pharrelson@pnbd.com
2122 North Broadway, Suite 200
Santa Ana, California 92706-2614
Phone No.:  (714) 547-2444
Fax No.:    (714) 835-2889

Attorneys for NextGear Capital, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ONE 2006 LAMBORGHINI MURCIELAGO,<br><br>Defendant. | Case No. SACV13-907-DOC(JPR)<br><br>**CLAIMANT NEXTGEAR'S CLOSING ARGUMENT BRIEF**<br><br>Date:  May 26, 2015<br>Time:  10:00 a.m<br>Crtrm.: 9-D<br><br>The Hon. David O. Carter |

The sole claimant in this matter, NextGear Capital, Inc. ("NextGear"), submits the following Closing Argument Brief in support of its innocent owner defense to Plaintiff's forfeiture complaint.

I.  **FACTS ESTABLISHED AT TRIAL.**

The Vehicle, a 2006 Lamborghini Murcielago ("the Vehicle") was purchased by NCA International Services, Inc. doing business as Remate del Monte ("Remate") from auto dealer Lamborghini Newport Beach ("LNB") on June 2, 2011.

LNB timely submitted a Wholesale Report of Sale to the California Department of Motor Vehicles ("DMV") which identified Remate as the dealer to whom LNB had released its interest. (T.E. 112/140.) DMV records confirm that LNB sold the Vehicle to Remate on June 2, 2011. (T.E. 123-6/7.) LNB also filed Form 8300, Report of Cash Payment, identifying Remate as the purchaser. (T.E. 3.)

At the time the Vehicle was purchased, NextGear held a first-priority, continuing, perfected, security interest in all of Remate's assets, including inventory,

pursuant to a written Promissory Note and Security Agreement and filed UCC Financing Statements. (T.E. 106, 115 and 116.) As of April 20, 2012, Remate's outstanding balance on its flooring line amounted to $233,824.34. (T.E. 108-2.) Remate's debt to NextGear remains unpaid.

Cecilia Said Mariscal ("Mariscal") identified Remate's principal, Raul Ernesto Zugasti-Coria ("Zugasti") as driving the Vehicle. Griselda Vera ("Vera") observed the Vehicle at the Remate dealership. At the time the Vehicle was impounded by the Irwindale Police Department on January 15, 2012, the Vehicle had Remate's dealer plates affixed to it. (T.E. 1-C.) Zugasti appeared on the scene during the impound. (T.E. 117-6.)

Mariscal also testified that in exchange for a flooring line, Remate voluntarily gave NextGear a commercial lender's lien on all Remate's assets. She further explained that the purchase of the Vehicle "benefitted Remate" and that Remate "profited" from the purchase. Mariscal insisted, correctly, that Remate was the legal owner of the vehicle.

NextGear currently has actual possession of the original title (T.E. 111), and Troy Rogers ("Rogers") testified that NextGear had no knowledge that the Vehicle was subject to forfeiture when Mariscal delivered the Certificate of Title to him. Rogers also testified that such a practice of paying off one vehicle with a title to another vehicle was not uncommon at NextGear, and generally, in the auto flooring industry. Rogers' other unrebutted testimony was that if a dealer such as Remate went into default, a creditor such as NextGear would repossess all of that dealer's floor planned inventory, and if that inventory had been sold, the creditor would seek to recover the cash proceeds, the assets purchased with the proceeds, or the assets of the debtor generally, all according to the terms of the loan documents and the law in California governing secured transactions.

Mariscal and Vera testified that Eddie Escobedo ("Escobedo") and Luis Perez ("Perez") were associates of Zugasti. Mariscal testified that Escobedo was a partner and investor in Remate and that Escobedo and Perez purchased vehicles from time to time in Remate's name and that Escobedo sold vehicles from Remate's lot.

Cumulatively, this unrebutted testimony establishes a sufficient nexus among the Vehicle, Escobedo/Perez, and Remate for Remate to have an ownership interest in the Vehicle.

Mariscal testified that in January 2012, after Zugasti had abandoned Remate, Escobedo took approximately five (5) cars from the Remate lot that had been "floored" by NextGear, *i.e.*, purchased by Remate with NextGear's loan funds. NextGear held a valid and perfected security interest in the five (5) cars removed by Escobedo from Remate's lot.

## II. LEGAL ANALYSIS

### A. As a Secured Creditor, NextGear is an "owner" under 18 U.S.C. 983(d)(6).

The Government has stipulated that NextGear is a secured creditor of Remate with a security interest in all of Remate's assets. Accordingly, it is established that NextGear is an "owner" under section 983(d)(6).

A perfected security interest in a business' assets may take priority over the government's claim to assets through forfeiture. (*U.S. v. Four Hundred Sixty Three Thousand Four Hundred Ninety Seven Dollars and Seventy Two Cents ($463,497.72) in U.S. Currency From Best Bank Account* (E.D. Mich. 2011) 779 F.Supp.2d 696, 707.)

### B. The Government's Assertion That NextGear's Claim is "Derivative" Lacks Legal Authority.

The Government asserts NextGear's claim is "derivative" of Remate and since Remate allegedly exercised no dominion or control over the Vehicle, Remate is a mere nominee. There is no legal authority for the Government's assertion. By asserting that NextGear's claim is derivative of Remate's, the Government wrongly confuses an innocent owner's "Claim" under 18 U.S.C. §983(d), with the determination of a secured lender's property interest in collateral. Whether Remate is an "owner" under Section 983(d) is immaterial to the analysis of NextGear's secured party claim and no court has adopted such an analysis.

In *U.S. v Dreier* (U.S.D.C. NY 2013) 952 F Supp. 2d 582, 590, a party argued that a secured creditor never obtained a security interest in specified goods because the

security agreement was tainted by the owner's fraud. The court declined to invalidate the security agreement because the agreement itself was not a forgery and was validly signed by the convicted swindler owner.

In *U.S. v Premises Known as 7725 Unity Avenue North, Brooklyn Park, Minn* (8th Cir. 2002) 294 F. 3d 954, 958, a secured creditor was granted standing even though neither of the property owners could prove any money paid for the property came from legitimate sources or that the wife was a innocent spouse.

Moreover, an adoption of the Government's assertion would eviscerate the ability of secured creditors to prevail on an innocent owner defense since, in most cases, it is the property owner/obligor/mortgagor who is involved in the unlawful activities. If a secured creditor's claim were "derivative," then most secured lenders would be painted with the same bad-conduct brush which gave rise to the seizure. Such cannot be the intent of the forfeiture laws.

No legal citation stands for the "derivative" proposition advanced by the Government. It is commercial law that determines whether NextGear is an innocent owner. (See *U.S. One 1990 Beechcraft*,(11th Cir. 2010) 619 F. 3d 1275, 1277 (CAFRA requires that "the <u>claimant</u> be more than 'a nominee who exercises no dominion or control over the property,' *id.* § 983(d)(6)(B)(iii).") (emphasis added).)

Remate is not the claimant.[1] NextGear is the claimant. The Government's demand that NextGear's interest be examined by whether or not Remate is an owner of the property collapses upon itself:

> "Even those who purchase assets with money derived from
> drug transactions can be innocent owners, so long as they do
> not know the illegal source of the funds. (*United States v. 92
> Buena Vista Ave.*, 507 U.S. 111, ——, 113 S.Ct. 1126, 1134,

---

[1] Remate is not a nominee in any event. It had title to the Vehicle, Zugasti was seen driving it, it was driven onto the Remate lot while Zugasti was present, and Zugasti presented himself to the police when the Vehicle was being towed. There is no evidence of anyone other than Remate's principal, Zugasti, having custody or control of the Vehicle.

122 L.Ed.2d 469 (1993) (Stevens, J., plurality opinion).) Indeed, it is only after an owner is shown to have purchased with illegitimate assets that the innocent owner defense even becomes an issue. Under the instruction, however, the innocent owner exception in section 881(a)(6) would only permit a claimant to preserve from forfeiture its interest in a piece of property if the claimant could first prove that the interest was not defendant to forfeiture, *i.e.*, that it was not purchased with drug proceeds." (*U.S. v. Real Property Located at 20832 Big Rock Drive, Malibu, Cal. 902655* (9th Cir. 1995) 51 F.3d 1402, 1409-10.)

The unrefuted evidence establishes that NextGear is an innocent owner.

**C. The preponderance of the evidence establishes NextGear as an innocent owner.**

With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and (ii) did not know and was reasonably without cause to believe that the property was defendant to forfeiture. (18 U.S.C. § 983(d).)

Courts have routinely held that whether a claimant is a bona fide purchaser ("BFP") in a criminal forfeiture case is appropriately determined by reference to state law. (*Pacheco v. Serendensky* (2d Cir. 2004) 393 F.3d 348, 353; see also *U.S. v Drier* (U.S.D.C. NY 2013) 952 F. Supp. 2d 582.). Likewise in a civil forfeiture case, ownership interests, and thus, whether one is a BFP, are also defined by the law of the State in which the interest arose (*U.S. v. One Lincoln Navigator 1998* (8th Cir. 2003) 328 F.3d 1011, 1013; and, *Butner v U.S.* (1979) 440 U.S. 48, 55 [property interests are created and defined by state law].)

In *U.S. v Huntington National Bank* (6th Cir. 2012) 682 F.3d 429, applying federal law in a criminal forfeiture case, a secured lender asserted a claim to seized

property as a BFP under 21 U.S.C. § 853(n)(6)(B). "[P]roperty cannot be forfeited if 'the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was defendant to forfeiture under this section." (*Huntington Nat. Bank* 682 F.3d 429, 433.) The bank argued it was a BFP because it had purchased a valid security interest in all of the defendant's assets by extending a line of credit and loans. The court agreed and held that one who takes a security interest in property in exchange for antecedent debt can be a BFP of that property interest. (*Id.*, at p. 434.) The court reasoned that, although federal law applied, "because the BFP exception is derived essentially from hornbook commercial law, it is appropriate for this court to look to state commercial law as persuasive guidance to help discern what Congress intended when it used the term "bona fide purchaser for value" in the federal statute. [citation omitted.]" (*Id.*, at pp. 435-36.)

Notably, the *Huntington* court, in considering whether a security interest in an antecedent debt can be a BFP, found the decision in a Michigan case involving an auto dealer flooring agreement, like the security agreement at issue in the instant case, to be persuasive in determining the secured creditor's BFP status, "*Genesee Merchs. Bank & Trust Co. v. Tucker Motor Sales,* 143 Mich.App. 339, 372 N.W.2d 546, 548–49 (1985) (holding that under Michigan law, [t]he term purchaser includes not only those who take by sale but also those who, like the bank here, take by lien and that the antecedent indebtedness [through a financing arrangement] of [the defaulted automobile dealership] to the bank was value sufficient to render the bank a good faith purchaser *for value* )." (*U.S. v. Huntington Nat. Bank* (6th Cir. 2012) 682 F.3d 429, 434 (internal quotes omitted).)

In accord is the secured creditor in *U.S. v Dupree* (2012) 919 F. Supp. 2d 254 (vacated in non pertinent part by *U.S. v Watts* (2d Cir 2015) ---F. 3d---). Amalgamated held a written Security Agreement that included a grant of "a security interest in, all of the right, title and interest of the [debtor] in, to and under the Collateral." "Collateral" was defined as including "all personal property of every kind and nature, wherever located, whether now owned or hereafter acquired or arising, and all Proceeds and

products thereof, including ... Accounts Receivable, ... Deposit Accounts .... and ... other property owned or held by or on behalf of [debtor]...." (*Dupree* at p. 277-278.) In *Dupree*, the bank accounts at issue were never the direct recipients of the Amalgamated loan proceeds. Nonetheless, the broadly worded security agreement established enough facts to state a claim for relief. *Dupree* at p. 279. *Dupree* court, relying on New York law, held that "Amalgamated's claimed interest, if proven by a preponderance of the evidence, would establish the bank's superior legal interest in the Defendant Funds on the basis of priority of ownership over the forfeited property at the time of the offense." *Dupree* at p. 282.

### D. The Security Agreement, UCC Financing Statements and the Lamborghini Sale Documents establish NextGear as a BFP.

NextGear had provided flooring financing to Remate since 2005. (T.E. 114.) NextGear's security interest was perfected when Remate's initial flooring line was issued. (T.E. 115.) It remains perfected to date. NextGear's security interest extends to "a continuing security interest in all of [Remate's] assets and properties, wherever located, including without limitation, all Equipment of any kind or nature, all vehicles, vehicle parts, all inventory now owned or hereafter acquired, without limitation...." This would include the Vehicle from the moment Remate acquired an interest in it.

Under California law a security agreement "may create or provide for a security interest in after-acquired collateral" such as the Vehicle. (Cal. *Comm. Code* § 9204(a) ["A security interest in after-acquired property is not merely an "equitable" interest; no further action by the secured party--such as a supplemental agreement covering the new collateral--is required. This section adopts the principle of a "continuing general lien" or "floating lien."] Official Comment to Cal. U. Com. Code, § 9204.)

Accordingly, NextGear's security interest had previously attached to the Vehicle when the Vehicle was seized because <u>Remate acquired an interest when it was purchased</u>. Attachment occurs when each of three events has taken place: (1) the debtor has signed a security agreement describing the collateral, (2) the secured party has given value, and (3) the debtor has rights in the collateral. (*Bank of the West v.*

8443.0037 / 1152860.1    7    SACV13-907-DOC(JPR)
CLAIMANT'S CLOSING ARGUMENT BRIEF

*Commercial Credit Financial Services, Inc.* (9th Cir. 1988) 852 F.2d 1162, 1166; *In re Coupon Clearing Service, Inc.* (9th Cir. 1997) 113 F. 3d 1091, 1102.)

It is critical to note that current California statutory law expands the scope of the third prong to circumstances where a "debtor has rights in the collateral <u>or the power to transfer rights in the collateral to a secured party</u>." (Cal. Comm. Code, § 9203(b)(2) (emphasis added).) Thus it clear that Remate had rights in the Vehicles for "[u]nder the U.C.C., it is even permissible for a debtor who does not own the collateral to use it for security. [citations omitted.]" (*In re Terminal Moving and Storage Co., Inc.* (8th Cir. 1980) 631 F.2d 547, 551.)

The evidence established that Remate, being the owner of the Vehicle pursuant to the written purchase contract and the Wholesale Report of Sale filed with the DMV had sufficient rights in the Vehicle to transfer those rights to a secured party. The clear evidence showed that the Remate's principal acknowledged Remate ownership when Mariscal delivered the Certificate Title to NextGear for payment of Remate's debt. Other evidence at trial further support Remate's ownership from the time Remate purchased the Vehicle from LNB. Mariscal, Terry Holloway from LNB, and David Ortiz formerly of LNB, all testified that it was common for a dealer not to transfer a certificate of title when the sale was between dealers. Uniformly, they testified that the title was not submitted to the DMV until it reached the retail consumer. The sale to Remate was effective and Remate had the authority to transfer its interest to a creditor, or anyone else, as of June 2, 2011.

E. **The Certificate of Title, currently held by NextGear, and the DMV's Wholesale Report of Sale establish a *prima facie* case that Remate Owned the Vehicle as of June 2, 2011 and NextGear's security interest attached at that time.**

Even if one were to ignore the sale documents, the official DMV records and dealer plates on the Vehicle, Remate had the power to transfer a security interest in the Vehicle to NextGear:

> "A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have

been delivered under a transaction of purchase the purchaser has such power even though (a) The transferor was deceived as to the identity of the purchaser, . . ." (Cal. *Comm. Code* §2403(1).)

"Section 2403 applies to the sale of automobiles. [citations.]" (*Suburban Motors, Inc. v. State Farm Mut. Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354, 1359.) Moreover, "California is a 'full title' state. This means that a buyer who has no actual knowledge of a defect in title is entitled to rely upon the information reflected on the registration and ownership certificates, without further inquiry. [citations.]" (*Louis & Diederich, Inc. v. Cambridge European Imports, Inc.* (1987) 189 Cal.App.3d 1574, 1587.) A "pink slip" (certificate of title) and registration constitute *prima facie* evidence of ownership. (*Louis & Diederich, Inc. v. Cambridge European.* at p. 1589.)

California law relating to the establishment of property interests in goods is broader than 18 U.S.C. §983. It is meant to protect creditors and *bona fide* purchasers of goods sold by merchants. Even fraud cannot defeat a transfer of title. "Where a merchant is entrusted with goods 'for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like,' he can pass clear title even where the sale is accomplished by fraud. (Com. Code § 2403, subd. (2).)" (*Louis & Diederich, Inc. v. Cambridge European Imports, Inc.* at p. 1588.) There is no theft in the instant case. No victim deprived of money or property by theft or felonious taking. Accordingly, title lawfully passed to Remate when LNB sold it on June 2, 2011.

Zugasti, a principal of Remate and the only driver of the Vehicle identified at trial, was aware that the Vehicle was purchased in Remate's name. Other vehicles had previously been purchased in Remate's name by Perez and Escobedo. There were Remate dealer plates on the Vehicle when it was impounded, and Zugasti presented himself to the police when the vehicle was impounded. Mariscal, winding up the affairs of Remate, picked up the title. She did not decline to pick it up, deny it was Remate's inventory, or do anything do disassociate Remate from it. Mariscal identified the Vehicle as a dealer asset, in fact inventory, when she delivered the title and the Report of Sale to NextGear's representative Troy Rogers.

In the *Louis* case cited above, the Respondent argued that the dealer "Cambridge," under a court order to sell a specific vehicle and transfer the proceeds to Respondent, had no ownership interest to pledge as security. The *Louis* court found this argument to have no merit because the original seller had released its interest completely by delivering the car and the endorsed and dated pink slip to Cambridge in August and Cambridge was not required to make any DMV filing until it transferred ownership to another. In the interim, Cambridge owned the car. (*Louis & Diederich, Inc. v. Cambridge European Imports, Inc.* (1987) 189 Cal.App.3d 1574, 1586.) Accordingly, Remate had sufficient interest in the Vehicle for a security interest to attach. NextGear gave value by its line of credit as set forth in its Security Agreement (T.E. 106) and is therefore a BFP.

NextGear did not know and was reasonably without cause to believe that the Vehicle was subject to forfeiture. To find against NextGear, a legitimate business engaged in legitimate business operations, would impose uncertainty into commercial security interests. By seizing the Vehicle without regard to the commercial interests of NextGear, Plaintiff triggered a wholesale confiscation of NextGear's collateral. CAFRA must be construed in a manner that protects such institutions from unwarranted or disproportionate forfeitures. (*U.S. v. Real Property Located at 3234 Washington Ave. North, Minneapolis, Minn.* (8th Cir. 2007) 480 F.3d 841, 846.) Indeed, "[f]orfeitures are not favored; they should be enforced only when within both the letter and the spirit of the law. [citations.]" (*U.S. v. 434 Main Street, Tewksbury, Mass.* (D. Mass. 2013) 961 F.Supp.2d 298, 317.)

Unless the Vehicle is released to NextGear, the letter and spirit of CAFRA will be violated. Accordingly, the court should find that NextGear has proven that it is an innocent owner whose interest in the Vehicle shall not be forfeited.

DATED: May 29, 2015          PRENOVOST, NORMANDIN, BERGH

                             By:     /s/ TOM R. NORMANDIN

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 2122 North Broadway, Suite 200, Santa Ana, CA 92706-2614.

On May 29, 2015, I served true copies of the following document(s) described as **CLAIMANT NEXTGEAR'S CLOSING ARGUMENT** on the interested parties in this action as follows:

JOHN KUCERA
Assistant United States Attorney
CHRISTINE SPROULE
Assistant United States Attorney
LUCAS E. ROW
Assistant United States Attorney
United States Courthouse
312 North Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone: (213) 894-5710
Facsimile: (213) 894-7177
E-mail: frank.kortum@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Prenovost, Normandin, Bergh & Dawe's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Santa Ana, California.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 29, 2015, at Santa Ana, California.

Farida Baig