1

1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3      **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4              **- - - - - - -**

5   UNITED STATES OF AMERICA,        )
                                      )      **CERTIFIED**
6           Plaintiff,               )
                                      )
7       vs.                          ) No. 8:13-CV-0907-DOC
                                      )      Item 30, Volume II
8   ONE 2006 LAMBORGHINI MURCIELAGO, )
                                      )
9           Defendant.               )
    _____)

10

11

12

13      **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

14              **Court Trial**

15          **Santa Ana, California**

16        **Tuesday, May 26, 2015**

17

18

19

20

21

22   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
23   United States District Court
     411 West 4th Street, Room 1-053
24   Santa Ana, California 92701
     (714) 558-8141

25

1   **APPEARANCES OF COUNSEL:**

2

    FOR PLAINTIFF UNITED STATES OF AMERICA:
3

4        DEPARTMENT OF JUSTICE
         Office of United States Attorney
         Asset Forfeiture Section
5        BY:  Christen Sproule
             Assistant United States Attorney
6        312 North Spring Street, 14th Floor
         Los Angeles, California 90012
7        213-894-4493
         Christen.A.Sproule@usdoj.gov
8
         DEPARTMENT OF JUSTICE
9        Office of United States Attorney
         Asset Forfeiture Section
10       BY:  Lucas E. Rowe
             Special Assistant United States Attorney
11       312 North Spring Street, 14th Floor
         Los Angeles, California 90012
12       213-894-2426
         lucas.rowe@usdoj.gov
13

14  FOR DEFENDANT ONE 2006 LAMBORGHINI MURCIELAGO:

15       PRENOVOST NORMANDIN BERGH & DAWE
         BY:  Paula M. Harrelson
16           Attorney at Law
         2122 N Broadway, Suite 200
17       Santa Ana, California 92706
         714-547-2444
18       pharrelson@pnbd.com

19
         PRENOVOST NORMANDIN BERGH & DAWE
20       BY:  Tom R. Normandin
             Attorney at Law
21       2122 North Broadway, Suite 200
         Santa Ana, California 92706
22       714-547-2444
         tnormandin@pnbd.com
23

24

25

**I N D E X**

Court Trial - Volume II

PROCEEDINGS                                          PAGE

Court Trial                                            4
ROGERS, Troy                                           4

**EXHIBITS**

EXHIBIT NO./DESCRIPTION        IDENTIFICATION      IN EVIDENCE

 105      Personal guarantee                          26

 111      Certificate of Title                        11

 112      Original wholesale                          12
          report of sale

**WITNESSES**

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| ROGERS, Troy | | | | |
| By Mr. Normandin | 4 | | 26 | |
| By Mr. Rowe | | 16 | | 28 |

| | | |
|---|---|---|
| | 1 | SANTA ANA, CALIFORNIA, TUESDAY, MAY 26, 2015 |
| | 2 | Item 30, Volume II |
| | 3 | (12:11 p.m.) |
| | 4 | *(Live court reporter switch at 12:11 p.m.)* |
| | 5 | *(Previous proceedings reported by Debbie* |
| | 6 | *Hino-Spaan in Volume I.)* |
| | 7 | **TROY ROGERS, CALLED BY THE DEFENSE, PREVIOUSLY SWORN** |
| | 8 | **CURRENTLY ON THE STAND** |
| 12:16 | 9 | **DIRECT EXAMINATION (Continued)** |
| 12:17 | 10 | BY MR. NORMANDIN: |
| 12:17 | 11 | Q.   When NextGear sustains a loss or is not paid for the |
| | 12 | vehicles that it floored, what steps does it take to recover |
| | 13 | to pay those floored vehicles off? |
| 12:17 | 14 | A.   What we, um -- we meet with the dealer and try to get |
| | 15 | them to, of course, pay us back.  And if the -- one of the |
| | 16 | things -- taking inventory -- if their cash is tied up in |
| | 17 | inventory, which was the case here, they give us inventory |
| | 18 | to apply. |
| 12:17 | 19 | We also had a box truck that they had on the -- the |
| | 20 | note that, um, they gave us for collateral.  That was sold |
| | 21 | at the auction.  I don't think it was ever floored. |
| 12:17 | 22 | Q.   Let's say hypothetically Remate doesn't pay for a |
| | 23 | vehicle but Remate has sold that vehicle.  Okay?  You're |
| | 24 | holding the title for that floored vehicle, correct? |
| 12:18 | 25 | A.   That is correct. |

8:13-CV-0907-DOC - 5/26/2015 - Item 30, Volume II

5

| | | |
|---|---|---|
| 12:18 | 1 | Q.   If a consumer makes demand on NextGear for a return of |
| | 2 | that title, do you give the title to the consumer? |
| 12:18 | 3 | A.   We -- we -- yes, we do.  If -- we try to negotiate, if |
| | 4 | it was with a finance company, if they financed it; but, |
| | 5 | generally, if it was paid -- if it was purchased with cash |
| | 6 | and they can show us that they purchased it, uh, it was a |
| | 7 | good-faith transaction or a "normal course of business" |
| | 8 | transaction, we will surrender that title. |
| 12:18 | 9 | Q.   If Remate sold your floored vehicles to someone else |
| | 10 | and got cash for your vehicles, would you claim a security |
| | 11 | interest in that cash, that hard money. |
| 12:18 | 12 | A.   We would claim an interest in that cash and whatever he |
| | 13 | used to purchase with that cash. |
| 12:18 | 14 | Q.   So not only the cash, whatever he used to purchase. |
| 12:18 | 15 | A.   That is correct. |
| 12:18 | 16 | Q.   So hypothetically your floored vehicles are sold for |
| | 17 | cash.  If you were luckily (sic) enough, you would get |
| | 18 | the -- claim the interest in the cash. |
| 12:19 | 19 | A.   That is correct. |
| 12:19 | 20 | Q.   And if the dealer had taken that cash and bought a |
| | 21 | house or a Lamborghini, would you go after those two assets? |
| 12:19 | 22 | A.   Yes, we would. |
| 12:19 | 23 | Q.   Based on the language in your demand promissory note? |
| 12:19 | 24 | A.   That is correct. |
| 12:19 | 25 | MR. NORMANDIN:  Would this be a convenient time |

8:13-CV-0907-DOC - 5/26/2015 - Item 30, Volume II

6

|       |    |                                                                 |
|-------|----|-----------------------------------------------------------------|
|       | 1  | for a lunch break, Your Honor?                                  |
| 12:19 | 2  | THE COURT:  You're not having a lunch, Counsel.                 |
| 12:19 | 3  | Please, continue.                                               |
| 12:19 | 4  | MR. NORMANDIN:  Okay.  I will.                                   |
| 12:19 | 5  | BY MR. NORMANDIN:                                                |
| 12:19 | 6  | Q.   Up in -- there came a point in time when Remate was not    |
|       | 7  | paying its debts as they became due; is that correct?           |
| 12:20 | 8  | A.   That is correct.                                           |
| 12:20 | 9  | Q.   When was that?                                             |
| 12:20 | 10 | A.   It was, I believe, right around February of 2012.          |
| 12:20 | 11 | Q.   So up until that time, did you know -- have any            |
|       | 12 | financial issues with Remate?                                   |
| 12:20 | 13 | A.   No, sir.                                                   |
| 12:20 | 14 | THE COURT:  Can you show me another transaction                 |
|       | 15 | besides these two Lamborghinis -- Counsel, one of you might     |
|       | 16 | ask for the Court where he just obtained the pink slip, if      |
|       | 17 | you will, under these same circumstances.  Would you ask him    |
|       | 18 | that?                                                           |
| 12:20 | 19 | He may have a habit and pattern.  I'd like him to               |
|       | 20 | name those vehicles with Remate specifically.                  |
| 12:20 | 21 | BY MR. NORMANDIN:                                                |
| 12:20 | 22 | Q.   Were there instances in the past where Remate would       |
|       | 23 | give you a pink slip, a certificate of title for a vehicle      |
|       | 24 | that was not floored by DSC in order for Remate to repay a      |
|       | 25 | debt to DSC?                                                    |

DEBBIE GALE, U.S. COURT REPORTER

8:13-CV-0907-DOC - 5/26/2015 - Item 30, Volume II

7

| | | |
|---|---|---|
| 12:21 | 1 | THE COURT:  And I'm going to want to see the |
| | 2 | documentation concerning this, Counsel. |
| 12:21 | 3 | THE WITNESS:  There were cases where he would |
| | 4 | floor a vehicle and -- |
| 12:21 | 5 | THE COURT:  Excuse me. |
| 12:21 | 6 | Answer the question.  Answer the question.  Were |
| | 7 | you given a pink slip? |
| 12:21 | 8 | THE WITNESS:  He would send them in to corporate |
| | 9 | and use the funds from that to pay off a sold vehicle. |
| 12:21 | 10 | THE COURT:  Show me the documentation. |
| 12:21 | 11 | THE WITNESS:  I don't have the document here. |
| 12:21 | 12 | THE COURT:  Where is it?  Go get it. |
| 12:21 | 13 | MR. NORMANDIN:  We would have to prepare a report |
| | 14 | to -- reflecting that? |
| 12:21 | 15 | THE WITNESS:  Yes. |
| 12:21 | 16 | THE COURT:  Document?  We ought to be able to get |
| | 17 | that quickly.  I'd like to see if this is a habit and |
| | 18 | custom.  That would be a strong piece of evidence in your |
| | 19 | favor; if not, it's not as strong. |
| 12:21 | 20 | MR. NORMANDIN:  Thank you. |
| 12:21 | 21 | THE COURT:  In other words, in summary, what the |
| | 22 | gentleman's told me is that this is something that's rather |
| | 23 | common; that he walks in, he gets a pink slip, he's got a |
| | 24 | document, and, therefore, he expects to get money back on |
| | 25 | the sale. |

| 12:22 | 1 | I just want to know with Remate another instance |
| | 2 | of that. |
| 12:22 | 3 | MR. NORMANDIN:  And, Your Honor -- |
| 12:22 | 4 | THE COURT:  I want the documentation to it. |
| 12:22 | 5 | MR. NORMANDIN:  We're working on that right now. |
| 12:22 | 6 | THE COURT:  Okay. |
| 12:22 | 7 | BY MR. NORMANDIN: |
| 12:22 | 8 | Q.   In your business, generally, is it usual for a dealer |
| | 9 | to walk in with one title that wasn't floored by NextGear to |
| | 10 | pay off another vehicle?  Is that an usual transaction? |
| 12:22 | 11 | A.   It is not usual.  We call 'em a "work around," and |
| | 12 | the -- to where it's exactly what it is.  They will give us |
| | 13 | a title and say use those proceeds to pay off something else |
| | 14 | that had been sold. |
| 12:22 | 15 | And there were times that Raul would come to the office |
| | 16 | and give us those titles and say use the money for -- you |
| | 17 | know, to pay off other vehicles.  And now, as a company, |
| | 18 | though, in 2000 -- the end of 2009, we stopped our offices |
| | 19 | and became a field-based employee *(sic)*.  And they had the |
| | 20 | option of sending those up to corporate.  So he would send |
| | 21 | those titles to corporate. |
| 12:23 | 22 | Q.   We'll pull those records. |
| 12:23 | 23 | But you wouldn't -- NextGear wouldn't sell the titles, |
| | 24 | would they?  They would hold the titles, in our hypothetical |
| | 25 | we're talking about, right? |

| | | |
|---|---|---|
| 12:23 | 1 | A.   Well, at that time they would floor the vehicle.  You |
| | 2 | know, they would take it and then it would appear on a |
| | 3 | report that it was floored, and give -- and use that money |
| | 4 | to pay off something else. |
| 12:23 | 5 |     In a case of a Lamborghini -- |
| 12:23 | 6 |         MR. ROWE:  Your Honor -- |
| 12:23 | 7 |         THE WITNESS:  -- had they continued -- |
| 12:23 | 8 |         MR. ROWE:  Your Honor, I'm sorry.  I'm not |
| | 9 | following what part of the story we're at right now. |
| | 10 | Flooring what vehicle?  For what purpose? |
| 12:23 | 11 |         THE WITNESS:  A title that the dealer gave us. |
| 12:23 | 12 |         If a -- had -- had Remate not been locked out, you |
| | 13 | know, had things still been going, he could have given the |
| | 14 | title, like they had; that we would've floored that |
| | 15 | Lamborghini; it would've showed up on the report, and we |
| | 16 | would have paid off, you know, $165,000 worth of cars. |
| 12:24 | 17 |         THE COURT:  Counsel, my curiosity for both of you |
| | 18 | is that, if this was discontinued in 2009, why in 2011 is he |
| | 19 | able to just walk in and get a pink slip?  In other words, |
| | 20 | these were supposed to be going up to corporate. |
| 12:24 | 21 |         MR. NORMANDIN:  Maybe we should ask that. |
| 12:24 | 22 | BY MR. NORMANDIN: |
| 12:24 | 23 | Q.   There came a point in time when you received the |
| | 24 | certificate of title, the original that I'm holding in my |
| | 25 | hand that we've marked as Exhibit 111.  You received this |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | from somebody -- Ms. Mariscal, right?                        |
| 12:24 | 2  | A.    I did receive that from her.                           |
| 12:24 | 3  | Q.    What were the circumstances upon which you received    |
|       | 4  | this?                                                         |
| 12:24 | 5  | THE COURT:  And what was the time period? -- just            |
|       | 6  | to be sure.                                                  |
| 12:24 | 7  | THE WITNESS:  It was March.                                  |
| 12:24 | 8  | BY MR. NORMANDIN:                                            |
| 12:24 | 9  | Q.    Of 2012?                                               |
| 12:24 | 10 | A.    March of 2012.  I don't remember exact date.  But she  |
|       | 11 | did contact me and ask me to meet her and pick up the title. |
|       | 12 | I picked up the title and got with -- you know, sent that to |
|       | 13 | my legal counsel at corporate.  And they advised if -- uh,   |
|       | 14 | for us to use that title, there was another form that, uh,   |
|       | 15 | Cecilia would have to sign.                                  |
| 12:25 | 16 | THE COURT:  So, in other words, this did                     |
|       | 17 | eventually go up to corporate.  It just wasn't sent directly |
|       | 18 | by Raul to corporate; is that correct?                       |
| 12:25 | 19 | THE WITNESS:  That is correct.                               |
| 12:25 | 20 | THE COURT:  You were the intermediary that sent              |
|       | 21 | this to corporate?                                           |
| 12:25 | 22 | THE WITNESS:  That is correct.                               |
| 12:25 | 23 | THE COURT:  Because NextGear had stopped,                    |
|       | 24 | according to the testimony, in 2009 -- so that I understand  |
|       | 25 | this -- persons like yourself, just picking up pink slips,   |

|          |    |                                                                        |
|----------|----|------------------------------------------------------------------------|
|          | 1  | had to go up to corporate, right?                                      |
| 12:25    | 2  | THE WITNESS:  Yes.  They had -- we had offices in                      |
|          | 3  | 2009.  When they closed, um, they -- we had a centralized              |
|          | 4  | record.  I could either pick up the titles or he could send           |
|          | 5  | them directly to corporate.                                           |
| 12:25    | 6  | THE COURT:  Thank you.                                                 |
| 12:25    | 7  | Counsel.                                                               |
| 12:25    | 8  | MR. NORMANDIN:  I move the original certificate of                     |
|          | 9  | title, 111, into evidence.                                            |
| 12:26    | 10 | THE COURT:  Received.                                                  |
| 12:26    | 11 | *(Exhibit No. 111 received in evidence.)*                              |
| 12:26    | 12 | MR. ROWE:  Your Honor?                                                 |
| 12:26    | 13 | THE COURT:  Any objection?                                            |
| 12:26    | 14 | MR. ROWE:  I was going to say he hasn't actually                       |
|          | 15 | seen it.                                                               |
| 12:26    | 16 | THE COURT:  I thought you two have seen this                           |
|          | 17 | before.  Is there any disagreement over this document?                 |
|          | 18 | Maybe there is.                                                        |
| 12:26    | 19 | MR. ROWE:  No.                                                         |
| 12:26    | 20 | THE COURT:  No.  I didn't think there would be.                        |
|          | 21 | Received.                                                              |
| 12:26    | 22 | BY MR. NORMANDIN:                                                      |
| 12:26    | 23 | Q.  When Ms. Mariscal provided you with the original                   |
|          | 24 | certificate of title, did she also provide you with an                |
|          | 25 | original report of sale -- wholesale report of sale?                   |

| | | |
|---|---|---|
| 12:26 | 1 | A.   Yes.  The wholesale report of sale and the certificate |
| | 2 | of title. |
| 12:26 | 3 | Q.   And I'm putting Exhibit 112 in front of you -- up on |
| | 4 | the board actually. |
| 12:26 | 5 | (Exhibit displayed.) |
| 12:26 | 6 | BY MR. NORMANDIN: |
| 12:26 | 7 | Q.   Is Exhibit 112 the original wholesale report of sale |
| | 8 | reflecting a sale from Lamborghini Newport Beach to Remate? |
| 12:27 | 9 | A.   That is correct. |
| 12:27 | 10 | Q.   And you received this from Ms. Mariscal at the time you |
| | 11 | received the original certificate of title? |
| 12:27 | 12 | A.   Yes.  I received both of those together. |
| 12:27 | 13 | MR. NORMANDIN:  Move 112 into evidence. |
| 12:27 | 14 | THE COURT:  Received. |
| 12:27 | 15 | (Exhibit No. 112 received in evidence.) |
| 12:27 | 16 | MR. NORMANDIN:  I'd like to put in front of you |
| | 17 | what we've marked as Exhibit 126. |
| 12:28 | 18 | THE COURT:  Counsel, 112 is illegible in our book. |
| 12:28 | 19 | MR. NORMANDIN:  112 is, Your Honor? |
| 12:28 | 20 | THE COURT:  Yes. |
| 12:28 | 21 | MR. NORMANDIN:  I have the original.  I would like |
| | 22 | to keep it, but I'll submit it to the Court. |
| 12:28 | 23 | THE COURT:  Well, I can't consider 112 unless I |
| | 24 | can read it, Counsel.  It's illegible. |
| 12:28 | 25 | MR. NORMANDIN:  I'll submit it, Your Honor. |

| 12:28 | 1 | May I approach? |
| 12:28 | 2 | THE COURT: You may. |
| 12:29 | 3 | *(Exhibit displayed.)* |
| 12:29 | 4 | BY MR. NORMANDIN: |
| 12:29 | 5 | Q. There came a point in time in 2012 where you became |
| | 6 | involved with a Mercedez Benz and Remate, correct? |
| 12:29 | 7 | A. That is correct. |
| 12:29 | 8 | Q. What were the circumstances of that transaction? |
| 12:29 | 9 | A. Remate had purchased a Mercedes in Oregon. |
| 12:29 | 10 | MR. ROWE: Objection, Your Honor. Relevance. |
| 12:29 | 11 | THE COURT: Well, it's not if it involves the |
| | 12 | inquiry the Court made concerning a pink slip. And I don't |
| | 13 | know where this is going, Counsel. |
| 12:29 | 14 | MR. NORMANDIN: No, Your Honor. This is -- the |
| | 15 | offer of proof is that Mr. Zugasti answered the government's |
| | 16 | responses to interrogatories saying that he gave a Mercedes |
| | 17 | Benz in exchange for the Lamborghini. |
| 12:29 | 18 | MR. ROWE: Your Honor -- |
| 12:29 | 19 | MR. NORMANDIN: Excuse me. I would like to lay |
| | 20 | the foundation for the argument that the proceeds from this |
| | 21 | Mercedes Benz that we floored went to pay for the |
| | 22 | Lamborghini. |
| 12:30 | 23 | THE COURT: How do I know that without testimony? |
| | 24 | Why isn't that hearsay? |
| 12:30 | 25 | MR. NORMANDIN: It isn't hearsay because we know |

|       |    |                                                               |
|-------|----|---------------------------------------------------------------|
|       | 1  | we floored the -- well, it's not hearsay because it's         |
|       | 2  | Mr. Zugasti who was a party answering the government's --      |
| 12:30 | 3  | MR. ROWE:  Not --                                             |
| 12:30 | 4  | MR. NORMANDIN:  -- discovery responses.                       |
| 12:30 | 5  | THE COURT:  It's hearsay, isn't it?                           |
| 12:30 | 6  | MR. ROWE:  Yes.                                               |
| 12:30 | 7  | THE COURT:  Yeah.  Sustained.                                 |
| 12:30 | 8  | MR. NORMANDIN:  The other offer of proof with                 |
|       | 9  | respect to this Mercedes is the statement that Mr. -- uh,     |
|       | 10 | that NextGear floored this particular, uh, Mercedes and it    |
|       | 11 | was used to purchase the Mercedes -- uh, the Lamborghini.     |
| 12:30 | 12 | MR. ROWE:  Again, Your Honor, I don't know what               |
|       | 13 | evidence he's going to use to actually make that case.        |
| 12:30 | 14 | THE COURT:  I'll wait for that evidence.  I don't             |
|       | 15 | see how this witness can attest to that, Counsel, without     |
|       | 16 | hearsay.                                                       |
| 12:30 | 17 | MR. NORMANDIN:  We'll have to wait for                        |
|       | 18 | Ms. Mariscal, then.                                           |
| 12:30 | 19 | THE COURT:  Okay.  And you can certainly recall               |
|       | 20 | the gentleman.                                                |
| 12:31 | 21 | MR. NORMANDIN:  Thank you.                                    |
| 12:31 | 22 | If I could just have a moment?                                |
| 12:31 | 23 | THE COURT:  Certainly.  Take your time and go over            |
|       | 24 | your notes, Counsel.                                          |
| 12:31 | 25 | MR. NORMANDIN:  That will be fine, Your Honor.                |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | Thank you.                                                   |
| 12:31 | 2  | THE COURT:  Okay.                                            |
| 12:31 | 3  | And, Counsel, redirect -- I'm sorry.  Recross.  My           |
|       | 4  | apologies.                                                   |
| 12:31 | 5  | No.  This would be cross-examination.  My                    |
|       | 6  | apologies again.                                             |
| 12:31 | 7  | MR. ROWE:  No problem.                                       |
| 12:31 | 8  | THE COURT:  And, before you start                           |
|       | 9  | cross-examination, I have another matter, a criminal matter, |
|       | 10 | Counsel, that I want to take up 'cause I see Mr. Steward     |
|       | 11 | here, Ms. Pemkova, and counsel for the government.          |
| 12:32 | 12 | And if you'd just remain at the counsel table for           |
|       | 13 | a moment.                                                    |
| 12:32 | 14 | Mr. Steward, let me call the Pemkova matter for             |
|       | 15 | just a moment.                                               |
| 12:32 | 16 | *(Interruption in the proceedings at 12:32 p.m.)*           |
| 12:32 | 17 | *(Proceedings resumed at 12:41 p.m.)*                       |
| 12:41 | 18 | THE COURT:  All right.  If you would retake the             |
|       | 19 | witness stand.                                               |
| 12:41 | 20 | Thank you for your courtesy.                                 |
| 12:41 | 21 | Gentlemen, or counsel, you may be up and down               |
|       | 22 | quite a bit today.                                           |
| 12:41 | 23 | MR. ROWE:  Yes, Your Honor.  If I could just                |
|       | 24 | remind Mr. Rogers that "you remain under oath."             |
| 12:41 | 25 | THE COURT:  Counsel, your questions.                        |

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
| 12:41 | 1  | **CROSS-EXAMINATION**                                                     |
| 12:41 | 2  | BY MR. ROWE:                                                              |
| 12:41 | 3  | Q.   Mr. Rogers, when your -- Judge Carter was asking you a               |
|       | 4  | few minutes ago about whether NextGear loaned any money                   |
|       | 5  | specifically for this Lamborghini, you said, "We didn't give             |
|       | 6  | any money for the Lamborghini," correct?                                  |
| 12:42 | 7  | A.   Direct purchase, no.                                                 |
| 12:42 | 8  | Q.   And, in fact -- of any of the documents that NextGear               |
|       | 9  | put up while on their direct, they didn't put up any                      |
|       | 10 | inventory sheets that show the Lamborghini as part of the                |
|       | 11 | inventory of Remate, do they?                                             |
| 12:42 | 12 | A.   No.                                                                  |
| 12:42 | 13 | Q.   In fact, you didn't know that the Lamborghini even                  |
|       | 14 | existed until, as you said, March of 2012, correct?                       |
| 12:42 | 15 | A.   No.                                                                  |
| 12:42 | 16 | Q.   And that came -- that knowledge came about when                     |
|       | 17 | Ms. Mariscal called you and told you that the Lamborghini                |
|       | 18 | was there and that she wanted to maybe turn it in.                        |
| 12:42 | 19 | A.   Uh, that she did wanna turn it in.                                   |
| 12:42 | 20 | Q.   Do you recall a case that was filed by NextGear against             |
|       | 21 | the government, you know, Homeland Security Investigations,               |
|       | 22 | earlier last year in which you submitted a declaration?                   |
| 12:43 | 23 | A.   I remember the declaration.                                          |
| 12:43 | 24 | MR. ROWE:  Your Honor, this has not been marked                          |
|       | 25 | previously as an exhibit.  This is the Declaration of Troy               |

|       |    |                                                                     |
|-------|----|---------------------------------------------------------------------|
|       | 1  | Rogers in relation to case 12-CV-01497 before this Court.           |
|       | 2  | It's also Docket No. 13.                                             |
| 12:43 | 3  | THE COURT:  Docket No. 13?                                           |
| 12:43 | 4  | MR. ROWE:  Yes, Your Honor.                                          |
| 12:43 | 5  | THE COURT:  Thank you.  Okay.                                        |
| 12:43 | 6  | BY MR. ROWE:                                                         |
| 12:43 | 7  | Q.  I'm gonna show you page 2 of your declaration.  Zoom in          |
|       | 8  | here for you.                                                        |
| 12:43 | 9  | (Document displayed.)                                                |
| 12:43 | 10 | BY MR. ROWE:                                                         |
| 12:44 | 11 | Q.  Paragraph 9, could you read that for us, please.                 |
| 12:44 | 12 | A.  (Reading:)                                                       |
| 12:44 | 13 | "In early March 2012, I became aware of                             |
|       | 14 | the subject vehicle, a Lamborghini, VIN                             |
|       | 15 | No. ZHWBU26S96LA02025.  Vehicle was                                 |
|       | 16 | owned by Remate and had been impounded                             |
|       | 17 | by the Irwindale Police."                                          |
| 12:44 | 18 | Q.  So in March 2012 you're aware that the vehicle had              |
|       | 19 | already been impounded by Irwindale --                             |
| 12:44 | 20 | A.  Correct.                                                        |
| 12:44 | 21 | Q.  -- Irwindale Police Department.                                 |
| 12:44 | 22 | So you weren't aware of the vehicle allegedly while it             |
|       | 23 | was in the (inaudible).                                             |
| 12:44 | 24 | THE COURT:  I couldn't understand you, Counsel.                    |
|       | 25 |                                                                     |

| 12:44 | 1 | BY MR. ROWE: |
| 12:44 | 2 | Q.   Mr. Rogers, you had no knowledge that the Lamborghini |
|       | 3 | existed until March 2012 and your knowledge -- in that |
|       | 4 | knowledge, you already knew that the vehicle had been |
|       | 5 | impounded by Irwindale Police Department; isn't that right? |
| 12:44 | 6 | A.   Uh, correct. |
| 12:44 | 7 | Q.   Now, when Ms. -- you said Ms. Mariscal reached out to |
|       | 8 | you about the Lamborghini.  She reached out to you because |
|       | 9 | you had been contacting her, wasn't that right? -- about |
|       | 10 | Remate's debt -- |
| 12:45 | 11 | A.   I had contacted her. |
| 12:45 | 12 | Q.   -- and asking her whether Remate was going to pay the |
|       | 13 | debt, and if not -- |
| 12:45 | 14 | A.   She reached out -- |
| 12:45 | 15 | Q.   -- personally libel. |
| 12:45 | 16 | A.   She reached out about the Lamborghini. |
| 12:45 | 17 | Q.   But she -- you told her before that, though, that she |
|       | 18 | was personally responsible for Remate's debts because she |
|       | 19 | was a personal guarantor.  Didn't you tell her that? |
| 12:45 | 20 | A.   Correct. |
| 12:45 | 21 | Q.   And so, after you've told her that she's gonna be |
|       | 22 | personally liable for this supposed $205,000 and change, she |
|       | 23 | comes to you after the fact with a -- the title to a vehicle |
|       | 24 | that you've never heard of and that you know is in custody |
|       | 25 | of -- of the police; is that right?  Just so I understand |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | that correctly.                                              |
| 12:45 | 2  | A.   That's not how it happened, no.                        |
| 12:45 | 3  | Q.   Well, let's go to the declaration, then.               |
| 12:46 | 4  | When, uh, you -- you presented -- uh, you said earlier      |
|       | 5  | that, uh, when Ms. Mariscal gave you the title, you got --  |
|       | 6  | uh, commune -- you communicated somehow with headquarters   |
|       | 7  | and they told you that she had to sign separate -- uh, a    |
|       | 8  | document, correct?                                          |
| 12:46 | 9  | A.   Correct.                                               |
| 12:46 | 10 | Q.   And that was a declaration?                            |
| 12:46 | 11 | A.   That is correct.                                       |
| 12:46 | 12 | Q.   Now, the circumstances of that declaration -- you met  |
|       | 13 | her in a parking lot, right?                                |
| 12:46 | 14 | A.   That's correct.                                        |
| 12:46 | 15 | Q.   And she rolled down her window, you passed it through  |
|       | 16 | the window; in a matter of seconds, she signed it and passed |
|       | 17 | it back; isn't that right?                                  |
| 12:46 | 18 | A.   That is incorrect.                                     |
| 12:46 | 19 | Q.   Is it true that you met her in a parking lot?          |
| 12:46 | 20 | A.   That is --                                             |
| 12:46 | 21 | Q.   You call -- you called her and said, "I need you to    |
|       | 22 | meet me 'cause you need to sign another document."          |
| 12:46 | 23 | A.   No.  That is not correct.                              |
| 12:46 | 24 | Q.   Well, why was she there?                               |
| 12:46 | 25 | A.   She had -- I had run into her when I told her -- I     |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | don't think -- I don't remember calling her in regards to        |
|       | 2  | that.  We were in contact, and she asked me to meet her.         |
| 12:46 | 3  | Q.   Now, you've had a long relationship with Remate.  You       |
|       | 4  | said you know Cecilia, you know Raul.                            |
| 12:47 | 5  | A.   Correct.                                                    |
| 12:47 | 6  | Q.   In fact, you're Facebook friends even with Cecelia;         |
|       | 7  | isn't that right?                                               |
| 12:47 | 8  | A.   That is incorrect.                                          |
| 12:47 | 9  | Q.   Would you say that you're friendly with Cecilia or          |
|       | 10 | Raul?                                                            |
| 12:47 | 11 | A.   Business friendly.                                          |
| 12:47 | 12 | Q.   How often did you communicate with 'em?                    |
| 12:47 | 13 | A.   Just on audits.                                            |
| 12:47 | 14 | Q.   And you said that audits were once a week -- or, excuse     |
|       | 15 | me -- once a month.                                             |
| 12:47 | 16 | A.   In general once a month or, you know --                     |
| 12:47 | 17 | Q.   You never saw them at auctions, for instance.              |
| 12:47 | 18 | A.   Uh, maybe -- or, no -- not at auctions, no.                |
| 12:47 | 19 | Q.   When was the last time you spoke to Cecilia?              |
| 12:47 | 20 | A.   Um, a month ago.                                           |
| 12:47 | 21 | Q.   So even now, after this case is pending, you're still      |
|       | 22 | communicating with her?                                         |
| 12:47 | 23 | A.   Correct.                                                    |
| 12:47 | 24 | Q.   So is it fair to say that from the time that, uh,           |
|       | 25 | Remate went into default on its loan, through, as recently a     |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | month ago, you've been in communication to some degree with  |
|       | 2  | Cecilia?                                                     |
| 12:48 | 3  | RIGHT1:  Objection.  Vague as to time.                       |
| 12:48 | 4  | THE COURT:  Overruled.                                       |
| 12:48 | 5  | THE WITNESS:  In contact, but not in regards to              |
|       | 6  | Remate.                                                      |
| 12:48 | 7  | BY MR. ROWE:                                                 |
| 12:48 | 8  | Q.   You knew as of almost a year ago, didn't you, that      |
|       | 9  | Cecilia was no longer a member or a partner engaged in the   |
|       | 10 | business with Remate?                                        |
| 12:48 | 11 | A.   Uh, what -- I'm not sure what time frame you're asking.  |
|       | 12 | A year ago?  I don't think Remate existed after -- a year    |
|       | 13 | ago.  I don't know that the license still existed.           |
| 12:48 | 14 | Q.   So I'm confused.  So Remate didn't exist a year ago --  |
|       | 15 | and you're saying 2013?                                      |
| 12:48 | 16 | MR. NORMANDIN:  Objection.                                   |
| 12:48 | 17 | MR. ROWE:  2014?                                             |
| 12:48 | 18 | MR. NORMANDIN:  Objection.  Lacks foundation to              |
|       | 19 | its existence.                                               |
| 12:48 | 20 | MR. ROWE:  I'm just trying to clarify his                    |
|       | 21 | statement.                                                   |
| 12:48 | 22 | THE COURT:  Overruled.                                       |
| 12:48 | 23 | THE WITNESS:  It --                                          |
| 12:48 | 24 | BY MR. ROWE:                                                 |
| 12:48 | 25 | Q.   What time frame were -- let me back up.  I'll withdraw  |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | that question.                                                   |
| 12:49 | 2  | A.   Well, I'm not sure what you're getting at as far as         |
|       | 3  | when I talked to her about the debts.  We have a corporate       |
|       | 4  | office, a corporate collection department.  So after the         |
|       | 5  | Lamborghini -- uh, after she gave me title, I did not            |
|       | 6  | approach her about any debts.  So I haven't talked to her        |
|       | 7  | since maybe August or something of 2012 in regards to debt.      |
| 12:49 | 8  |      You're asking -- and I don't know that they're still in     |
|       | 9  | business -- if Remate still has an active dealer's license.      |
|       | 10 | I'm not sure exactly what you're asking.                         |
| 12:49 | 11 | Q.   Let me go back, make it a little more clear.                |
| 12:49 | 12 |      In March of 2012, let's say the day that Cecilia called     |
|       | 13 | you up and said she had a title, at that time you knew that      |
|       | 14 | she actually wasn't even involved with the business any         |
|       | 15 | longer, didn't you? -- that she had been out of the business    |
|       | 16 | for almost a year?                                               |
| 12:49 | 17 | A.   That is not correct.                                        |
| 12:50 | 18 | Q.   When Cecilia called you and told about this title, she     |
|       | 19 | told you, in fact, that the title belonged to someone else      |
|       | 20 | who just never came to pick it up; isn't that right?            |
| 12:50 | 21 | A.   She said that it was -- uh, Raul had bought it is what      |
|       | 22 | she told me -- that it belonged to Raul or Raul had bought       |
|       | 23 | it.                                                              |
| 12:50 | 24 | Q.   She said those words:  "Raul bought this car," or,          |
|       | 25 | "Raul owns it"?                                                  |

| | | |
|---|---|---|
| 12:50 | 1 | A.    Yeah.  But she used "I" and "we" quite a bit. |
| 12:50 | 2 | Q.    She didn't say that Eddie Escobar was the one who owned |
| | 3 | it or that Luis Perez owned the vehicle? |
| 12:50 | 4 | A.    No. |
| 12:50 | 5 | Q.    She said that Raul owned it? |
| 12:50 | 6 | A.    That Raul purchased it. |
| 12:50 | 7 | Q.    Did she say that Remate owned it? |
| 12:50 | 8 | A.    She didn't say that they owned it, but when I gave her |
| | 9 | that piece of paper -- |
| 12:51 | 10 | Q.    The answer is no, she didn't say that Remate owned |
| | 11 | the -- |
| 12:51 | 12 | A.    Not at that time. |
| 12:51 | 13 | Q.    She said -- |
| 12:51 | 14 | A.    Not at that time. |
| 12:51 | 15 | Q.    Let me go back to the hypothetical that counsel asked |
| | 16 | you -- asked you about if a dealer had a car that NextGear |
| | 17 | had financed, and they sold that car and they got cash for |
| | 18 | it, that you have an interest -- that NextGear has an |
| | 19 | interest in that cash. |
| 12:51 | 20 | A.    That is correct. |
| 12:51 | 21 | Q.    What about if a dealer got cash, paid an employee, and |
| | 22 | the employee bought a car?  You don't have an interest in |
| | 23 | that car, do you? |
| 12:51 | 24 | A.    Uh, no. |
| 12:51 | 25 | Q.    So if someone other that Remate owned this vehicle, |

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | NextGear has no interest; isn't that right?                  |
| 12:51  | 2  | MR. NORMANDIN:  Objection.  Calls for a legal                |
|        | 3  | conclusion.                                                  |
| 12:51  | 4  | THE COURT:  Overruled.                                        |
| 12:51  | 5  | THE WITNESS:  No.                                             |
| 12:51  | 6  | THE COURT:  Well, that was a double negative.  You           |
|        | 7  | said "isn't that right?" and he answers "No."  So the        |
|        | 8  | question's confusing and the answer is confusing.            |
| 12:52  | 9  | BY MR. ROWE:                                                 |
| 12:52  | 10 | Q.  Remate -- as far as you know, based on what Cecilia      |
|        | 11 | told you, Remate did not own the vehicle; Raul did.  I think |
|        | 12 | the answer you're looking for is yes, that's right.          |
| 12:52  | 13 | A.  Well, no.  She said it was their inventory, so I would   |
|        | 14 | have --                                                      |
| 12:52  | 15 | Q.  Well, just a moment ago --                               |
| 12:52  | 16 | THE REPORTER:  Your Honor, that's not reportable.            |
| 12:52  | 17 | THE COURT:  That's not.  You cut off the witness.            |
| 12:52  | 18 | I want to you finish your answer, sir.                       |
| 12:52  | 19 | THE WITNESS:  She, um -- she did say that Raul               |
|        | 20 | purchased the vehicle.  But when I gave her the form to      |
|        | 21 | sign -- that statement -- I told her that this says that it  |
|        | 22 | is your -- you know, part of your inventory and you have no  |
|        | 23 | interest in the vehicle.  So she did present that as their   |
|        | 24 | inventory.                                                   |
|        | 25 |                                                              |

8:13-CV-0907-DOC - 5/26/2015 - Item 30, Volume II

25

| | | |
|---|---|---|
| 12:52 | 1 | BY MR. ROWE: |
| 12:52 | 2 | Q.   For the purposes of the declaration, which you knew was |
| | 3 | false. |
| 12:53 | 4 | A.   For the purposes of the -- that she was still in |
| | 5 | business, that -- you know, "We're gonna pay you this debt. |
| | 6 | I know we owe you" -- that she was part of the business. |
| 12:53 | 7 | Q.   If, uh -- as an account executive with NextGear, how |
| | 8 | are you paid?  You make a commission on whether accounts are |
| | 9 | current or not? |
| 12:53 | 10 | A.   I, uh -- I'm paid with a salary.  And I do get a bonus. |
| | 11 | It's based on, um, different things, but there is a |
| | 12 | component for bad debt. |
| 12:53 | 13 | Q.   So if you brought this debt current, you'd stand to get |
| | 14 | a substantial bonus? |
| 12:53 | 15 | A.   No. |
| 12:53 | 16 | Q.   None at all? |
| 12:53 | 17 | A.   It would go -- it can go against my bonus but, um, |
| | 18 | it's -- that's just one of 150 accounts that I have, so it's |
| | 19 | all not dependent on just one account. |
| 12:54 | 20 | MR. ROWE:  Your Honor, I don't have any further |
| | 21 | questions at this time. |
| 12:54 | 22 | THE COURT:  Redirect? |
| 12:54 | 23 | MR. NORMANDIN:  Yes, Your Honor. |
| | 24 | |
| | 25 | |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
| 12:54 | 1  | **REDIRECT EXAMINATION**                                     |
| 12:54 | 2  | BY MR. NORMANDIN:                                            |
| 12:54 | 3  | Q.   Mr. Rogers, during your -- during the                  |
|       | 4  | cross-examination, you mentioned that Ms. Mariscal would be |
|       | 5  | personally liable for the debt.  Do you remember that       |
|       | 6  | discussion?                                                  |
| 12:54 | 7  | A.   Yes.  She is personally liable.                        |
| 12:54 | 8  | Q.   And you're basing that on what I'll put up here as     |
|       | 9  | Exhibit 105, the individual personal guarantee signed by    |
|       | 10 | Ms. Mariscal.                                                |
| 12:54 | 11 |      *(Exhibit displayed.)*                                  |
| 12:54 | 12 |         THE WITNESS:  That is correct.                      |
| 12:54 | 13 | BY MR. NORMANDIN:                                            |
| 12:54 | 14 | Q.   And based upon her signature on this individual        |
|       | 15 | personal guarantee, you believed that she would become      |
|       | 16 | personally liable for the debt of Remate, correct?          |
| 12:55 | 17 | A.   That is correct.                                        |
| 12:55 | 18 |         MR. NORMANDIN:  Move 105 into evidence.             |
| 12:55 | 19 |         THE COURT:  Received.                               |
| 12:55 | 20 |      *(Exhibit No. 105 received in evidence.)*              |
| 12:55 | 21 | BY MR. NORMANDIN:                                            |
| 12:55 | 22 | Q.   Now, you also mentioned that there was a form that     |
|       | 23 | needed to be filled out by Ms. Mariscal.  And I've putten   |
|       | 24 | *(sic)* up on the screen Exhibit 107.                       |
| 12:55 | 25 |      *(Exhibit displayed.)*                                  |

| | | |
|---|---|---|
| 12:55 | 1 | BY MR. NORMANDIN: |
| 12:55 | 2 | Q.   Is this the form you're referring to? |
| 12:55 | 3 | A.   That is correct. |
| 12:55 | 4 | Q.   And in Paragraph 6 of the -- excuse me -- in |
| | 5 | Paragraph 5 of this declaration -- |
| 12:55 | 6 | MR. ROWE:  Objection, Your Honor.  This document |
| | 7 | is hearsay. |
| 12:55 | 8 | THE COURT:  Sustained. |
| 12:55 | 9 | MR. NORMANDIN:  Your Honor, it goes to the state |
| | 10 | of mind, and it's a business record of -- |
| 12:55 | 11 | MR. ROWE:  A declaration is not a business record. |
| 12:55 | 12 | MR. NORMANDIN:  Can I finish? |
| 12:55 | 13 | Your Honor, this is a business record of NextGear. |
| | 14 | And it was obtained by the declarant, the witness here, as |
| | 15 | to circumstances upon which he received the, um -- the |
| | 16 | certificate of title. |
| 12:56 | 17 | THE COURT:  It's hearsay unless it's obtained at |
| | 18 | or about the same time that the transaction took place, |
| | 19 | Counsel. |
| 12:56 | 20 | MR. NORMANDIN:  And the trans -- |
| 12:56 | 21 | THE COURT:  It's obviously a declaration. |
| 12:56 | 22 | MR. NORMANDIN:  And in this case the transaction |
| | 23 | is the delivery of the certificate of title to NextGear. |
| 12:56 | 24 | THE COURT:  Thank you. |
| 12:56 | 25 | Sustained. |

| | | |
|---|---|---|
| 12:56 | 1 | MR. NORMANDIN:  Nothing further, Your Honor. |
| 12:56 | 2 | THE COURT:  Recross? |
| 12:56 | 3 | **RECROSS-EXAMINATION** |
| 12:56 | 4 | BY MR. ROWE: |
| 12:56 | 5 | Q.   This declaration, Cecilia did not write it, correct? |
| 12:56 | 6 | A.   She did not. |
| 12:56 | 7 | Q.   NextGear wrote it? |
| 12:56 | 8 | A.   Yes. |
| 12:56 | 9 | MR. ROWE:  Thank you. |
| 12:56 | 10 | MR. NORMANDIN:  Your Honor, we should be able to |
| | 11 | enter into evidence the declaration that the witness is |
| | 12 | testifying to that was brought up on cross-examination. |
| 12:56 | 13 | He's testified about a document.  We have it here. |
| | 14 | It's the declaration.  The door's been opened. |
| 12:56 | 15 | MR. ROWE:  Your Honor, its existence is one thing. |
| | 16 | Mr. Rogers has direct knowledge about passing this document |
| | 17 | to Ms. Mariscal.  But the contents of the document are |
| | 18 | hearsay.  We're not -- I didn't ask any questions about the |
| | 19 | contents of the document.  I didn't open that door. |
| 12:57 | 20 | THE COURT:  I'm going to sustain the objection at |
| | 21 | this time, but we'll take it up later this evening.  I could |
| | 22 | be wrong on that.  Let me do some more research and thought |
| | 23 | about it, Counsel. |
| 12:57 | 24 | MR. NORMANDIN:  Thank you. |
| 12:57 | 25 | THE COURT:  Right now, I believe it's simply a |

|       | 1  | declaration and it's hearsay. |
|-------|----|-------------------------------|
| 12:57 | 2  | *(To the witness:)* All right.  Sir, you may step |
|       | 3  | down.  I'm going to order you to remain, though.  You're not |
|       | 4  | excused from these proceedings. |
| 12:57 | 5  | *(Witness steps down.)* |
| 12:57 | 6  | THE COURT:  All right.  Now, Counsel, we've got a |
|       | 7  | criminal matter starting and we're having some difficulty |
|       | 8  | with that matter at the present time. |
| 12:57 | 9  | But I want to send you to lunch now.  You're |
|       | 10 | ordered back to the court at 2:30.  I don't quite know |
|       | 11 | what's going to happen on this next matter.  I don't know if |
|       | 12 | it's truly going or not yet.  They're still discussing a |
|       | 13 | number of issues apparently about retained counsel and |
|       | 14 | whether he's making a general or special appearance.  And |
|       | 15 | special appearance is not met with great credibility by the |
|       | 16 | Court. |
| 12:58 | 17 | So why don't you go have lunch.  Why don't we see |
|       | 18 | you no later than 2:30.  Okay?  Thank you. |
| 12:58 | 19 | And we'll finish this matter this evening, believe |
|       | 20 | me.  Whether it's, you know, 5:00 or midnight, it'll be |
|       | 21 | resolved.  Thank you. |
| 12:58 | 22 | *(Recess held at 12:58 p.m.)* |
| 12:58 | 23 | *(Further proceedings reported using the* |
|       | 24 | *CourtSmart system in Volume III.)* |
| 12:58 | 25 | **-oOo-** |

| | | |
|---|---|---|
| 12:58 | 1 | -oOo- |
| 12:58 | 2 | |
| 12:58 | 3 | **CERTIFICATE** |
| 12:58 | 4 | |
| 12:58 | 5 | I hereby certify that pursuant to Section 753, |
| | 6 | Title 28, United States Code, the foregoing is a true and |
| | 7 | correct transcript of the stenographically reported |
| | 8 | proceedings held in the above-entitled matter and that the |
| | 9 | transcript page format is in conformance with the |
| | 10 | regulations of the Judicial Conference of the United States. |
| 12:58 | 11 | |
| 12:58 | 12 | Date:  September 17, 2015 |
| 12:58 | 13 | |
| 12:58 | 14 | |
| 12:58 | | /s/ Debbie Gale |
| 12:58 | 15 | _____ |
| 12:58 | | DEBBIE GALE, U.S. COURT REPORTER |
| 12:58 | 16 | CSR NO. 9472, RPR, CCRR |
| 12:58 | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |